1  MICHAEL W. BIEN – 096891
    *mbien@rbgg.com*
2  VAN SWEARINGEN – 259809
    *vswearingen@rbgg.com*
3  KARA J. JANSSEN – 274762
    *kjanssen@rbgg.com*
4  MICHAEL S. NUNEZ – 280535
    *mnunez@rbgg.com*
5  ROSEN BIEN GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
6  San Francisco, California  94105-1738
   Telephone:  (415) 433-6830
7  Facsimile:   (415) 433-7104

8  HABEN GIRMA – 293667
    *contact@habengirma.com*
9  405 El Camino Real #209
   Menlo Park, California  94025-5240
10 Telephone:  (510) 210 3714

11 Attorneys for Plaintiffs

12

13                    UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16 UNITED SPINAL ASSOCIATION         Case No. 2:23-cv-03107 FLA(GJSx)
   et al.,
17                                   **PLAINTIFFS' OPPOSITION TO**
              Plaintiffs,            **COUNTY OF LOS ANGELES AND**
18                                   **DISTRICT ATTORNEY GASCÓN'S**
         v.                          **MOTION TO DISMISS**
19
   STATE OF CALIFORNIA et al.,       Date:     September 29, 2023
20                                   Time:     1:30 p.m.
              Defendants.            Crtrm.:   6B
21                                   Place:    350 West First Street
                                               Los Angeles, CA  90012
22
                                     Judge:  Hon. Fernando L. Aenlle-Rocha
23                                   Magistrate:  Hon. Gail J. Standish

24                                   Trial Date:      None Set

25

26

27

28
   [4339984.5]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

LEGAL STANDARD ........................................................................................ 5

ARGUMENT ...................................................................................................... 6

I.     PLAINTIFFS' COMPLAINT IDENTIFIES CONCRETE, IMMINENT INJURIES AND PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS ........................................................................................... 6

     A.     Plaintiffs Sufficiently Allege Direct Organizational Standing .............. 7

     B.     Plaintiffs Sufficiently Allege Representational Standing ...................... 8

     C.     *O'Shea* Does Not Foreclose Plaintiffs' Standing ................................ 10

II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY PROSECUTORIAL IMMUNITY OR THE ELEVENTH AMENDMENT ................................................................................................ 12

III.   PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER THE ADA AND REHABILITATION ACT ................................. 13

IV.   PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER 42 U.S.C. § 1983 ............................................................................ 16

V.    PLAINTIFFS' REQUESTED RELIEF IS PROPER .................................... 18

CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................. 5, 14

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.,*
    648 F.3d 986 (9th Cir. 2011) ........................................................ 5

*Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.,*
    159 F.3d 1178 (9th Cir. 1998) ..................................................... 10

*Barber ex rel. Barber v. Colo. Dep't of Revenue,*
    562 F.3d 1222 (10th Cir. 2009) .................................................... 19

*Brewer v. United States Postal Service,*
    No. 22-35267, 2023 WL 4637112 (9th Cir. July 20, 2023) ........................... 15

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg,*
    290 F.R.D. 409 (S.D.N.Y. 2012) ..................................................... 9

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993) ............................................................ 12, 13

*Culinary Workers Union, Loc. 226 v. Del Papa,*
    200 F.3d 614 (9th Cir. 1999) ....................................................... 12

*Del Campo v. Kennedy,*
    517 F.3d 1070 (9th Cir. 2008) ...................................................... 13

*Disability Rts. Council of Greater Washington v. D.C.,*
    No. CIV.A. 04-0529 (JDB), 2005 WL 513495 (D.D.C. Mar. 3, 2005) ..................... 9

*Duvall v. Cnty. of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001) ...................................................... 13

*Ecological Rights Found. v. Pac. Lumber Co.,*
    230 F.3d 1141 (9th Cir. 2000) ....................................................... 8

*Election Integrity Project Cal., Inc. v. Weber,*
    No. 21-56061, 2022 WL 16647768 (9th Cir. Nov. 3, 2022) ............................. 8

*Ex parte Young,*
    209 U.S. 123 (1908) ................................................................ 13

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC,*
    666 F.3d 1216 (9th Cir. 2012) ....................................................... 7

*Gobel v. Maricopa Cty.,*
    867 F.2d 1201 (9th Cir. 1989), *abrogated on other grounds by Merritt
    v. Cty. of L.A.,* 875 F.2d 765 (9th Cir. 1989) .................................... 12

*Head v. Glacier Nw., Inc.*,
   413 F.3d 1053 (9th Cir. 2005) ...................................................................... 14

*Hecox v. Little*,
   No. 20-35813, 2023 WL 5283127 (9th Cir. Aug. 17, 2023) ......................... 19

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) ......................................................................... 5

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ....................................................................................... 8

*Hyer v. City & Cnty. of Honolulu*,
   No. CV 19-00586, 2021 WL 2172816 (D. Haw. May 27, 2021) ................... 16

*Hyer v. City & Cnty. of Honolulu*,
   No. CV 19-00586, 2023 WL 1766456 (D. Haw. Feb. 3, 2023)...................... 15

*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ..................................................................................... 12

*Inland Empire Waterkeeper v. Corona Clay Co.*,
   17 F.4th 825 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1444 (2022)................. 8

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock*,
   477 U.S. 274 (1986) ..................................................................................... 10

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ...................................................................... 19

