MICHAEL W. BIEN – 096891
 *mbien@rbgg.com*
VAN SWEARINGEN – 259809
 *vswearingen@rbgg.com*
KARA J. JANSSEN – 274762
 *kjanssen@rbgg.com*
MICHAEL S. NUNEZ – 280535
 *mnunez@rbgg.com*
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104

HABEN GIRMA – 293667
 *contact@habengirma.com*
405 El Camino Real #209
Menlo Park, California  94025-5240
Telephone:  (510) 210 3714

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED SPINAL ASSOCIATION et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 2:23-cv-03107 FLA(GJSx)<br><br>**PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS**<br><br>Date:    September 29, 2023<br>Time:    1:30 p.m.<br>Crtrm.:  6B<br>Place:    350 West First Street<br>            Los Angeles, CA 90012<br><br>Judge:  Hon. Fernando L. Aenlle-Rocha<br>Magistrate:  Hon. Gail J. Standish<br><br>Trial Date:   None Set |

[4324237.14]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS ......... 3

    A.    The Individual Plaintiffs Have Standing ................................................. 3

    B.    The Organizational Plaintiffs Have Standing ......................................... 8

        1.    The Organizational Plaintiffs Have Direct Standing Based on Injuries Each Has Suffered and Continues to Suffer ............. 8

        2.    Plaintiff United Spinal Has Associational Standing Based on Its Members ............................................................................ 12

    C.    The Eleventh Amendment Does Not Bar Plaintiffs' Claims ................ 14

II.   PLAINTIFFS' COMPLAINT STATES VIABLE CLAIMS FOR RELIEF UNDER THE CONSTITUTION AND FEDERAL DISABILITY RIGHTS LAWS ........................................................................ 16

    A.    Plaintiffs Have Adequately Alleged Facial Challenges to EOLOA ................................................................................................... 16

    B.    Plaintiffs' Complaint Adequately Alleges Claims Under the Americans with Disabilities Act and Rehabilitation Act ...................... 19

    C.    Plaintiffs' Complaint Adequately Alleges an Equal Protection Claim .................................................................................................... 22

    D.    Plaintiffs' Complaint Adequately Alleges a Due Process Claim ......... 26

CONCLUSION................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004)............................................................3

*Aleman v. Glickman,*
    217 F.3d 1191 (9th Cir. 2000)..........................................................25

*All. of Am. Insurers v. Cuomo,*
    854 F.2d 591 (2d Cir. 1988)..............................................................4

*Am Fed'n of Gov't Emps. Local 1 v. Stone,*
    502 F.3d 1027, 1032 (9th Cir 2007)................................................12

*Arizona Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014)..........................................................24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................2

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013)............................................................15

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.,*
    648 F.3d 986 (9th Cir. 2011)..............................................................3

*Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity,*
    950 F.2d 1401 (9th Cir. 1991)..........................................................12

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ..........................................................................3

*Bay Area Research and Treatment, Inc. v. City of Antioch,*
    179 F.3d 725 (9th Cir. 1999)............................................................18

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) ........................................................................17

*California v. Texas,*
    141 S. Ct. 2104 (2021) ....................................................................11

*Chang v. United States,*
    327 F.3d 911 (9th Cir. 2003)..............................................................4

*Christian Med. and Dental Ass'n v. Bonta,*
    625 F. Supp. 3d 1018 (C.D. Cal. 2022)...........................................12

*Christian Medical And Dental Association v. Bonta,*
    625 F. Supp. 3d 1018 (C.D. Cal. 2022)...........................................27

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ............................................................................. 23, 25

*City of Los Angeles, Calif. v. Patel*,
    576 U.S. 409 (2015) ..................................................................................... 17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................................................... 5

*Coal. to Defend Affirmative Action v. Brown*,
    674 F.3d 1128 (9th Cir. 2012) ..................................................................... 16

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) ....................................................................... 18

*Ctr. for Food Safety v. Perdue*,
    517 F. Supp. 3d 1034 (N.D. Cal. 2021) ......................................................... 4

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) ................................................................................... 8

*Disability Rts. Council of Greater Washington v. D.C.*,
    No. CIV.A. 04-0529 (JDB), 2005 WL 513495 (D.D.C. Mar. 3, 2005) ......... 13

*Duvall v. County of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) ..................................................................... 19

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ......................................................................... 9

*Ex parte Young*,
    209 U.S. 123 (1908) ..................................................................................... 14

*Freeman v. City of Santa Ana*,
    68 F.3d 1180 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) ................................................................................. 23

*Friends of the Earth. Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ..................................................................................... 12

*Harlen Assocs. v. Inc. Village of Mineola*,
    273 F.3d 494 (2d Cir. 2001) ........................................................................ 24

*Havens Realty Corp., v. Coleman*,
    455 U.S. 363 (1982) ....................................................................................... 9

*Hecox v. Little*,
    No. 20-35813, 2023 WL 5283127 (9th Cir. Aug. 17, 2023) ........................ 23

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) ......................................................................... 3

*Johnson by Johnson v. Thompson*,
    971 F.2d 1487 (10th Cir. 1992) ................................................................... 22

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ......................................................................................... 3

*Lee v. Oregon*,
  107 F.3d 1382 (9th Cir. 1997) ....................................................... 6, 7, 14, 26

*Levine v. Johanns*,
  No. C 05-04764 MHP, 2006 WL 8441742 (N.D. Cal. Sept. 6, 2006)............ 4

*Loesel v. City of Frankenmuth*,
  692 F.3d 452 (6th Cir. 2012) .......................................................................... 24

*Los Angeles Cnty. Bar Ass'd v. Eu*,
  979 F.2d 697 (9th Cir. 1992) .......................................................................... 15

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir. 2002) ................................................................ 18, 21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 3

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ....................................................................................... 12

*Lyng v. Castillo*,
  477 U.S. 635 (1989) ....................................................................................... 25

*Mark H. v. Lemahieu*,
  513 F.3d 922 (9th Cir. 2008) .......................................................................... 22

*Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*,
  No. 07-00495 JMS/KSC, 2007 WL 4440962 (D. Haw. Dec. 19, 2007),
  *aff'd*, 303 F. App'x 416 (9th Cir. 2008) ........................................................ 12

*McGugan v. Aldana-Bernier*,
  752 F.3d 224 (2d Cir. 2014) ........................................................................... 22

*Memmer v. Marin County Courts*,
  169 F.3d 630 (9th Cir. 1999) .......................................................................... 22

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ..................................................................... 2, 5

*Murguia v. Langdon*,
  61 F.4th 1096 (9th Cir. 2023) ........................................................................ 27

*Nelsen v. King Cty.*,
  895 F.2d 1248 (9th Cir. 1990) .......................................................................... 3

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992) ............................................................................................ 25

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) .......................................................................... 14

*Oregon Advocacy Center v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) .................................................................. 12

*Ornelas v. City of Pomona*,
    No. CV 09-6374 PA (CTX), 2010 WL 11597373 (C.D. Cal. Jan. 25, 2010) ......................................................................................................... 24

*P.P. v. Compton Unified Sch. Dist.*,
    135 F. Supp. 3d 1098 (C.D. Cal. 2015) .................................................... 16

*Pennsylvania v. West Virginia*,
    262 U.S. 553 (1923) ................................................................................... 3

*Planned Parenthood of Southeastern Pa. v. Casey*,
    505 U.S. 833 (1992) ................................................................................. 17