*Kalina v. Fletcher*,
   522 U.S. 118 (1997) ..................................................................................... 12

*Keates v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) ...................................................................... 17

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ...................................................................... 20

*Langer v. Kiser*,
   57 F.4th 1085 (9th Cir. 2023) ......................................................................... 6

*Lopez v. Dep't of Health Servs.*,
   939 F.2d 881 (9th Cir. 1991) ........................................................................ 16

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ......................................................................... 9

*Martin v. Cal. Dep't of Veterans Affairs*,
   560 F.3d 1042 (9th Cir. 2009) ...................................................................... 14

*Mecinas v. Hobbs*,
   30 F.4th 890 (9th Cir. 2022).................................................................... 6, 12

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978) .................................................................................. 16, 17

*Moore v. Mars Petcare US, Inc.*,
 966 F.3d 1007 (9th Cir. 2020) ........................................................................ 5

*Nat'l Council of La Raza v. Cegavske*,
 800 F.3d 1032 (9th Cir. 2015) ....................................................................... 10

*Nat'l Fed'n of the Blind v. Lamone*,
 813 F.3d 494 (4th Cir. 2016) ......................................................................... 19

*Newberry v. County of San Bernardino*,
 750 Fed. App'x 534 (9th Cir. 2018) ............................................................... 17

*O'Campo v. Chico Mall, LP*,
 758 F. Supp. 2d 976 (E.D. Cal. 2010) ........................................................... 19

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ....................................................................... 10, 11, 19, 20

*Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*,
 406 F. Supp. 2d 1120 (S.D. Cal. 2005) .......................................................... 10

*Peck v. Montoya*,
 51 F.4th 877 (9th Cir. 2022) .......................................................................... 18

*R.W. v. Columbia Basin Coll.*,
 No. 21-35995, 2023 WL 5192565 (9th Cir. August 14, 2023) ....................... 12

*Reichle v. Howards*,
 566 U.S. 658 (2012) ....................................................................................... 12

*Rodde v. Bonta*,
 357 F.3d 988 (9th Cir. 2004) .......................................................................... 15

*Selene v. Leg. Of Idaho*,
 514 F. Supp. 3d 1243 (D. Idaho 2021) ............................................................. 6

*Sjurset v. Button*,
 810 F.3d 609 (9th Cir. 2015) .......................................................................... 17

*Smith v. City of Oakland*,
 612 F. Supp. 3d 951 (N.D. Cal. 2020) ........................................................... 14

*Smith v. Clark Cnty. School District*,
 727 F.3d 950 (9th Cir. 2013) .......................................................................... 15

*Socal Recovery, LLC v. City of Costa Mesa*,
 56 F.4th 802 (9th Cir. 2023) ............................................................................ 7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
 143 S. Ct. 2141 (2023) ..................................................................................... 8

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES AND DISTRICT ATTORNEY GASCÓN'S
MOTION TO DISMISS

*Torres v. U.S. Dep't of Homeland Sec.*,
  411 F. Supp. 3d 1036 (C.D. Cal. 2019) ........................................... 10

*Townsend v. Quasim*,
  328 F.3d 511 (9th Cir. 2003) .......................................................... 13

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) .......................................................... 7

*Younger v. Harris*,
  401 U.S. 37 (1971) ........................................................................ 19

## **STATUTES**

Cal. Health & Safety Code §§ 443-443.22 ................................................. 1

## **OTHER AUTHORITIES**

101 A.L.R. 6th 207 ................................................................................ 16

Ninth Circuit Manual of Model Civil Jury Instructions, 9.5 ..................... 16

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES AND DISTRICT ATTORNEY GASCÓN'S
MOTION TO DISMISS

# INTRODUCTION

Plaintiffs United Spinal Association, Not Dead Yet, Institute for Patients' Rights, and Communities Actively Living Independent and Free ("Organizational Plaintiffs"), Ingrid Tischer and Lonnie VanHook (collectively, "Plaintiffs") bring this action challenging Defendants' actions in connection with California's End of Life Option Act ("EOLOA"), California Health and Safety Code §§ 443-443.22, for violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Equal Protection and Due Process Clauses of the United States Constitution.  Plaintiffs bring their statutory claims against Defendants County of Los Angeles and District Attorney George Gascón ("County Defendants") and bring their constitutional claims against Defendant Gascón only.

Plaintiffs' Complaint alleges that County Defendants are responsible for ensuring fair and equal enforcement of criminal and civil laws but deny this public benefit to individuals with terminal disabilities by refusing to investigate and/or prosecute individuals in connection with their actions pursuant to, or in violation of, EOLOA.  In effect, County Defendants readily investigate abuses of the elderly and disabled and/or prosecute individuals, including doctors, who assist or encourage suicide, but County Defendants do not do so when the decedent died by physician-assisted suicide.

County Defendants' Motion to Dismiss, Dkt. 24 ("Motion") fails to acknowledge or engage with any of Plaintiffs' allegations and misconstrues controlling case law.  None of County Defendants' arguments are availing.

First, Plaintiffs' allegations establish standing.  County Defendants' claim that the Complaint fails to allege any injury or controversy is belied by the numerous allegations that the Motion ignores including that County Defendants withhold protective services from suicidal people and do not investigate or prosecute violations of EOLOA.