*Plyler v. Doe*,
    457 U.S. 202 (1982) ................................................................................. 25

*Polanco v. Diaz*,
    No. 22-15496, 2023 WL 5008202 (9th Cir. Aug. 7, 2023) ....................... 27

*Project Sentinel v. Evergreen Ridge Apartments*,
    40 F. Supp. 2d 1136 (N.D. Cal. 1999) ...................................................... 11

*Regional Rail Reorganization Act Cases*,
    419 U.S. 102 (1974) ................................................................................... 4

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ................................................................... 11

*Sample v. Johnson*,
    771 F.2d 1335 (9th Cir. 1985) ................................................................... 3

*Shavelson v. Bonta*,
    608 F.Supp.3d 919 (N.D. Cal. 2022) ......................................................... 6

*Simmons v. Navajo Cnty., Ariz.*,
    609 F.3d 1011 (9th Cir. 2010) ................................................................... 22

*Townsend v. Quasim*,
    328 F.3d 511 (9th Cir. 2003) ..................................................................... 19

*United States v. Aguilar*,
    883 F.2d 662 (9th Cir.1989), *cert. denied,* 498 U.S. 1046 (1991) ............... 23

*United States v. Salerno*,
    481 U.S. 739 (1987) ..................................................................... 16, 17, 19

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ................................................................... 8

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ................................................................................. 17

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ............................................................................6, 17, 25

*Williams v. Field,*
    416 F.2d 483 (9th Cir. 1969) ..........................................................................25

## **STATUTES**

Cal. Health & Safety Code §§ 131300 ......................................................................15

Cal. Health & Safety Code §§ 443.9 ........................................................................16

## **OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1357 (3d ed. 2022) ....................................3

**INTRODUCTION**

Plaintiffs United Spinal Association ("United Spinal"), Not Dead Yet ("NDY"), Institute for Patients' Rights ("IPR"), and Communities Actively Living Independent and Free ("CALIF") (collectively "Organizational Plaintiffs"), and Ingrid Tischer and Lonnie VanHook ("Individual Plaintiffs") (together, "Plaintiffs") bring this action challenging California's End of Life Options Act ("EOLOA"), under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Equal Protection and the Due Process Clauses of the United States Constitution.  Plaintiffs bring their statutory claims against all Defendants, including Defendants State of California, Gavin Newsom, Robert Bonta, California Department of Public Health ("CDPH"), Tomas J. Aragón, California Department of Health Care Services ("CDHCS"), Michelle Baass, Mental Health Services Oversight and Accountability Commission ("MHSOAC"), Mara Madrigal-Weiss, Medical Board of California ("MBC"), and Kristina D. Lawson ("State Defendants"), and bring their constitutional claims against Defendants Newsom, Bonta, Aragón, Baass, Madrigal-Weiss, and Lawson, in their official capacities. Plaintiffs also bring claims against Defendants County of Los Angeles and District Attorney George Gascón, which are subject to a separate motion to dismiss that Plaintiffs are concurrently opposing.

Plaintiffs' Complaint alleges that State Defendants implement, administer, and enforce a dangerous suicide prevention system that excludes people with terminal disabilities by steering them away from necessary mental health care, medical treatment, and disability supports and towards death by suicide.  Plaintiffs allege that State Defendants' actions are directed at Californians that have the highest risk factors for suicide—characterized by old age, illness, and disability—and are likely to experience depression and impaired judgment in connection with decisions about suicide.

State Defendants characterize EOLOA otherwise, asserting that the criteria

are "strict," with a "rigorous process …ensuring a patient's voluntary and informed consent," and a "bevy of stringent requirements" that include "multiple safeguards put in place to eliminate … [even the] possibility" of duress, coercion, or lack of capacity.   State Defendants' Motion to Dismiss, Dkt. 20 ("Motion") at 1, 19.

EOLOA, in fact, is anything but a stringent or rigorous process.  It is a series of exemptions from the existing system that otherwise prohibits doctors from knowingly assisting a suicidal patient's death, including the Penal Code's prohibition of mercy killing and assisted suicide, the Medical Board's regulation of prescribing practices, peer review by the medical profession, and the patient and their family's ability to sue for medical malpractice.  Plaintiffs experience daily injury and harm from EOLOA, which devalues their lives as an official policy of the State:  California will not interfere with your expression of suicidality (as it does with everyone else) because anyone can see that it is rationale for someone like you to want to die—in fact, we will encourage and help you commit suicide by providing you with the lethal means because you are "suffering" from your disabilities.  Complaint, Dkt. 1 ("Compl.") ¶¶ 84-140.

State Defendants fail to engage with the actual allegations of Plaintiffs' well-pled Complaint and instead make unsupported factual assertions that are disputed and inappropriate to resolve by a Rule 12 motion.  None of State Defendants' arguments are availing.

## LEGAL STANDARD

In deciding this Motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

"All federal courts are in agreement that the burden is on the moving party to

prove that no legally cognizable claim for relief exists."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2022).  "Dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims."  *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004)).  Moreover, even if the motion to dismiss is granted, "a district court should grant leave to amend" unless the complaint "could not possibly be cured by the allegation of other facts."  *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citations omitted).

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

### A.    The Individual Plaintiffs Have Standing

In order to establish standing, Plaintiffs must show:  (1) a "concrete and particularized" and "actual or imminent" injury, (2) a "causal connection between the injury and the conduct complained of," and (3) that the injury will likely be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff seeking injunctive relief must demonstrate that a "credible threat" of injury exists.  *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983)).  Plaintiffs can do so by establishing "that some systematic pattern, repetition or relationship exists" to show a threat of future harm.  *Nelsen v. King Cty.*, 895 F.2d 1248, 1254 (9th Cir. 1990).  "[O]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).  Notably, "an unreasonable exposure to risk may itself cause cognizable injury" and "Plaintiffs can establish standing if they 'allege an increased risk of concrete injury that results from a series of credible occurrences.'"  *Ctr. for Food Safety v. Perdue*, 517 F.

Supp. 3d 1034, 1040 (N.D. Cal. 2021) (finding organization had standing based on allegation that change in food safety procedures exposed plaintiffs to increased risk of illness) (quoting *Levine v. Johanns*, No. C 05-04764 MHP, 2006 WL 8441742, at *7 (N.D. Cal. Sept. 6, 2006)).  Similarly, courts are more inclined to find standing if "there is no better time" to resolve the issues raised by the parties—that is, when they "will be in no better position later than … now." *All. of Am. Insurers v. Cuomo,* 854 F.2d 591, 599 (2d Cir. 1988) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 359 (1974)); *see also Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003) (noting that the "court does not require Damocles's sword to fall before we recognize the realistic danger of sustaining a direct injury" (citation omitted)).

Defendants raise factual disputes as to the Individual Plaintiffs' standing, Motion at 7-8, but ignore the detailed allegations of the Complaint.  Defendants contend that the Individual Plaintiffs' allegations regarding their terminal diseases are conclusory.  Motion at 7.

EOLOA's definition of terminal disease is broad and "has no requirement that the attending or consulting physician consider the effects of treatments, counseling, or other supports on survival rates."  Compl. ¶ 91.  As a result, "people who would otherwise survive beyond six months if provided treatment or other supportive services are still eligible for physician-assisted suicide regardless of whether those treatments or supports are denied by their insurance company, refused, or otherwise not available." *Id.*  It is for this reason that "California doctors prescribe physician-assisted suicide drugs to patients who opt to forgo chemotherapy, even though *with* treatment they may live for years." *Id.* ¶ 92.