Second, County Defendants' contention that they are immune from liability

based on prosecutorial immunity and the Eleventh Amendment is incorrect in light of well-settled case law holding that such immunities do not apply to claims against public officials for declaratory and injunctive relief.

Third, County Defendants argue that Plaintiffs fail to plead that County Defendants' alleged conduct was due to the disability of any Plaintiff.  This argument ignores numerous allegations in Plaintiffs' well-pled complaint that EOLOA and its implementation by officials including County Defendants discriminates against Plaintiffs on account of their disabilities.

Fourth, Plaintiffs' allegations about Defendant Gascón satisfy the "integral participant" standard, to the extent it even applies to constitutional claims against Defendant Gascón in his official capacity only.

Fifth, Plaintiffs' requested relief is proper because Plaintiffs have brought a direct challenge to the constitutional and statutory legality of EOLOA and seek to enjoin its enforcement generally, not any specific individual prosecution under EOLOA.

County Defendants' Motion should be denied in its entirety.

## STATEMENT OF FACTS

People eligible under EOLOA have the highest risk factors for suicide (old age, illness, disability) along with extraordinarily high levels of depression and accompanied impairments in decision-making.  Complaint, Dkt. 1 ("Compl.") ¶ 63, 89, 146-154.

"State and local government Defendant agencies and officials named in this action fund and operate systems of … law enforcement to provide protective services for people who express suicidality …."  Compl. ¶ 2.  As law enforcement officers, County Defendants' protective actions can include placing "a suicidal person on an emergency 72-hour hold if, due to a mental illness, the person is determined to pose a danger to themselves."  *Id.* ¶ 99.  Under EOLOA, the "entire protective network of [suicide prevention] services is withheld from the Plaintiffs

and their members—solely on the basis of a doctor's 'good faith' diagnosis of terminal disability." *Id.* ¶ 2; *see also id.* ¶ 102 (similar).

Providing lethal drugs to a person with the knowledge the person may use it to end their lives is a crime in California. *Id.* ¶¶ 114-115. EOLOA carves out from criminal prosecution any "'person whose actions are compliant with [EOLOA's] provisions ….'" *Id.* ¶ 115.

County Defendants are necessary for Plaintiffs to obtain complete relief due to their "primary authority and responsibility for prosecuting criminal and specific civil cases" in Los Angeles County. *Id.* ¶¶ 51-52. County Defendants are "responsible to ensure fair and equal enforcement of the law." *Id.* ¶ 113; *see also id.* ¶ 54 (County Defendants are responsible for "enforcement of the Act"). County Defendants "fail to discharge this responsibility and deny this public benefit to individuals with terminal disabilities when they permit physicians to assist in suicides of people with impaired judgment without legal consequence." *Id.* ¶ 113. "[F]ew, if any, people who are provided physician-assisted suicide under California's EOLOA are referred for psychological assessments before receiving lethal prescriptions," *id.* ¶ 149—even though depression and/or reduced decision-making capacity is involved in many deaths by physician-assisted suicide. *Id.* ¶¶ 146-49.

County Defendants fail to enforce "criminal laws and certain civil laws protecting older people and those with disabilities, and suicidal people …." *Id.* ¶ 183. Despite their enforcement powers, County Defendants have not "investigated or prosecuted any healthcare provider who has furnished lethal drugs to patients under EOLOA, with the purpose of facilitating their death." *Id.* ¶ 51; *see also id.* ¶ 119 ("law enforcement Defendants have neither investigated nor prosecuted any medical professional for assisting a suicide pursuant to EOLOA"); *id.* ¶ 118 (similar). By failing to enforce the law against those who "directly or indirectly pressure [people with terminal disabilities] to obtain physician-assisted suicide,"

County Defendants "subject only people with terminal illnesses to these coercive situations." *Id.* ¶ 123.  This includes coercion by family, caregivers, medical care professionals, and insurance providers. *Id.* ¶¶ 125-140.

"California criminal law contains many protections for older people, dependent adults, and persons with disabilities … [b]ut these laws, like the criminal law against aiding and abetting suicide, are not enforced by [County] Defendants against doctors who prescribe physician-assisted suicide to people with terminal disabilities—even if their doctor prescribes drugs that result in a distressing or botched suicide attempt, or are ultimately administered by another person." *Id.* ¶ 116.  County Defendants operate a "specialized division focused on elder abuse" which handles physical, emotional, and financial abuse cases as well as physical neglect cases, but County Defendants "have not investigated or prosecuted anyone in connection with a death by lethal drugs made available pursuant to EOLOA, nor have they even considered bringing criminal charges against an individual in this context." *Id.* ¶ 118.  Their failure to do so directly impacts all Plaintiffs including Plaintiff CALIF, which is based in Los Angeles County and serves disabled constituents in Los Angeles County, as well Plaintiff United Spinal, which also operates and has members with spinal cord injuries throughout California including a chapter in Los Angeles County. *Id.* ¶¶ 19, 29.