The allegations by Ms. Tischer and Mr. VanHook about their terminal disabilities are far from conclusory; they include detailed and personal information about their disabilities and conditions, the ways in which their lives are altered, and why they are terminal.  Mr. VanHook is a C-5 quadriplegic, has had both of his legs amputated, and has been diagnosed with cancer. *Id.* ¶ 33.  Mr. VanHook "requires

in-person assistance" in order to eat, drink, and clean himself, including having to be "physically turned by another person in order to avoid having his skin break down." *Id.* ¶ 34.  He "lives with substantial, and at times, excruciating pain," "would rapidly die without medical treatments and home health care supports," and "has been told his conditions are 'terminal'." *Id.* ¶ 34.  Ms. Tischer "has been diagnosed with scoliosis, muscular dystrophy, Dejerine-Sottas Subtype III and polyneuropathy that has caused quadriplegia and led to sleep apnea/chronic respiratory insufficiency, depression, and anxiety." *Id.* ¶ 37.  Her disability is progressive and the loss of access to necessary supports could quickly result in her death.  *Id.* ¶ 38.

The Individual Plaintiffs are eligible for EOLOA.  *Id.* ¶¶ 33-34, 37-38.  There is no requirement for them to show they are no longer susceptible to treatment, as that is not a requirement to obtain lethal medication under EOLOA.  *Id.* ¶¶ 91-92. Both allege they have been steered towards death by their physicians because of their disabilities, that they have a history of depression and anxiety, need supportive services to live, face difficulty obtaining supportive services, are at immediate risk of decompensation should they lose access to needed supports, and that they have credible, certain, fears they will face these threats in the future.  *Id.* ¶¶ 34-35, 38, 79, 83, 125.  At this stage, Plaintiffs' allegations must be presumed true.  *Moore*, 966 F.3d at 1016 ("[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs").

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) is inapplicable here.  *Clapper* was decided on summary judgment, not a motion to dismiss.  The *Clapper* court rejected plaintiffs' showing that they had experienced direct injuries based on "costly and burdensome measures to protect their confidentiality" to avoid a "hypothetical" risk of government surveillance.  *Id.* at 415.  Here, Plaintiffs have alleged that State Defendant's existing and already-implemented statutory system directly places their lives at risk by allowing doctors to forego suicide prevention and instead facilitate and encourage suicide for individuals who may lack capacity

or are coerced.  Compl. ¶¶ 35-36, 38, 79, 123, 126, 137, 139-140.

Nor does *Lee v. Oregon*, 107 F.3d 1382 (9th Cir. 1997), foreclose standing as to the Individual Plaintiffs.  Motion at 8-10.  *Lee* found that the particular individual plaintiff did not have standing to assert constitutional and statutory claims under Oregon's yet-to-be implemented Death With Dignity Act ("DWDA").  *Id.* at 1390. *Lee* was decided without the benefit of the Supreme Court's decision in *Washington v. Glucksberg*, 521 U.S. 702 (1997), which reached the merits of a case asserting a constitutional right to physician assisted suicide despite the plaintiffs being individual patients and doctors indistinguishable from the plaintiffs in *Lee*.[1]  Here, EOLOA has already been implemented and has different, looser statutory requirements than DWDA.  For example, the waiting time between a person's request and a doctor's prescription is far shorter under EOLOA—48 hours rather than 15 days.  Compl. ¶ 164; *see also id.* ¶ 162 (Oregon's law has reporting and documentation requirements missing from California's law); *id.* ¶ 165 (California's law was recently amended to eliminate the requirement for a final attestation). These differences are significant and, as a result, "EOLOA operates on the fiction that on the basis of a two-day telephonic relationship, a prescribing doctor can: (1) make the terminal prognosis, (2) ensure the patient is not acting under impaired judgment or duress, (3) decide whether to refer the patient for a mental health assessment, and (4) counsel the patient on their options and alternatives."  *Id.* ¶ 159. This "two-day doctor-patient relationship facilitates 'doctor shopping'" where patients can go to different physicians until one is willing to give them the prescription they want.  *Id.*  State Defendants make no effort to track or restrict this practice, which puts Plaintiffs at risk.  *Id.*

Further, the factual allegations made by Plaintiffs VanHook and Tischer are

---

[1] *See also Shavelson v. Bonta,* 608 F.Supp.3d 919, 925-926 (N.D. Cal. 2022) (holding that individual plaintiff with ALS had standing to bring ADA challenge to EOLOA's prohibition of active euthanasia).

1  substantially different than the allegations made by the single Plaintiff in *Lee*.  The

2  "speculative" contingencies described in *Lee* have in large part already happened to

3  Mr. VanHook, who has alleged that while lacking full mental capacity during a

4  psychiatric crisis, he requested that his doctors help him die and they agreed and

5  began helping him do so, despite the fact that he does want to live.  Compl. ¶¶ 34-

6  36.  He and Ms. Tischer are at immediate risk of death if they lose critical

7  supportive services, which both of them have, or are currently struggling to obtain.

8  *Id.* ¶¶ 36, 38, 79, 125.  Both individuals have been diagnosed with depression and

9  have recently experienced depressive episodes where they experienced suicidal

10 thoughts and felt steered by their doctors towards ending their lives.  *Id*. ¶¶ 35, 38,

11 83, 125.

12      Plaintiffs have also alleged harm that is directly traceable to the conduct of

13 the State Defendants.  These are not just "ministerial" tasks, as the State Defendants

14 contend.  Motion at 10.  The State Defendants "fund and operate systems of public

15 health, social services, medical profession regulation, and law enforcement to

16 provide protective services for people who express suicidality, and to prevent

17 medical professionals, caregivers, and family members from taking advantage of or

18 encouraging a person's impulse for self-harm or suicide."  Compl. ¶ 2; *see, e.g.*

19 ¶¶ 40-50 (describing State Defendants' role in administering and enforcing

20 EOLOA); 96 (Defendant MHSOAC developed California's Strategic Plan for

21 Suicide Prevention); ¶ 98 (Defendant CDPH administers suicide prevention

22 initiatives in California); ¶ 104 ("Defendant MBC and MBC President Lawson

23 protect health care consumers through enforcement of the Medical Practice Act").

24 Because of State Defendants' actions and omissions, these protective services are

25 "withheld from the Plaintiffs and their members."  *Id.* ¶ 2; *see, e.g.*, ¶ 102 (State

26 Defendants fail to ensure suicide prevention programs they administer are equally

27 available to individuals with terminal disabilities and Defendant MHSOAC

28 "explicitly carves out physician-assisted suicide from the protection of its suicide

1   prevention services"); ¶ 107 ("Under EOLOA, Plaintiffs and other individuals with

2   terminal disabilities are denied the equal benefit of MBC's protections").  Such

3   allegations pertain to the State Defendant entities directly responsible for

4   administering and enforcing the provisions of EOLOA and are not "speculation

5   about the decisions of third parties."  Motion at 10.

6          The cases cited by State Defendants are distinguishable.  *Washington*

7   *Environmental Council v. Bellon* involved a decision on summary judgment, and

8   specifically notes that "at the pleading stage, general factual allegations of injury

9   resulting from the defendant's conduct may suffice."  732 F.3d 1131, 1139 (9th Cir.