This differential treatment arising from County Defendants' actions is "situated within a long history of American state laws and practices directly harming and discriminating against people with disabilities on the grounds that *those peoples' lives* [the lives of people with disabilities] are not worthy of protecting as others." *Id.* ¶ 5.  County Defendants violate federal disability laws by "(1) denying people with terminal disabilities the opportunity to benefit from enforcement of criminal and certain civil laws; (2) providing an opportunity to people with terminal disabilities to benefit from enforcement of criminal and certain civil laws that is not equal to that afforded to others; (3) providing a benefit of enforcement of criminal

and certain civil laws to people with terminal disabilities that is not as effective in affording equal opportunity to obtain the same result or benefit as that provided to others; (4) unnecessarily providing a different or separate benefit of enforcement of criminal and certain civil laws to individuals with terminal disabilities; (5) limiting people with terminal disabilities in the enjoyment of rights, privileges, advantage, or opportunities enjoyed by others, including the benefit of enforcement of criminal and certain civil laws; and (6) using criteria or methods of administration that have the effect of discriminating against people with terminal disabilities and substantially impairing accomplishment of the objectives of these public entities with respect to individuals with terminal disabilities." *Id*. ¶¶ 171, 183.

## LEGAL STANDARD

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.").

"All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Federal Practice and Procedure (Wright & Miller) § 1357 (3d ed. 2019). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011) (citations omitted). Moreover, even if the motion to dismiss is granted, "a district court should grant leave to amend" unless the complaint "could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citations omitted).

**ARGUMENT**

I.  **PLAINTIFFS' COMPLAINT IDENTIFIES CONCRETE, IMMINENT INJURIES AND PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS**

Courts "must take a broad view of standing in civil rights cases, particularly in the ADA context where private enforcement is the primary method of securing compliance with the act's mandate." *Langer v. Kiser*, 57 F.4th 1085, 1099 (9th Cir. 2023) (citation and quotation marks omitted).  To establish standing, "plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 897 (citation omitted).

County Defendants contend that Plaintiffs have not alleged any specific act by County Defendants that has caused an injury or threatens to cause an injury to any Plaintiff.  Mot. at 5.[1]  In doing so, County Defendants completely ignore Plaintiffs' allegations that County Defendants withhold suicide prevention services and fail to enforce criminal and civil laws specifically when the decedent dies by physician assisted suicide. *See* Statement of Facts, *supra*. An increased risk of harm to people with disabilities resulting from the actions of public entities is adequately traceable to particular defendants whose actions contribute to the harm, even when those defendants did not alone cause the injury and could not alone cure it. *See, e.g.*, *Selene v. Leg. Of Idaho*, 514 F. Supp. 3d 1243, 1251-52 (D. Idaho 2021) (increased risk of harm from contracting COVID-19 from participating in legislative process due to legislature's failure to adopt mitigation measures was adequate injury for standing).

As further discussed below, County Defendants actions and omissions injure

---

[1] Pin cites to Defendants' Motion use internal, not ECF, pagination.

[4339984.5]

the Organizational Plaintiffs.

### A.    Plaintiffs Sufficiently Allege Direct Organizational Standing

"An organization has 'direct standing to sue when it shows a drain on its resources from both a diversion of its resources and frustration of its mission.'" *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (cleaned up) (quoting *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012)); *see also Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 813, n.22 (9th Cir. 2023) (plaintiff that "presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities … has standing to bring … suit on its own behalf") (citation omitted).

Plaintiffs bring this case on behalf of organizations with members and constituents within County Defendants jurisdiction.  Compl. ¶ 19 (United Spinal has over 5,000 members throughout California and a chapter in Los Angeles); ¶ 29 (CALIF is based in Los Angeles and serves constituents in Los Angeles County). Due to lack of enforcement of the criminal and civil laws by County Defendants, United Spinal's members face an increased risk of dying by being steered to suicide, which frustrates United Spinal's mission to keep members alive and help them obtain better quality of life and greater independence.  Compl. ¶¶ 21-22.  United Spinal has diverted resources away from other activities to combat the elevated risk of death to its members that EOLOA has created, such as by conducting education and outreach campaigns.  *Id.* ¶ 22.  Similarly, due to the lack of enforcement of criminal and civil laws by County Defendants, CALIF's constituents face discrimination based on disability and an elevated risk of death, which frustrates CALIF's mission.  *Id.* ¶¶ 30, 32.  CALIF has diverted resources away from other programs to address EOLOA's impacts on its constituents, through measures such

as enhanced peer counseling and case management.  *Id.* ¶ 32.[2]  These allegations are adequate to satisfy standing.  *See Election Integrity Project Cal., Inc. v. Weber*, No. 21-56061, 2022 WL 16647768, at *1 (9th Cir. Nov. 3, 2022) (voting organization adequately pled standing where it alleged regulations frustrated its mission by causing election irregularities and threatening disenfranchisement, and that it expended resources to observe voting practices).

### B.    Plaintiffs Sufficiently Allege Representational Standing

"An organization has standing to bring suit on behalf of its members when: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)); *see also Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1444 (2022) (environmental organization's allegations were sufficient to show standing on behalf of members whose aesthetic and recreational use of creek was impacted by defendant's pollutants); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157-59 (2023) (nonprofit organization established representational standing to bring suit challenging universities' race-based admissions programs).

In arguing that Plaintiffs have not alleged a past or threatened injury, County Defendants completely ignore Plaintiffs' allegations that their members are harmed by being subjected to a heightened risk of death, especially if their judgment is impaired.  Specifically, Plaintiff United Spinal alleged that it has members in

---

[2] County Defendants' failure to enforce laws related to EOLOA deaths also frustrates the organizational missions of NDY and IPR, *see id.* ¶¶ 23-27, and have caused both organizations to divert resources, *see id.* ¶¶ 25, 27.