10  2013) (citation and quotes omitted).  In *Dep't of Com. v. New York*, respondent state

11  and local governments (and others) challenged the federal government's

12  reinstatement of a census question concerning citizenship status.  139 S. Ct. 2551,

13  2561 (2019).  The inclusion of the citizenship question would cause third party non-

14  citizen individuals to respond at lower rates, resulting in an undercount and

15  commensurate reduction in federal funds to respondents.  *Id.* at 2566.  The Supreme

16  Court found that respondents had standing because they established a sufficient

17  likelihood of future harm based on the "predictable effect" of third parties failing to

18  answer the census question.  *Id.* ("Respondents' theory of standing thus does not rest

19  on mere speculation about the decisions of third parties; it relies instead on the

20  predictable effect of Government action on the decisions of third parties").  Here,

21  the predictable effect of State Defendants' implementation and enforcement of

22  EOLOA is that third party doctors will withhold suicide preventative services and

23  instead steer people with terminal disabilities to physician-assisted suicide.

24      **B.      The Organizational Plaintiffs Have Standing**

25              **1.      The Organizational Plaintiffs Have Direct Standing Based on
                          Injuries Each Has Suffered and Continues to Suffer**

26

27      State Defendants argue "the organizational Plaintiffs do not sufficiently allege

28  that Defendants' EOLOA-related conduct actually impedes and frustrates their

stated missions."  Motion at 13.  Under Ninth Circuit law, an organization has direct standing "where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  Organizations are "not required to demonstrate some threshold magnitude of their injuries; one less client that they may have had but-for the Rule's issuance is enough.  In other words, plaintiffs who suffer concrete, redressable harms that amount to pennies are still entitled to relief."  *Id.* at 664.  All that is required is a showing that defendants' practices have "perceptibly impaired" the organizations ability to provide services.  *Havens Realty Corp., v. Coleman,* 455 U.S. 363, 378-379 (1982) (finding plaintiff organization had standing where it alleged that it "had been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services" and "had to devote significant resources to identify and counteract the defendant's [*sic*] racially discriminatory steering practices.")

State Defendants fail to address the specific allegations made by each Organizational Plaintiff concerning frustration of mission and diversion of resources.  Motion at 13-14.  Plaintiff United Spinal is dedicated to "empowering and advocating for people living with spinal cord injuries and disorders ("SCI/D") and all wheelchair users, including veterans, to obtain greater independence and quality of life."  Compl. ¶¶ 19, 22.  United Spinal operates a peer mentor support program for suicidal members.  *Id.* ¶ 20.  State Defendants' implementation of EOLOA, "by steering people with spinal cord injuries towards physician-assisted suicide,  impedes United Spinal's mission to support their members in obtaining greater quality of life."  *Id.* ¶ 22.  Further, State Defendants' actions and omissions cause United Spinal to divert and expend resources from other organizational projects to counteract the impact of EOLOA on its members, including by supporting and advocating for members "who are placed at risk of harm by EOLOA

and/or at risk of being steered toward utilizing physician-assisted suicide," "expending resources on education and outreach campaigns," holding "public information discussions to inform its members" about EOLOA and its impact on them, and monitoring "reports from peer support mentors concerning physician-assisted suicide." *Id.* ¶ 22.  United Spinal is therefore "unable to devote these resources to its other critical programs."  *Id.*

State Defendants overstate the level of impairment required to satisfy standing, Motion at 12, and ignore that each Organizational Plaintiff has adequately alleged that State Defendants' actions with respect to EOLOA threaten their members' and constituents' lives, "perceptibly impair" the organizations' missions, and have caused the organizations to divert resources specifically to counter the harmful effects of the implementation and enforcement of EOLOA.  *See* Compl. ¶¶ 23-25 (NDY:  State Defendants' "actions have frustrated its mission" and forced it "to expend resources to address community concerns and advocate for people with disabilities who are harmed by or at risk of harm by EOLOA, and [it] is therefore unable to devote these resources to its other critical efforts addressing the impact of discriminatory health care policies on the lives of people with disabilities"); *id.* ¶¶ 26-27 (IPR:  State Defendants' "actions have frustrated its mission by placing at risk of death individuals that IPR seeks to educate and advocate on behalf of [as well as] by eliminating safeguards that work to ensure equal access to healthcare," and IPR has been forced to expend resources to counteract EOLOA's impact including by developing "legal and medical education courses specific to EOLOA," hiring "a consultant to assist in the its development of a California-specific advanced directive," and developing "community workshop training materials about EOLOA"); *id.* ¶¶ 30-32 (CALIF:  "[b]y furthering the deaths of constituents that would have sought out and benefitted from CALIF's services, Defendants' actions and omissions have frustrated CALIF's mission and undermined the effectiveness of the programs and services they provide," thereby causing CALIF to divert and

1  expend "already scarce resources" to address community concerns and advocate for

2  people with disabilities who are harmed by or at risk of harm by EOLOA" including

3  by implementing education, peer support, and peer counseling services).

4      The cases State Defendants cite that denied standing are readily

5  distinguishable.  The court in *Project Sentinel v. Evergreen Ridge Apartments*

6  denied standing to the plaintiff organization because it "does not allege that it

7  provides any service or is engaged in any other enterprise independent of this action

8  that might be frustrated by defendants' allegedly unlawful conduct" or that it "has

9  diverted its resources from some other enterprise."  40 F. Supp. 2d 1136, 1139 (N.D.

10  Cal. 1999).  Here, to the contrary, the Organizational Plaintiffs have alleged that

11  they provide numerous services that are frustrated by Defendants' conduct and

12  which cause the Organizational Plaintiffs to have to divert resources.  Compl. ¶¶ 19-

13  20, 22 (United Spinal); ¶¶ 23-25 (NDY); ¶¶ 26-28 (IPR); ¶¶ 29-31 (CALIF).

14      In *Rodriguez v. City of San Jose*, the court found the plaintiff guns rights

15  organizations lacked standing because they failed to provide evidence on summary

16  judgment sufficient to explain how defendant city's retention of a single person's

17  gun "either impedes their ability to carry out their mission or requires them to divert

18  substantial resources away from the organizations' preferred uses—let alone both."

19  930 F.3d 1123, 1135 (9th Cir. 2019).  In *California v. Texas*, multiple states and two

20  individuals challenged the individual mandate provisions of the Affordable Care Act

21  as unconstitutional.  141 S. Ct. 2104, 2108, 2114-15 (2021).  The Court concluded

22  that plaintiffs could claim no financial injury because the IRS zeroed-out the penalty

23  for not having insurance.  In contrast, each Organizational Plaintiff has alleged

24  substantial ongoing injury and harm.  *Project Sentinel*, *Rodriguez*, and *California*

25  were all decided at summary judgment after the evaluation of evidence.  Here,

26  "general factual allegations of injury resulting from the defendant's conduct may

27  suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

28  those specific facts that are necessary to support the claim.'"  *Am Fed'n of Gov't*

*Emps. Local 1 v. Stone*, 502 F.3d 1027, 1032 (9th Cir 2007) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (finding union organization plaintiff adequately alleged injury in fact by stating the defendant employer's actions interfered with the organization's ability to solicit membership and communicate the union's message); *see also Christian Med. and Dental Ass'n v. Bonta*, 625 F. Supp. 3d 1018, 1030-32 (C.D. Cal. 2022) (finding individual and organizational plaintiffs had standing to challenge EOLOA and granting injunction).