California who qualify to use EOLOA, including Mr. VanHook, and who have accessed lethal medications and/or committed suicide by means of EOLOA. Compl. ¶¶ 19, 21, 33.  Plaintiffs allege that the actions of County Defendants place its members at greater risk of dying.  *Id.* ¶¶ 20-22.  An increased risk of harm is an adequate injury to establish standing.  *See e.g.*, *M.R. v. Dreyfus*, 697 F.3d 706, 726-29 (9th Cir. 2012) (finding sufficient risk of irreparable injury where plaintiff Medicaid beneficiaries with severe mental and physical disabilities showed they were likely to be institutionalized by threatened reductions in the amount of in-home personal care services available under the state's Medicaid plan); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 414-15 (S.D.N.Y. 2012) (city's failure to include people with disabilities in emergency plans and the resulting "threat of future harm and the fear and apprehension caused by it" were adequate injury for individual disabled plaintiffs to have standing under the ADA).

Reducing the risk of death for people with terminal disabilities is germane to United Spinal's purpose to empower people with disabilities to obtain greater independence and quality of life.  Compl. ¶ 19.  The claims asserted do not require participation of United Spinal's members because Plaintiffs challenge County Defendants' general policies and practices related to EOLOA, not individual prosecutorial decisions.  *See, e.g.*, *Disability Rts. Council of Greater Washington v. D.C.*, No. CIV.A. 04-0529 (JDB), 2005 WL 513495, at *2 (D.D.C. Mar. 3, 2005) (holding United Spinal could bring claims challenging allegedly inaccessible parking meters and intrusive and burdensome handicap parking placard application process).

Involvement of individual members is unnecessary where the claims target centralized policies or methods of administration, even where such policies have different impacts on the rights of different association members.[3]  *See Int'l Union,*

---

[3] United Spinal need not identify a member with standing by name "[w]here it is

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES AND DISTRICT ATTORNEY GASCÓN'S MOTION TO DISMISS

*United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-88 (1986) (union had standing to challenge Secretary of Labor's interpretation of Trade Act's Trade Readjustment Allowance eligibility where each member's injury was based on individual benefits determinations issued by different state agencies, and where some members had received improper benefits determinations and had thus been injured, others had received proper benefits so experienced no injury, and others had yet to receive benefits determinations). Further, because United Spinal seeks only injunctive relief, the relief requested does not require participation of United Spinal's members.  Compl. ¶ 22; *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1127-28 (S.D. Cal. 2005) (participation of an association's members was unnecessary for association to litigate claims for declaratory and injunctive relief challenging physical access barriers).

## C.    *O'Shea* Does Not Foreclose Plaintiffs' Standing

County Defendants cite only one case in support of their argument, *O'Shea v. Littleton*, 414 U.S. 488 (1974), in which the Court held that residents of an Illinois city lacked standing to challenge bond-setting, sentencing, and jury fee practices in criminal cases because none of the named plaintiffs suffered any injury in the manner specified and there were no allegations that any relevant state criminal statute was unconstitutional on its face or as applied nor any allegations that

---

relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury ….". *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *see also Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1054 (C.D. Cal. 2019).  Because United Spinal has over 5,000 members across California, many of whom become suicidal on occasion, it is "relatively clear" that one or more of its members have been or will be harmed by County Defendants' non-enforcement of criminal laws related to assisted suicide. Compl. ¶¶ 19-21.

plaintiffs had been or would be improperly charged with violating the criminal law. Motion at 4-5.

*O'Shea* is distinguishable for multiple reasons and does not preclude Plaintiffs' claims here.  The *O'Shea* Court found insufficient threat of repeated injury to the specific plaintiffs because it would require the Court to speculate that the individuals would break the law in the future and be subject to the same judges. 414 U.S. at 496.  Crucial to the Court's holding was "the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied" and any threat of arrest for "violat[ing] an unchallenged law" is insufficient to confer standing.  *Id.* at 496-97.  Here, in contrast, Plaintiffs are challenging EOLOA as unconstitutional and in violation of federal disability rights laws.  Compl. ¶ 3, *see also* Prayer for Relief.  Plaintiffs do not challenge any specific decision by the County Defendants to prosecute or not prosecute any specific individual; rather, Plaintiffs' Complaint challenges the lawfulness of EOLOA which broadly immunizes medical professionals from civil and criminal liability and "effectively handcuffs law enforcement agencies, making it impossible to investigate and prosecute violations of the Act." *Id*. ¶¶ 119-120.

The Court in *O'Shea* further based its holding on the basis that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."  414 U.S. at 495-96 (finding a lack of continuing effects because "[n]either the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners")  Here, Plaintiffs have alleged continuing, present adverse effects—including the increased risk of harm to United Spinal's members and CALIF's constituents as well as diversion of both Plaintiffs' resources and frustration of purpose—due to the lack of criminal enforcement by County Defendants.  Compl. ¶¶ 21-22, 30, 32.

## II.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY PROSECUTORIAL IMMUNITY OR THE ELEVENTH AMENDMENT

County Defendants assert that they are protected from liability by absolute prosecutorial immunity, Mot. at 5-6, but the Ninth Circuit has firmly held that "[p]rosecutorial immunity only protects [prosecutors] from section 1983 damage claims; it does not protect them from suits for injunctive relief." *Gobel v. Maricopa Cty.*, 867 F.2d 1201, 1203 n.6 (9th Cir. 1989), *abrogated on other grounds by Merritt v. Cty. of L.A.*, 875 F.2d 765, 769 (9th Cir. 1989) (citing cases).  Plaintiffs here seek declaratory and injunctive relief—not damages.  Compl., p. 91 (Prayer for Relief).  Prosecutorial immunity therefore has no application to this case.