### 2.   Plaintiff United Spinal Has Associational Standing Based on Its Members

To sue on behalf of its members, an organization must show: "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth. Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *see also Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*, No. 07-00495 JMS/KSC, 2007 WL 4440962, at *4-5 (D. Haw. Dec. 19, 2007), *aff'd*, 303 F. App'x 416 (9th Cir. 2008) (holding association had standing to assert substantive due process and equal protection claims); *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1112-13 (9th Cir. 2003) (holding Protection & Advocacy organization had associational standing to bring substantive and procedural due process claims); *Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401, 1408-09 (9th Cir. 1991) (holding association had standing to assert equal protection claims). Plaintiff United Spinal has met this standard.

State Defendants do not challenge the Complaint's many allegations supporting representational standing. United Spinal has members who would otherwise have standing to sue in their own right. United Spinal has "over 5,000 members in California served by four chapters." Compl. ¶ 19. Members with spinal cord injuries "face significant challenges including loss of independence,

depression, isolation, loss of self-confidence, and anxiety about what the future will
bring." *Id. ¶* 20.  Many members have been suicidal on occasion and/or have
"directly experienced discrimination by medical professionals, including denial and
delay of necessary medical services, by being told that their quality of life is poor, as
well as by being delayed or denied basic services and supports necessary for living
at home with paralysis." *Id. ¶¶* 6, 20-21.  "Some members have been told by
doctors their condition is 'terminal'" and "[a]s a result of being perceived as
terminally ill by their physicians, some of United Spinal's members qualify for
physician-assisted suicide and are particularly vulnerable to (and United Spinal is
fearful of) being steered towards physician-assisted suicide in a state of despair or
depression." *Id. ¶* 21.  Mr. VanHook is a member of United Spinal.  *Id.* ¶ 33.  He
has standing.  *See* Section I(A).  United Spinal alleges its members have "accessed
lethal medications and/or committed suicide by means of EOLOA" and that
EOLOA "places United Spinal's members at risk of dying by using physician-
assisted suicide during a period of depression and difficulty." *Id.*

As to the second and third factors, the interests at stake are highly germane to
United Spinal's purpose of "empowering and advocating for people living with
spinal cord injuries and disorders ("SCI/D") and all wheelchair users, including
veterans, to obtain greater independence and quality of life" and to United Spinal's
"work on issues such as increasing access to quality affordable health care and
independent living services; enhancing and reforming government benefit systems;
and preserving social security benefits." *Id. ¶¶* 19, 21.  The injunctive relief
requested does not require the participation of individuals members in the lawsuit.
*Id.* ¶ 22.  United Spinal has established representational standing in other cases.
*See, e.g. Disability Rts. Council of Greater Washington v. D.C.*, No. CIV.A. 04-
0529 (JDB), 2005 WL 513495, at *2 (D.D.C. Mar. 3, 2005) (holding United Spinal
could bring claims challenging allegedly inaccessible parking meters and intrusive
and burdensome handicap parking placard application process).  The Court similarly

1  should find United Spinal alleges representation standing here.

2      State Defendants' claim that *Lee* "explicitly rejected the theory of

3  associational standing now asserted," Motion at 15, is disingenuous.  *Lee*'s standing

4  analysis for ADA, Rehabilitation Act, Due Process, and Equal Protection claims did

5  not involve a membership organization like United Spinal and did not involve

6  claims of direct injury to the organization or injury based on an organization's

7  mission.  Instead, the relevant standing analysis in *Lee* focused on the evidence

8  related to one individual and nursing homes that asserted a different theory, third-

9  party standing, on behalf of their patients.  107 F. 3d at 1389-90.

10      **C.**    **The Eleventh Amendment Does Not Bar Plaintiffs' Claims**

11      *Ex parte Young* permits suits for prospective declaratory and injunctive relief

12  brought against state officials for enforcing an unconstitutional law so long as those

13  officials have "some connection" with the enforcement of the law.  209 U.S. 123,

14  157 (1908).  "No [] special charge need be found directly in the challenged statute to

15  meet the requisite 'some connection' so long as there is sufficient indicia of the

16  defendant's enforcement powers found elsewhere in the laws of the state," even if

17  "found implicitly."  *Okpalobi v. Foster*, 244 F.3d 405, 419 (5th Cir. 2001); *see also*

18  *Ex parte Young*, 209 U.S. at 157 ("It has not, however, been held that it was

19  necessary that [the defendant's] duty should be declared in the same act which is to

20  be enforced … if it otherwise exist[s] it is equally efficacious.").

21      State Defendants argue that that there is an insufficient connection alleged to

22  the enforcement of EOLOA as to Defendants Newsom, Aragón, and Madrigal-

23  Weiss (but not Defendants Bonta, Baass, and Lawson) to deprive them of Eleventh

24  Amendment immunity.  Motion at 15-17.  State Defendants again gloss over the

25  allegations in the Complaint, which go well beyond alleging a "generalized duty to

26  enforce state law" or "general supervisory power over the persons responsible for

27  enforcing" EOLOA.  *See* Compl. ¶¶ 40, 44, 46, 170, 172.  In addition to allegations

28  that Governor Newsom directs Defendant Attorney General Bonta in the discharge

of law enforcement duties, *id.* ¶ 40, the Complaint alleges that the Governor appoints members of the Medical Board of California, commissioners to the MHSOAC, the Director of the California Department of Public Health, and the Director of California Department of Health Care Services—agencies responsible for suicide prevention, mental health, and enforcement of EOLOA. *Id.* ¶¶ 40, 42-49. The Governor's connection to the enforcement of EOLOA is sufficiently "direct" in light of the duties placed on him by state laws vis-à-vis EOLOA. *See Los Angeles Cnty. Bar Ass'd v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (governor proper party in suit challenging statute limiting the number of judges the governor could appoint to any county given that he appointed judges to newly created positions and certified subsequent elections for those positions). State Defendants rely on *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013), but that case held that where the governor's *only* connection to the challenged state law was his general duty to enforce the law, Eleventh Amendment immunity applied.

Defendants Aragón and Madrigal-Weiss are even more directly connected to the suicide prevention program and EOLOA. Aragón is the State Public Health Officer and the Director of CDPH, whose Office of Suicide Prevention is responsible for coordinating statewide suicide prevention efforts and resources, including doing so consistent with the MHSOAC's Suicide Prevention Report "Striving for Zero." Compl. ¶¶ 42-44 (citing Cal. Health & Safety Code §§ 131300, 131315(a)). Madrigal-Weiss is the Chair of MHSOAC, which oversees the implementation of the Mental Health Services Act (Proposition 63), is responsible for the statewide suicide prevention plan, and is charged with ensuring that people obtain the mental health care they need in a timely, comprehensive, effective, and culturally competent manner. *Id.* ¶ 47. By complying with and enforcing EOLOA, which denies people with terminal disabilities the equal benefit of suicide prevention programs and services, Aragón and Madrigal-Weiss explicitly and

purposefully abandon people with the highest risk of suicide when they seek physician-assisted suicide.  *Id*. ¶¶ 42, 47, 96-103.