County Defendants' authorities do not hold otherwise.  Three of the four cases cited by County Defendants for the proposition that they are entitled to prosecutorial immunity involved damages claims.  *See Imbler v. Pachtman*, 424 U.S. 409, 416 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 120 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993).  The fourth, *Reichle v. Howards*, 566 U.S. 658, 667-68 (2012), is inapposite because it involved retaliatory arrest claims by an arrestee against Secret Service agents, not county prosecutors, who moved for summary judgment on the basis of qualified immunity, not absolute prosecutorial immunity.  The Supreme Court referred to prosecutorial immunity in the specific context of "retaliatory prosecution cases," comparing them to the retaliatory arrest case before the court.  *Id.*  The reference to prosecutorial immunity was dicta and is irrelevant here.

Nor does the Eleventh Amendment immunize County Defendants from liability.  It is settled law that "the Eleventh Amendment does not bar an action seeking prospective relief against a state official for a violation of federal law." *R.W. v. Columbia Basin Coll.*, No. 21-35995, 2023 WL 5192565, at *4 (9th Cir. August 14, 2023); *see also Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999); *Mecinas*, 30 F.4th at 903 ("[U]nder *Ex parte Young*, 209

U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), [Eleventh Amendment] immunity is subject to an exception for 'actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law ….'").  Because Plaintiffs request declaratory and injunctive relief only, Compl., p. 91 (Prayer for Relief), the Eleventh Amendment presents no barrier to Plaintiffs' claims against County Defendants.[4]

County Defendants cite *Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008) for the proposition that Defendant Gascón "act[s] as [a] state official[], and so possess[es] Eleventh Amendment immunity, when 'acting in [his] prosecutorial capacity.'"  Mot. at 6.  The question before the Ninth Circuit in *Del Campo*, however, was whether a private company contracting with a district attorney was entitled to state sovereign immunity.  *Id*. at 1075.  The district attorney was no longer in the suit, and the court did "not inquire into the DA's role." *Id*. at 1075, n.7.

## III. PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER THE ADA AND REHABILITATION ACT

To state a claim under Title II of the ADA "a plaintiff must show '(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Townsend v. Quasim*, 328 F.3d 511, 516 (9th Cir. 2003) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

---

[4] County Defendants suggest that they may be entitled to qualified immunity because "government officials are not subject to damages liability for the performance of discretionary functions where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Motion at 6, n.1 (quoting *Buckley*, 509 U.S. at 273).  But the *Buckley* quote they cite establishes that qualified immunity does not apply because this is not a damages action.

County Defendants do not challenge Plaintiffs' allegations that they are (1) qualified individuals with disabilities who (2) have been discriminated against in public services or programs.  Rather, the County Defendants claim only that "Plaintiffs do not plead that any of movants' alleged conduct was due to the disability of any Plaintiff."  Mot. at 7.

Title II's prohibition against discrimination "by reason of such disability" does not require discriminatory intent; moreover, where a government's facially neutral policy would "unduly burden disabled persons," that policy discriminates "by reason of" disability.  *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 965 (N.D. Cal. 2020) (finding allegation that rental adjustment program burdened people with disabilities due to the lack of accessible units was sufficient to allege discrimination "by reason of" disability.)  Additionally, the Ninth Circuit has held "that the phrase 'by reason of' in the statute establishes a 'motivating factor' causal standard for liability when there are two or more possible reasons for the challenged decision and at least one of them may be legitimate."  *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009) (citing *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1066 (9th Cir. 2005)).  As such, where "there is more than one reason for an allegedly discriminatory decision, a plaintiff need show only that discrimination on the basis of disability was a 'motivating factor' for the decision."  *Id.*

Plaintiffs have adequately alleged that County Defendants' conduct is motivated by the nature of Plaintiffs' disabilities.  *See, e.g.*, Compl. ¶¶ 171, 183 (County Defendants violate the ADA and Section 504 by engaging in six different forms of discrimination based on the fact that the individual has a terminal disability); *see also id.* ¶ 9 ("EOLOA deprives Plaintiffs and their members access to these life-preserving interventions because of their disabilities ….  EOLOA shields physician-assisted suicide deaths from law enforcement investigation and prosecution, solely because the person who died by suicide had a terminal disability."); *id.* ¶ 5 ("EOLOA is situated within a long history of American state

laws and practices directly harming and discriminating against people with disabilities on the grounds that *those peoples' lives* are not as worthy of protecting as others."); *id.* ¶ 2 ("[T]hat entire protective network of services [including law enforcement services] is withheld from the Plaintiffs and their members—solely on the basis of a doctor's 'good faith' diagnosis of terminal disability.").