Moreover, EOLOA requires that CDPH facilitate physician-assisted suicide in part by:  publishing instructions and the forms physicians must complete prior to prescribing lethal medication, collecting and reviewing documentation submitted by physicians pursuant to EOLOA, and receiving, tabulating, and disseminating information about the administration of EOLOA.  *See id*. ¶ 43.  Contrary to State Defendants' contention, these statutorily-required activities are neither "ministerial" nor "after-the-fact."  Motion at 16; *see also* Cal. Health & Safety Code §§ 443.9, 443.19, 443.22.  This degree of connection to a challenged law suffices under *Ex parte Young*.  *See Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (university president was not immune from suit seeking prospective declaratory and injunctive relief relating to the admissions criteria where he not only had to "live with" the challenged law, but was "duty-bound to ensure that his employees follow[ed]" it); *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1098, 1121 (C.D. Cal. 2015) (school board members were not immune from suit brought by students with trauma-induced disabilities because board "retain[ed] the ultimate responsibility" for "discharg[ing] any duty imposed by law upon … the district").

**II.  PLAINTIFFS' COMPLAINT STATES VIABLE CLAIMS FOR RELIEF UNDER THE CONSTITUTION AND FEDERAL DISABILITY RIGHTS LAWS**

**A.  Plaintiffs Have Adequately Alleged Facial Challenges to EOLOA**

As a threshold matter, State Defendants assert that the standard set forth in *United States v. Salerno*, 481 U.S. 739, 745 (1987) applies to Plaintiffs' facial challenges to EOLOA and that the statute will never be unlawful (ADA/Rehab Act) or unconstitutional (equal protection and due process) in *all applications*.  Motion at 6, 19, 20, 24.  However, "[i]n other cases and in other contexts, [the Supreme Court] ha[s] imposed a significantly lesser burden on the challenger," with the

"most lenient standard … requir[ing] the challenger to establish that the invalid applications of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Washington v. Glucksberg*, 117 S. Ct. 2302, 2305 n.7 (1997) (Stevens, J., concurring) (holding that a law banning physician-assisted suicide does not violate the Due Process Clause) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); *see also Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 (2008) ("While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep'." (citation omitted)).  In *Glucksberg*, which upheld the constitutionality of Washington's ban on physician assisted suicide, Justice Stevens' concurrence noted that the Court had **never** "actually applied such a strict standard, even in *Salerno* itself, and the Court [did] not appear to apply *Salerno*" to the case before it.  117 S. Ct. at 2304-05.

Invoking *Salerno*, State Defendants argue that Plaintiffs "cannot show that all applications of the Act result in involuntary death."  Motion at 19; *see also id.* at 24 (Plaintiffs "have not alleged and cannot demonstrate that in *all* applications of the EOLOA the terminally ill patient's decision to end their life would be involuntary.").  But to satisfy even the most exacting reading of *Salerno*, Plaintiffs need not allege that all people die involuntarily under EOLOA.  *See City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 418 (2015) (the challenged statute "is measured for consistency with the Constitution by its impact on those whose conduct it affects....  The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.") (internal quotation marks omitted) (quoting *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 894 (1992)).

Accordingly, EOLOA is measured for consistency with the ADA and Rehab Act by its impact on people with disabilities.  As with the other state laws and

policies that have been successfully challenged facially under the ADA, EOLOA provides people with terminal disabilities to a less effective, unequal, and separate set of services and protections.  *See Lovell v. Chandler*, 303 F.3d 1039, 1052-53 (9th Cir. 2002) (Hawaii's regulations for eligibility in state-run health insurance program facially violated the ADA and Rehab Act because regulations explicitly stated disabled individuals were ineligible); *Bay Area Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733, 737 (9th Cir. 1999) (zoning ordinance prohibiting operation of methadone clinic near residential property was facially discriminatory because it categorically excluded clinics providing services to individuals with drug addictions.); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (law requiring quarantine for all dogs entering Hawaii was *per se* discriminatory because it did not include exception for guide dogs and therefore excluded people with vision disabilities from enjoying public services).  The only difference between the laws found to violate the ADA in *Crowder*, *Lovell*, and *Bay Area Addiction*, on one hand, and EOLOA, on the other, is that EOLOA attempts to frame its targeted diminishment of protections for people with disabilities as a good thing—the conferral of personal autonomy.  However, simply rebranding discrimination does not, and cannot, cure the inferior services and accompanying legal violation here.[2]

EOLOA is measured for consistency with the Constitution by its unequal treatment of people with terminal disabilities and its lack of safeguards for those eligible individuals who may be depressed, impaired, ambivalent about death, and/or who do not wish to die—not the groups for whom equal treatment and adequate safeguards are irrelevant.  For example, regarding Plaintiffs' due process

---

[2] The fact that some people who use EOLOA may not have been overtly coerced is beside the point because the ADA violation is the inferior access to suicide prevention services for people with terminal disabilities.  *See Crowder*, 81 F.3d at 1482, 1485, 1489 n.6 (dog quarantine rule violated ADA because rule resulted in inferior access to public services for guide dog users even where rule did not affect "vast majority" of blind people who do not use guide dogs).

claim, the Complaint alleges that all individuals with terminal disabilities who die pursuant to EOLOA are both 1) deprived of necessary protections from undue influence and coercion, and 2) not required to consider, exhaust, and/or knowingly reject less restrictive alternatives to physician assisted suicide.  Compl. ¶ 141. EOLOA "affirmatively places people with terminal disabilities in danger" and the law's supposed safeguards are "illusory, frequently disregarded, and/or circumvented in ways that harm people with terminal disabilities."  *Id*. ¶¶ 142. Plaintiffs allege that where the law is applied to authorize an individual with a terminal disability to end their life without adequate safeguards, such as, for example, on the 48-hour timeline available under EOLOA, it deprives these individuals of their constitutional right to due process.  *Id*. ¶¶ 141, 163-65, 197-98. These allegations satisfy the *Salerno* standard and the more lenient "plainly legitimate sweep" standard.

Under *Salerno* or the more lenient "plainly legitimate sweep" standard, Plaintiffs' facial challenges to EOLOA should proceed.

**B.    Plaintiffs' Complaint Adequately Alleges Claims Under the Americans with Disabilities Act and Rehabilitation Act**

To state a claim under Title II of the ADA "a plaintiff must show "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  *Townsend v. Quasim*, 328 F.3d 511, 516 (9th Cir. 2003) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).  Plaintiffs have met this burden for each of the Individual Plaintiffs.  Compl. ¶¶ 33-38.

State Defendants contend that EOLOA does not exclude anyone from participating in a government program and provides "*more rights and services*" than those provided to others.  Motion at 18-19.  State Defendants' contention ignores

Plaintiffs allegations that the State Defendants "fund and operate systems of public
health, social services, medical profession regulation, and law enforcement to
provide protective services" to prevent suicide and to prohibit people from
influencing a person's impulse to self-harm, and that they withhold this "entire
protective network of services" from Plaintiffs.  Compl. ¶ 2.  The Complaint
contains extensive allegations detailing how people with terminal disabilities are
denied equal access to suicide prevention programs, the benefits of medical
licensing and regulatory protections, and the protection of criminal laws and civil
protections for the elderly and vulnerable.  *Id.* ¶¶ 96-121.  MHSOAC explicitly
carves out physician-assisted suicide from the protection of its suicide prevention
services.  *Id.* ¶ 102.  Contrary to the Motion's claim that EOLOA provides *more*
services, Plaintiffs allege that EOLOA fails to require people to meaningfully
consider, exhaust, and/or knowingly reject less restrictive, truly viable alternatives
to assisted suicide, including suicide prevention services, palliative and/or hospice
care, medical and nursing support services, and other personal support services, *id.*
¶ 156, and offers them death instead, thereby "relegating people with terminal
disabilities to a less effective, unequal, and separate program for people expressing
suicidal ideation, EOLOA"  *Id.* ¶ 103.