Plaintiffs further allege that County Defendants fail to provide equal protection of the law specifically to people with terminal disabilities. *Id.* ¶¶ 113, 118, 171. At this stage, these allegations must be presumed true. The County Defendants' policy of first treating terminally ill people like all others and then, after EOLOA's passage and implementation, declining to provide equal protection of the law and declining to enforce laws to protect people with terminal disabilities from death unduly burdens people with disabilities in violation of the ADA. *Cf. Rodde v. Bonta*, 357 F.3d 988, 997-98 (9th Cir. 2004) (state and county defendants violated ADA by eliminating health care services for disabled by consolidating services for disabled in hospital then closing hospital, where services could not be provided effectively elsewhere).

The cases that County Defendants cite are not on-point and are all orders at the summary judgment stage of litigation. *Smith v. Clark Cnty. School District*, 727 F.3d 950 (9th Cir. 2013) and *Brewer v. United States Postal Service*, No. 22-35267, 2023 WL 4637112 (9th Cir. July 20, 2023) do not even involve Title II ADA claims. In both *Smith* and *Brewer*, the Ninth Circuit *denied* Defendants' motions for summary judgment on the plaintiffs' employment discrimination claims. 727 F.3d at 960; 2023 WL 4637112, at *1. In *Hyer v. City & Cnty. of Honolulu*, the plaintiff, the estate of a man shot and killed by police, brought a Title II ADA claim challenging the shooting as discriminatory, and the court granted summary judgment for defendants based on undisputed facts showing plaintiff posed a direct threat and officers had probable cause to arrest plaintiff. No. CV 19-00586, 2023 WL 1766456, at *26 (D. Haw. Feb. 3, 2023). However, in an earlier order from the

same case, the court denied defendants' motion to dismiss the plaintiffs' ADA claims because they "turn[ed] on questions of fact that cannot be resolved in a Motion to Dismiss."  *Hyer v. City & Cnty. of Honolulu*, No. CV 19-00586, 2021 WL 2172816, at *11-*12 (D. Haw. May 27, 2021).

## IV.   PLAINTIFFS' COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER 42 U.S.C. § 1983

Plaintiffs bring Section 1983 claims against Defendant Gascón only.  There are two elements to a section 1983 claim:  a plaintiff must show that they have been deprived of a right secured by an appropriate federal law, and that the defendant was acting under color of state law in depriving them of this right.  *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991).  Claims against a defendant in his official capacity must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  County Defendants do not contest that Plaintiffs have satisfied these elements of their section 1983 claims.  *See* Compl. ¶¶ 113-119.

County Defendants instead contend Plaintiffs' constitutional claims "fail" because Defendant Gascón is not, and was not, an "integral participant" in any alleged unconstitutional or unlawful conduct concerning the act.  Mot. at 7-8.  But the integral participant standard does not apply here.

The "integral participation" standard "is used to determine whether an individual defendant can be held *personally* liable for a violation of a plaintiff's rights."  101 A.L.R. 6th 207 (emphasis added); *see also* Ninth Circuit Manual of Model Civil Jury Instructions, 9.5, available at https://www.ce9.uscourts.gov/jury-instructions/model-civil (discussing "integral participant" standard for liability with respect to Section 1983 claims against defendants in their "individual capacity").  County Defendants do not cite, nor are Plaintiffs aware of, any case applying this standard where, as here, a public official is sued only in his official capacity, which

"represent[s] … another way of pleading an action against [the] entity of which [the] officer is an agent …." *Monell*, 436 U.S. at 690, n. 55.

County Defendants rely on *Newberry v. County of San Bernardino*, 750 Fed. App'x 534 (9th Cir. 2018), *Sjurset v. Button*, 810 F.3d 609 (9th Cir. 2015), and *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018), to argue that Defendant Gascón is not an "integral participant," but these cases are inapposite.  In *Newberry*, an unpublished decision, the Ninth Circuit affirmed the trial court's decision on summary judgment that county officers, who were sued in their individual and official capacities, played no role in planning a home search, in securing the warrant, or in the operational briefing held the morning the warrant was executed, and therefore were not liable for the city's allegedly unlawful search.  750 Fed. App'x at 536.  Similarly, in *Sjurset*, the court found on summary judgment that there were no facts suggesting county officers, who were sued in their individual and official capacities, were privy to any discussions, briefings, or decisions made by the Department of Human Services in a protective custody determination.  810 F.3d at 619.  *Keates v. Koile* is similarly distinguishable because plaintiffs brought individual claims against Child Protective Services employees who removed a child from her mother's custody.  883 F.3d at 1241-42.  County Defendants do not even attempt to explain how these cases have relevance to the case at hand, nor could they.  *Newberry*, *Sjurset*, and *Keates* all involve government employee actions in a single incident; in contrast, Plaintiffs challenge the constitutionality of EOLOA, and allege that County Defendants, including Defendant Gascón in his official capacity, choose to not investigate or prosecute *any* persons involved in the death of a person with terminal disabilities who died by physician-assisted suicide.  *See* Complaint ¶¶ 113-119, 183.

Even if the "integral participation" standard did apply (it does not), Plaintiffs satisfy it.  The Ninth Circuit has permitted liability based on the integral participation standard "in two situations: those in which (1) the defendant knows

[4339984.5]

about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022).