State Defendants make additional factual arguments improper for resolution
at this stage, including that:

- "the statutory scheme fully accounts for and mandates compliance with
  multiple safeguards put in place to eliminate this possibility" of
  involuntary death;

- "In order for an eligible terminally-ill person to obtain an AID drug,
  they must strictly comply with a bevy of stringent requirements, all of
  which serve to flesh out whether the person's decision is voluntary"; and

- Any differential treatment by providers in providing suicide prevention
  services "is the product of a patient's voluntary choice."

Motion at 19-20.  Plaintiffs' Complaint alleges the opposite:  that EOLOA places

people who seek physician-assisted suicide at heightened risk of involuntary death because those individuals have the highest risk factors for suicide (old age, illness, disability) along with extraordinarily high levels of depression and accompanied impaired decision-making capacity, and that EOLOA's procedures are insufficient for differentiating between people who have adequate decision-making capacity and those who do not. *See, e.g.*, Compl. ¶¶ 63, 89, 146-54.  These factual disputes are not appropriate for resolution on a motion to dismiss and illustrate why Plaintiffs' ADA and Rehab Act claims should proceed.

Providing people with disabilities separate, unequal, services violates the ADA, and services offered to people with disabilities must be "as effective as those provided to others." *Lovell*, 303 F.3d at 1055.  In *Lovell*, Hawaii launched an insurance program, QUEST, that allowed for subsidized health insurance for individuals whose income was no more than 300% of the poverty level but excluded the "aged, blind, or disabled" from coverage. *Id.* at 1045.  The State argued the exclusion was "necessary" under the ADA's implementing regulations to ensure the financial viability of the State's health care program. *Id.* at 1055.  The Ninth Circuit rejected this argument:

> Although the State might have believed that it was financially necessary to exclude the disabled from QUEST, the plain language of the regulations prohibits a state from doing so unless it provides them with benefits "as effective as those provided to others." For Lovell, Delmendo, and those similarly situated, the "different or separate" benefit the State provided was no benefit at all.

*Id.*  Similarly, here, the new "benefit" of providing someone with the lethal means to kill themselves cannot be said to be as "effective" as the pre-EOLOA benefit of providing suicide prevention services.

State Defendants cite two cases for their contention that EOLOA "cannot be credibly alleged to disadvantage a class of disabled individuals," but both were resolved after summary judgment and neither are instructive.  In *Memmer v. Marin County Courts*, the district court had denied a motion to dismiss and allowed the

1   individual plaintiff's claims to proceed.  169 F.3d 630, 632 (9th Cir. 1999).  Later,

2   on summary judgement, the court found plaintiff had not met her burden to show the

3   intentional discrimination required in a suit under Title I of the ADA for monetary

4   damages.  *Id.* at 633.  In *Mark H. v. Lemahieu,* the court acknowledged the

5   Rehabilitation Act's "prohibition on disability-based disadvantage," and remanded

6   the matter to the district court so the plaintiff could amend their  complaint to

7   specify which Section 504 regulations they believe were violated.  513 F.3d 922,

8   939 (9th Cir. 2008).

9        Finally, State Defendants contend that Plaintiffs "fundamentally

10   misunderstand the intersection of the medical field and federal disability law" and

11   rely on inapposite case law involving individual medical treatment decisions to

12   argue that courts will not find disability discrimination for particular medical

13   decisions that relate to a person who has a disability.  Motion at 20; *see also*

14   *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1490-91 (10th Cir. 1992)

15   (addressing appeal after grant of summary judgment regarding the medical treatment

16   provided to certain infants.) *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022

17   (9th Cir. 2010) (affirming grant of summary judgment under ADA regarding denial

18   of outdoor recreation to incarcerated person with depression); *McGugan v. Aldana-*

19   *Bernier*, 752 F.3d 224 (2d Cir. 2014) (challenging legality of plaintiff's involuntary

20   hospitalization).  But Plaintiffs here are not challenging any particular individual's

21   course of medical treatment; rather, they challenge Defendants' administration and

22   enforcement of EOLOA as well as EOLOA's failure to comply generally with

23   federal disability rights laws.  Moreover, assisting someone in committing suicide is

24   not treatment in any sense of the word and, absent EOLOA, such acts would be

25   criminal.

26      **C.**    **Plaintiffs' Complaint Adequately Alleges an Equal Protection Claim**

27

28       The Equal Protection Clause of the Fourteenth Amendment prohibits a state

from denying any person within its jurisdiction the equal protection of the laws, which is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Hecox v. Little*, No. 20-35813, 2023 WL 5283127, at *22 (9th Cir. Aug. 17, 2023) (affirming entry of a preliminary injunction against the enforcement of an Idaho statute that banned the participation of transgender women and girls in women's student athletics). The first step in the equal protection analysis is to identify the defendants' classification of groups. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995). To accomplish this, a plaintiff can show that the law at issue imposes different burdens on different classes of people. *Id*. Once the plaintiff establishes a classification, it must identify a similarly situated class against which the plaintiff's class can be compared. *Id*. "The goal of identifying a similarly situated class … is to isolate the factor allegedly subject to impermissible discrimination." *Id*. (quoting *United States v. Aguilar,* 883 F.2d 662, 706 (9th Cir.1989), *cert. denied,* 498 U.S. 1046 (1991).

State Defendants do not dispute that Plaintiffs allege a government classification of two different groups: terminally ill patients eligible for EOLOA, and other individuals "ineligible to participate in EOLOA who nevertheless share similar concerns about losing autonomy, the loss of dignity, losing control of bodily functions, becoming a burden on caregivers, pain, and/or financial costs associated with continued living." Compl. ¶ 191. The Complaint further alleges that EOLOA "treats differently people with terminal disabilities as compared with everyone else that expresses a wish to die to their medical doctor (including people with psychiatric and other disabilities as well as people without disabilities)." *Id*. ¶¶ 89; *see also id.* ¶ 87-88, 90-95.

State Defendants argue that Plaintiffs' equal protection claim nevertheless fails because Plaintiffs' alleged classes are "fundamentally different" rather than

"similarly situated."  Motion at 22.  The determination of whether individuals are similarly situated for purposes of an equal protection claim is a fact-specific inquiry. *See, e.g.*, *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (describing the fact-intensive, context-dependent analysis needed to determine whether DACA recipients are similarly situated to other categories of noncitizens who may use Employment Authorization Documents to obtain driver's licenses in Arizona); *see also Loesel v. City of Frankenmuth*, 692 F.3d 452, 463 (6th Cir. 2012); *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001); *Yates v. Stalder*, 217 F.3d 332, 334–35 (5th Cir. 2000).  State Defendants' assertions about the supposed "fundamental difference" between individuals with terminal disabilities and others, which they assert must be "viewed through the balancing of competing interests and considerations struck by the Legislature," exemplifies an issue that is inappropriate for decision on a motion to dismiss .  *See* Motion at 22.  State Defendants further contend that all people eligible for EOLOA medications "face an imminent and distinctive prospect of pain and suffering," without acknowledging Plaintiffs' allegations that only a fraction of patients who die by physician assisted suicide actually suffer from pain or even have concerns about it.  *Compare* Motion at 22 with Compl. ¶¶ 66-68.  At this stage, it is sufficient that Plaintiffs allege facts plausibly identifying similarly situated classes.  *See Ornelas v. City of Pomona*, No. CV 09-6374 PA (CTX), 2010 WL 11597373, at *2 (C.D. Cal. Jan. 25, 2010) (complaint "sufficiently pleads that [the plaintiffs] were treated differently from others similarly situated" where complaint alleged other organizations who, like plaintiffs, had protested against City of Pomona Police Department but were not subject to the same threats and harassment by police officers).