County Defendants claim that Defendant Gascón cannot be liable solely because he was "neither a party to nor any way involved in the enactment of the Act" and "has no authority to repeal it." Mot. at 8. Here, Defendant Gascón's non-enforcement policy for the District Attorney's Office is equivalent to acquiescing to constitutional violations and also sets in motion a series of non-compliance by his staff that he should reasonably know causes others to inflict the constitutional injury. For example, the Complaint alleges that Defendant Gascón is responsible for ensuring fair and equal enforcement of the law through executing the duties of his office, and fails to discharge this responsibility and deny this public benefit to individuals with terminal disabilities when they permit physicians to assist in suicides of people with impaired judgment without legal consequence. Compl. ¶¶ 113-119. Plaintiffs further allege that Defendant Gascón is responsible for enforcing criminal laws and certain civil laws protecting older people and those with disabilities, and suicidal people, but fails to discharge their duties to enforce these laws pursuant to EOLOA. *Id.* ¶ 183; *see also id.* ¶ 118 (describing County Defendants' specialized unit focused on elder abuse, for which County Defendants "have not investigated or prosecuted anyone in connection with a death by lethal drugs made available pursuant to EOLOA"). The Complaint thus states plausible constitutional claims based on Defendant Gascón's participation in the enforcement of EOLOA.

## V.   PLAINTIFFS' REQUESTED RELIEF IS PROPER

Plaintiffs seek an order enjoining EOLOA and Defendants' enforcement of the law. Compl. ¶ 13 & Prayer for Relief. The Court is empowered to grant this

[4339984.5]

18

relief. *See, e.g.*, *Hecox v. Little*, No. 20-35813, 2023 WL 5283127, at *22 (9th Cir. Aug. 17, 2023); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016) (Title II of ADA preempted state voting certification requirement); *O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976, 984-85 (E.D. Cal. 2010) (preempting California law that conflicted with ADA); *Cf. Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1234 (10th Cir. 2009) ("[T]he demands of the federal Rehabilitation Act do not yield to state laws that discriminate against the disabled; it works the other way around.") (Gorsuch, J., concurring).

County Defendants rely on *O'Shea v. Littleton* and *Younger v. Harris* to argue that they cannot be subject to an injunction. Mot. at 8-10. But those cases relate only to attempts by plaintiffs to enjoin specific criminal prosecutions against specific individuals. *See O'Shea*, 414 U.S. at 496; *Younger v. Harris*, 401 U.S. 37, 39 (1971).

County Defendants' quote *Younger* out-of-context for the proposition that "the possible unconstitutionality of a statute 'on its face' does not itself justify an injunction against good faith attempts to enforce it." Mot. at 9 (quoting *Younger*, 401 U.S. at 54). In *Younger*, the plaintiff asked the Court to stop a local district attorney from prosecuting him; the Court refused and held that federal courts may not hear civil rights tort claims brought by a person who is currently being prosecuted for a matter arising from that claim until the person is convicted or found not guilty of the crime, unless the defendant will suffer an irreparable injury that is "both great and immediate," and that merely having to endure a criminal prosecution is no such irreparable harm. 401 U.S. at 45. *Younger* has no bearing on whether this Court may enjoin EOLOA or Defendants' enforcement of it. Federal courts can and do enjoin enforcement of unconstitutional laws. *See, e.g.*, *Hecox*, No. 20-35813, 2023 WL at *22; *Isaacson v. Horne*, 716 F.3d 1213, 1231 (9th Cir. 2013) (remanding for issuance of injunction to enjoin as unconstitutional Arizona statute prohibiting abortions after 20 weeks gestation); *Klein v. City of San*

*Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (remanding for issuance of injunction to enjoin enforcement of anti-littering ordinance as violative of First Amendment).  Further, County Defendants' argument that they cannot be enjoined "from not investigating and not prosecuting lawful conduct," Mot. at 9-10, ignores Plaintiffs allegations that County Defendants also fail to investigate or prosecute instances of coercion or the provision of lethal drugs to people with terminal disabilities who have impaired judgment.  *See, e.g.*, Compl. ¶¶ 2, 119, 123; *see also id.* ¶¶ 99, 102.  Plaintiffs also allege County Defendants withhold suicide prevention services from people who die by physician assisted suicide.  *Id.* ¶ 2.

County Defendants quote *O'Shea* to argue that the injunction Plaintiffs seek is "intrusive and unworkable."  Mot. at 10.  *O'Shea* is incomparable because the plaintiffs there sought very different relief—ongoing regulation of individual prosecutions.  414 U.S. at 500.  Here, by contrast, Plaintiffs challenge the lawfulness and constitutionality of a state law.  Plaintiffs are not asking the Court to enjoin, compel, or otherwise interfere with any ongoing criminal prosecutions, nor are plaintiffs requesting any "ongoing federal audit of state criminal proceedings."  Mot. at 9-10 (quoting *O'Shea*, 414 U.S. at 500).  Enjoining EOLOA is no different from court injunctions enjoining other unlawful laws.  It would not require any particular prosecutions, prosecution quotas, or ongoing supervision of prosecutions.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

[4339984.5]

**CONCLUSION**

For the foregoing reasons, County Defendants' Motion to Dismiss should be denied in its entirety.  To the extent the Court disagrees, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend.


DATED:  August 18, 2023                  Respectfully submitted,

                                         ROSEN BIEN GALVAN & GRUNFELD LLP

                                         By: */s/ Michael W. Bien*
                                             Michael W. Bien

                                         Attorneys for Plaintiffs

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

[4339984.5]

21

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,426 words, which complies with the word limit of L.R. 11-6.1.

DATED:  August 18, 2023                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*

Michael W. Bien

Attorneys for Plaintiffs