State Defendants rely on *Williams v. Field*, 416 F.2d 483, 486 (9th Cir. 1969) and *Nordlinger v. Hahn*, 505 U.S. 1 (1992) to argue that Plaintiffs have failed to allege similarly situated groups.  Mot. at 21-22.  But in *Williams*, state officials

1  secured dismissal because the *pro se* plaintiffs' allegations were based on a single,

2  "isolated instance of failure to protect a prisoner from attack by a fellow inmate."

3  416 F.2d at 486.   *Nordlinger* did not address any dispute over whether plaintiffs

4  adequately alleged two similarly situated groups.  505 U.S. at 11-17.

5      The next step in the equal protection analysis is to determine the proper level

6  of scrutiny.  *See City of Cleburne*, 473 U.S. at 439.  Where classifications burden a

7  fundamental right, they will be sustained if "precisely tailored to serve a compelling

8  governmental interest."  *Plyler v. Doe*, 457 U.S. 202, 217 (1982).  EOLOA

9  implicates the fundamental right to live, which the Supreme Court recognized in

10  *Washington v. Glucksberg*, 521 U.S. 702 (1997).  Compl. ¶¶ 87, 189, 191-193.  As

11  the  Court observed, the state has an "unqualified interest in the preservation of life,"

12  including "an interest in protecting vulnerable groups—including the poor, the

13  elderly, and disabled persons—from abuse, neglect, and mistakes," given "the real

14  risk of subtle coercion and undue influence in end-of-life situations."  *Glucksberg*,

15  521 U.S. at 728, 731-32.  EOLOA facially and intentionally discriminates against

16  terminally disabled individuals.  Compl. ¶¶ 191–192.  State Defendants' argument

17  that EOLOA "has only an incidental or marginal effect on fundamental rights" rings

18  hollow given State Defendants' concession that the "end result of the EOLOA's []

19  process is the death of the terminally ill patient."  Motion at 23.  The cases cited by

20  State Defendants are distinguishable, as plaintiffs in those cases made strained

21  attempts to draw connections between benefits statutes and other aspects of family

22  life.  *See Lyng v. Castillo*, 477 U.S. 635, 638-39 (1989) (finding the definition of

23  "household" in the Food Stamp Act did not prevent people from dining together,

24  and thus did not directly and substantially interfere with family living

25  arrangements); *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (holding

26  provision of the Welfare Reform Act that made certain non-citizens ineligible for

27  food stamps upon divorce did not impermissibly interfere with marital relationship).

28  By facilitating assisted suicide, EOLOA directly and substantially implicates the

1 fundamental right to live.  Strict scrutiny applies.

2 　　　Even if the rational basis test applies—which it does not given the

3 fundamental right to live at issue—Plaintiffs have pled a plausible equal protection

4 claim.  As the Complaint alleges, EOLOA "draws an irrational distinction based on

5 physical health and certain terminal disabilities, is both over and under-inclusive by

6 allowing certain individuals to choose assisted suicide while denying that choice to

7 others and does not advance or otherwise further legitimate governmental interests."

8 Compl. ¶ 191.  "There is no compelling or even rational basis to treat the lives of

9 people with terminal diseases any different from other groups of people ineligible to

10 participate in EOLOA."  *Id*.  State Defendants' factual assertions—that EOLOA "is

11 fully voluntary at every step" and provides terminally ill patients with an "extra"

12 option, "personal autonomy," and "peace of mind" "to avoid suffering a prolonged"

13 and "otherwise painful death"—are contested and not appropriately considered at

14 the motion to dismiss stage.  Motion at 23.

15 　　**D.**　　**Plaintiffs' Complaint Adequately Alleges a Due Process Claim**

16 　　　State Defendants do not challenge the adequacy of Plaintiffs' due process

17 claims regarding the vague definition of "terminal illness" not that EOLOA fails to

18 require consideration or exhaustion of less restrictive alternatives.  Compl. ¶¶ 143-

19 145, 155-157.

20 　　　State Defendants incorrectly assert that *Lee* forecloses Plaintiffs' due process

21 claim.  Just as *Lee* does not defeat Plaintiffs' standing in this case, see *supra* at p. 6,

22 it does not legally bar Plaintiffs from proceeding with their due process claims at

23 this stage.

24 　　　State Defendants' attack on Plaintiffs' state-created danger allegations

25 amounts to nothing more than an argument that Plaintiffs have not yet proven their

26 claims.  Motion at 24-25 (Plaintiffs "cannot demonstrate an actual, particularized

27 danger, and certainly not one that is reasonably foreseeable," and that the State

28 "designed [EOLOA] around the guiding principle that a patient's decision must be

26

affirmatively and conclusively shown to be voluntary"). The Complaint sufficiently alleges that State Defendants have been deliberately indifferent in creating and/or exposing individuals with terminal disabilities to the foreseeable dangers of physician-assisted suicide that otherwise would have not existed but for their enforcement, implementation, and administration of EOLOA. *See* Compl. ¶¶ 141-165, 197. State Defendants do not address these allegations at all. Motion at 24-25. They also cite *Christian Medical And Dental Association v. Bonta*, 625 F. Supp. 3d 1018 (C.D. Cal. 2022) to suggest that this Court has previously recognized that all decisions to die pursuant to EOLOA are voluntary, Motion at 25, but the decision made no such finding. In any event, whether Plaintiffs can prove the elements of their claims is not appropriate for resolution at this stage in the litigation. In just the last few months, the Ninth Circuit has allowed claims based on a state-created danger theory to proceed at the motion to dismiss stage. *See, e.g.*, *Murguia v. Langdon*, 61 F.4th 1096, 1113, 1115 (9th Cir. 2023); *Polanco v. Diaz*, No. 22-15496, 2023 WL 5008202 (9th Cir. Aug. 7, 2023). The Court should do the same here, as Plaintiffs allege sufficient facts to bring a due process claim based on a state-created danger theory.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, State Defendants' Motion to Dismiss should be denied in its entirety.  To the extent the Court disagrees, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend.

DATED:  August 18, 2023              Respectfully submitted,

                                     ROSEN BIEN GALVAN & GRUNFELD LLP

                                     By: */s/ Michael W. Bien*
                                         Michael W. Bien

                                     Attorneys for Plaintiffs

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 8,765 words, which complies with the word limit of L.R. 11-6.1.

DATED:  August 18, 2023                    Respectfully submitted,

                                           ROSEN BIEN GALVAN & GRUNFELD LLP

                                           By: */s/ Michael W. Bien*
                                           _____
                                                Michael W. Bien

                                           Attorneys for Plaintiffs