ROB BONTA
Attorney General of California
EDWARD KIM, State Bar No. 195729
DARRELL W. SPENCE, State Bar No. 248011
Supervising Deputy Attorneys General
MARSHA E. BARR-FERNANDEZ, State Bar No. 200896
CHRISTINE FRIAR WALTON, State Bar No. 228421
KEVIN L. QUADE, State Bar No. 285197
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7693
  Fax: (916) 324-5567
  E-mail: Kevin.Quade@doj.ca.gov
          Christine.Walton@doj.ca.gov
          Marsha.BarrFernandez@doj.ca.gov
*Attorneys for the State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED SPINAL ASSOCIATION; NOT DEAD YET; INSTITUTE FOR PATIENTS' RIGHTS; COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE; LONNIE VANHOOK; INGRID TISCHER, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; GAVIN NEWSOM, in his official capacity as Governor; ROBERT BONTA in his official capacity as Attorney General; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH; TOMAS J. ARAGON, in his official capacity as Director and State Public Health Officer; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; MICHELLE BAASS, in her official capacity as Director; MENTAL HEALTH SERVICES OVERSIGHT AND ACCOUNTABILITY COMMISSION; MARA MADRIGAL-WEISS, in her official | 2:23-cv-03107-FLA (GJSx) <br><br> **STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** <br><br> Date: September 22, 2023 <br> Time: 1:30 p.m. <br> Courtroom: Courtroom 6 <br> Judge: The Honorable Fernando L. Aenlle-Rocha <br> Trial Date: n/a <br> Action Filed: April 25, 2023 |

1  capacity as Chair; MEDICAL
   BOARD OF CALIFORNIA;
2  KRISTINA D. LAWSON, in her
   official capacity as President;
3  DISTRICT ATTORNEY'S OFFICE
   FOR LOS ANGELES COUNTY;
4  GEORGE GASCON, in his official
   capacity as District Attorney; and
5  DOES 1 through 20, inclusive,

6                      Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................... 1

Argument ........................................................................................................ 1

    I.     This Court Lacks Subject Matter Jurisdiction ..................................... 1

          A.     The Individual Patient Plaintiffs Lack Standing ....................... 1

               1.     The individual patient Plaintiffs cannot show an injury in fact ........................................................ 1

               2.     The individual patient Plaintiffs' alleged injuries are not fairly traceable to conduct of the State Defendants.............................................................. 4

          B.     The Organizational Plaintiffs Lack Direct Standing ................. 5

          C.     Plaintiff United Spinal Lacks Associational Standing .............. 7

          D.     Eleventh Amendment Immunity Bars Plaintiffs' Constitutional Claims Against Some of the State Defendants ................................................................... 7

    II.    Plaintiffs Fail to State Viable Claims for Relief................................. 9

          A.     Plaintiffs' Facial Challenges Require Them to Show that the EOLOA is Unlawful in All Applications ........................... 9

          B.     Plaintiffs Fail to State Viable Claims Under the ADA and Section 504 of Rehabilitation Act ........................... 10

          C.     Plaintiffs Fail to State a Viable Equal Protection Claim .......... 13

          D.     Plaintiffs Fail to State a Viable Due Process Claim ................. 14

Conclusion .................................................................................................... 14

1

# TABLE OF AUTHORITIES

2

**Page**

3

C<small>ASES</small>

4

*Adams v. Johnson*
5
    355 F.3d 1179 (9th Cir. 2004)..................................................................... 1

6

*Aikins v. St. Helena Hosp.*
7
    843 F. Supp. 1329 (N.D. Cal. 1994)......................................................... 11

8

*Bowen v. Am. Hosp. Ass'n*
    476 U.S. 610 (1986) ................................................................................. 11
9

10

*City of Los Angeles v. Patel*
    576 U.S. 409 (2015) ................................................................................... 9
11

12

*Davidson v. Kimberly-Clark Corp.*
    889 F.3d 956 (9th Cir. 2018)...................................................................... 7

13

14

*Dep't of Commerce v. New York*
    139 S. Ct. 2551 (2019) ............................................................................... 4

15

16

*Fitzgerald v. Corrs. Corp. of Am.*
    403 F.3d 1134 (10th Cir. 2005)................................................................ 12

17

18

*Gallinger v. Becerra*
    898 F.3d 1012 (9th Cir. 2018)................................................................. 14

19

20

*Hason v. Med. Bd. of California*
    279 F.3d 1167 (9th Cir. 2002).................................................................... 9

21

22

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ................................................................................... 5

23

*Hunt v. Wash. State Apple Adver. Comm'n*
    432 U.S. 333 (1977) ................................................................................... 7

24

25

*Johnson by Johnson v. Thompson*
    971 F.2d 1487 (10th Cir. 1992)................................................................ 11

26

27

*Kohn v. State Bar of California*
    75 F.4th 985 (9th Cir. 2023)....................................................................... 9

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Laird v. United Teachers of Los Angeles*
    615 F. Supp. 3d 1171 (C.D. Cal. 2022)............................................................. 6, 7

*Lee v. Oregon*
    107 F.3d 1382 (9th Cir. 1997)...................................................2, 3, 7, 14

*Los Angeles Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992).......................................................... 8

*Lovell v. Chandler*
    303 F.3d 1039 (9th Cir. 2002).......................................................... 9

*McGugan v. Aldana-Bernier*
    752 F.3d 224 (2d Cir. 2014).......................................................... 12

*Morrison v. Peterson*
    809 F.3d 1059 (9th Cir. 2015).......................................................... 9

*Murguia v. Langdon*
    61 F.4th 1096 (9th Cir. 2023).......................................................... 14

*O'Guinn v. Nevada Dep't of Corr.*
    468 F'Appx 651 (9th Cir. 2012).......................................................... 12

*Pareto v. F.D.I.C.*
    139 F.3d 696 (9th Cir. 1998).......................................................... 1

*Patel v. Kent Sch. Dist.*
    648 F.3d 965 (9th Cir. 2011).......................................................... 14

*Rodriguez v. City of San Jose*
    930 F.3d 1123 (9th Cir. 2019).......................................................... 5

*Ruffin v. Rockford Memorial Hosp.*
    181 F'Appx 582 (7th Cir. 2006).......................................................... 12

*Shavelson v. Bonta*
    608 F. Supp. 3d 919 (N.D. Cal. 2022)................................................3, 11

*Sprint Telephony PCS, L.P. v. Cnty. of San Diego*
    543 F.3d 571 (9th Cir. 2008).......................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Salerno*
    481 U.S. 739 (1987) ................................................................. 9, 10

*United States v. University Hosp., State Univ. of New York at Stoney
    Brook*
    729 F.2d 144 (2d Cir. 1984) ...................................................... 11

*Wash. State Grange v. Wash. State Rep. Party*
    552 U.S. 442 (2008) ................................................................. 10

*Washington v. Glucksberg*
    521 U.S. 702 (1997) ..........................................................2, 9, 10

*Ex parte Young*
    209 U.S. 123 (1908) ................................................................... 7

STATUTES

Americans with Disabilities Act .......................................................*passim*

California Health and Safety Code
    § 443.1(r) ................................................................................... 2
    § 443.5(a)(1)(B) ......................................................................... 2

California Probate Code
    § 810-11 ..................................................................................... 2
    § 813 .......................................................................................... 2

Rehabilitation Act § 504 .................................................................*passim*

CONSTITUTIONAL PROVISIONS

Eleventh Amendment ....................................................................7, 8, 9

## INTRODUCTION

Plaintiffs' Opposition confirms that the Complaint, and this action, should be dismissed with prejudice.  Plaintiffs simply cannot overcome the dispositive procedural defects in their Complaint, most prominently, the absence of Article III standing for either the individual patient or organizational Plaintiffs to challenge the End of Life Option Act (EOLOA or Act).  Plaintiffs also have not and cannot allege viable statutory and constitutional claims against any of the State Defendants. Because these defects cannot be cured through amendment, dismissal with prejudice and without leave to amend is warranted.

## ARGUMENT

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

#### A.   The Individual Patient Plaintiffs Lack Standing

Plaintiffs VanHook and Tischer lack standing because they are not currently eligible for aid-in-dying (AID) medication and because their alleged injury is too remote and not traceable to any conduct of the State Defendants.

##### 1.   The individual patient Plaintiffs cannot show an injury in fact

Plaintiffs VanHook and Tischer maintain that they are injured by the EOLOA, first asserting that they are eligible for AID medication as a matter of law, notwithstanding their decades of sustained treatment and the absence of any allegation of changed circumstances.  Dkt. 28 at 11.  They specifically point to allegations in the Complaint that the EOLOA permits a person to obtain AID medication even where available medical interventions, if accepted, are anticipated to be effective in preventing death within six months.  *Id.*; *see* Dkt. 1, ¶¶ 91-92.  But these allegations are conclusory legal assertions, which are not to be assumed by the Court, even in a motion to dismiss.  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Moreover, Plaintiffs' interpretation of the law is incorrect, as the EOLOA clearly requires that

1    a person may be eligible for AID medication *only* when suffering from an incurable

2    and irreversible disease that will, within reasonable medical judgment, result in

3    death within six months.  Cal. Health & Safety Code §§ 443.5(a)(1)(B), 443.1(r).

4        Nevertheless, whatever the precise boundaries of eligibility under the EOLOA,

5    the allegations in the Complaint make clear that these individual patient Plaintiffs

6    are not currently eligible under the law to obtain AID medication.  Though these

7    Plaintiffs have indisputably serious medical conditions, they have also alleged that

8    those conditions are chronic and have been, and continue to be, responsive to life-

9    sustaining medical treatment.  Dkt. 1, ¶¶ 34-38.  In asserting their desire to continue

10   living, Plaintiffs VanHook and Tischer have alleged that they do not intend to

11   discontinue treatment and, thus, they are not reasonably likely to die within the next

12   six months from their medical conditions.  *See id.*, ¶¶ 36, 38.  Moreover, to the

13   extent Plaintiffs' alleged eligibility is premised on the possibility that they will

14   involuntarily elect to discontinue treatment, thus hastening their death and bringing

15   them within the ambit of the Act, an entirely separate body of state law not at issue

16   in this lawsuit governs such threshold decisions.  *See* Dkt. 20-1 at 17; *see also* Cal.

17   Prob. Code §§ 810-11, 813.  The individual patient Plaintiffs do not allege that

18   those protections under unchallenged provisions of California law would not

19   prevent the outcome they seek to avoid.

20       But even if Plaintiffs VanHook and Tischer are currently eligible for AID

21   medication, standing is independently foreclosed by *Lee v. Oregon*, 107 F.3d 1382

22   (9th Cir. 1997).  Plaintiffs respond that this Court should disregard *Lee* because it

23   was decided before *Washington v. Glucksberg*, 521 U.S. 702 (1997).  Dkt. 28 at 13.

24   Yet *Glucksberg*, in which the Supreme Court held that there is no substantive due

25   process right to physician-aided suicide, does not speak to (and is certainly not

26   fundamentally inconsistent with) the Ninth Circuit's resolution of distinct legal

27   issues in *Lee*.  *Glucksberg* sheds no light on the critical inquiry here—whether and

28

1   when an individual can establish standing to challenge a state's AID medication

2   law—an issue squarely considered by the Ninth Circuit.  *Lee*, 107 F.3d at 1388-90.

3       Plaintiffs submit that *Lee* is not binding because the AID medication law in

4   that case had different, stricter requirements.  Dkt. 28 at 13.  But these differences,

5   which concern the two laws' mechanisms for ensuring the voluntariness of a

6   patient's decision, do not affect the applicability of *Lee*'s standing analysis.

7   *Lee* held that the patient plaintiff in that case could not establish standing because,

8   in order for her alleged harm (involuntary death) to manifest, a chain of seven

9   distinct contingencies under Oregon's law would need to occur.  *Lee*, 107 F.3d at

10  1388-90.  Here, notwithstanding the differences highlighted by Plaintiffs, a chain of

11  at least ten similarly uncertain (and undisputed) contingencies would have to occur

12  for Plaintiffs VanHook or Tischer to involuntarily end their lives using the Act.  *See*

13  Dkt. 20-1 at 18-19.

14      Plaintiffs finally attempt to distinguish *Lee* by arguing that many of the

15  speculative contingencies identified by the Ninth Circuit have already occurred in

16  this case.  Dkt. 28 at 13-14.  They point to allegations about VanHook and

17  Tischer's prior bouts of depression and suicidal thoughts, as well as purported

18  instances of sympathetic reactions by physicians.  *Id*. (citing Dkt. 1, ¶¶ 34-36, 38,

19  79, 125).  But these allegations are not meaningfully different than those asserted

20  by the plaintiff in *Lee*, where the Court acknowledged that the plaintiff had clinical

21  depression that caused her ambivalence about whether she wanted to continue

22  living.  *Lee*, 107 F.3d at 1388.  In any case, the Complaint makes clear that

23  Plaintiffs VanHook and Tischer are not presently suffering from any mental illness

24  that undermines their desire to continue living, meaning that they fail to even allege

25  the threshold contingency that must occur before any of the EOLOA procedural

26  steps are implicated.  *Lee* controls the standing analysis here.[1]

27      _____

    [1] In a footnote, Plaintiffs cite *Shavelson v. Bonta*, 608 F. Supp. 3d 919, 925-
28  26 (N.D. Cal. 2022) as additional support for their standing argument.  Dkt. 28 at

**2. The individual patient Plaintiffs' alleged injuries are not fairly traceable to conduct of the State Defendants**

To establish traceability, Plaintiffs highlight various State programs and services aimed at preventing suicide, and argue that compliance with the EOLOA by the State Defendants effectively withholds such services from eligible patients. Dkt. 28 at 14-15. But, as noted, neither VanHook nor Tischer are currently suicidal or alleged to be seeking any of the services purportedly denied. Moreover, the EOLOA does not preclude anyone (even a terminally ill patient seeking AID medication) from participating in any of the programs identified. Plaintiffs' assertions about the express tenets of the Act are simply untrue. No suicide prevention services available to others are withheld or denied to terminally ill patients. The mere fact that the State administers initiatives aimed at preventing suicide that the individual patient Plaintiffs may choose to forgo in favor of end of life options under the Act does not establish the requisite traceable causation to their alleged injury.

More importantly, Plaintiffs cannot overcome that, under the EOLOA's explicit requirements, the independent conduct of multiple third parties stands between their involuntary death and the actions of the State Defendants. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). They contend that the risk of involuntary death is nevertheless traceable to the State Defendants because it is "predictable" that these third parties—the doctors who must assess mental capacity and the voluntariness of a patient's decision, as well as the personal witnesses who must attest to the patient's apparent mental state—will act in a manner that facilitates their involuntary death. Dkt. 28 at 15. But such conjecture is the opposite of "predictable." For instance, in the event of a mental decompensation by either VanHook or Tischer, Plaintiffs theorize that *multiple*

---

13 n.1. That case is distinguishable, however, because the alleged injury there, where an ALS patient sought an ADA accommodation to allow her physician to affirmatively aid her ingestion of AID medication after her loss of physical ability, was neither speculative nor dependent on a lengthy chain of contingent events.

*doctors of ordinary competence* will fail to recognize that a request for AID medication is the involuntary product of a psychiatric crisis. The independent conduct of third parties mandated within the EOLOA framework thus vitiates any direct traceability between the State Defendants' actions and the Plaintiffs' alleged injury.

### B.    The Organizational Plaintiffs Lack Direct Standing

Plaintiffs' Opposition next contends that the organizational Plaintiffs have sufficiently alleged direct standing based on purported frustration of their missions caused by the EOLOA and corresponding diversions in their resources. Dkt. 28 at 15-19. As to Plaintiff United Spinal Association (United Spinal), it is asserted that United Spinal's purpose to "empower and advocate for people with spinal cord injuries" is impeded by the Act, which allegedly steers its members away from the "greater quality of life" at the core of its mission. Dkt. 28 at 16; *see* Dkt. 1, ¶ 22. Yet nothing in these abstract and conclusory allegations comes close to asserting any tangible interference in United Spinal's fulfillment of its mission. The EOLOA does not restrict, either directly or indirectly, the ability of any of the organizational Plaintiffs to carry out their advocacy and service-based purposes. While the option for AID medication may be inconsistent with United Spinal's view of what is "greater quality of life" for its members, the mere fact that a state policy offends an organization's principles does not constitute the type of concrete harm that confers standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1135 (9th Cir. 2019).[2]

The Opposition next highlights Plaintiff Institute for Patients' Rights (IPR), which alleges that the EOLOA frustrates "its mission by placing at risk of death individuals that IPR seeks to educate and advocate on behalf of." Dkt. 28 at 17; *see*

---

[2] This applies with even greater force to Plaintiff Not Dead Yet, who simply asserts generalized allegations that the EOLOA frustrates its mission to oppose various "public policies," including "assisted suicide bills in states that have not legalized the practice." *See* Dkt. 1, ¶ 25.

1  Dkt. 1, ¶ 27.  Again, however, such allegations do not speak to any actual

2  impairment of IPR's advocacy mission.  Though IPR seeks to educate the public on

3  a variety of health-related issues, including the purported dangers of AID

4  medication laws, *see* Dkt. 1, ¶ 26, the fact that California has made a contrary

5  policy choice does not impair IPR's mission in any identifiable way.  Moreover, to

6  the extent Plaintiffs' reference to the "risk of death" alludes to the possible death of

7  consumers for IPR's services (and, thus, an EOLOA-related diminishment of its

8  mission), the Complaint merely alleges a speculative possibility and does not assert

9  that IPR has actually lost any consumer or experienced any lessening of its

10 business.  *See Laird v. United Teachers of Los Angeles*, 615 F. Supp. 3d 1171, 1179

11 (C.D. Cal. 2022) (granting motion to dismiss, in part, because speculative

12 allegations of harm were insufficient to confer standing).

13      The same is true of the allegations for Plaintiff Communities Actively Living

14 Independent and Free (CALIF).  *See* Dkt. 28 at 17.  Though the Complaint

15 generally alleges that the availability of AID medication in California "further[s]

16 the deaths of constituents that would have sought out and benefitted from CALIF's

17 services," *see* Dkt. 1, ¶ 32, there are no concrete allegations that CALIF's provision

18 of services have actually been affected by the Act.  Rather, Plaintiffs' allegations

19 simply speculate that the EOLOA is capable of causing the death of persons who

20 may have sought out the organization's services.  Indeed, the Complaint makes no

21 allegation of any actual death of a CALIF consumer, notwithstanding the EOLOA's

22 nearly eight years in effect and the Plaintiffs' level of specificity in pleading other

23 factual scenarios addressed in the Complaint.  *See* Dkt. 1, ¶¶ 79, 95, 133.

24      As such, the conclusory allegations concerning frustration of the

25 organizational Plaintiffs' missions amount to nothing more than statements that the

26 EOLOA offends these Plaintiffs' organizational values and speculative fears of

27 hypothetical future harms.  Such allegations lack the certainty and concreteness

28

necessary to demonstrate an injury in fact.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018); *Laird*, 615 F. Supp. 3d at 1178.

### C.   Plaintiff United Spinal Lacks Associational Standing

Plaintiffs further dispute that the Ninth Circuit's decision in *Lee* forecloses United Spinal's claim of associational standing, specifically arguing that *Lee* did not involve a membership organization.  Dkt. 28 at 21.[3]  But this is irrelevant. Though *Lee* rejected the standing of residential care facilities under a third-party standing theory, rather than an associational standing theory, *see Lee*, 107 F.3d at 1390 (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)), the Court's central holding, that unnamed patients on whose behalf the care facilities wished to sue would not have standing to assert their own interests, is controlling here because United Spinal's members are no closer to suffering injury than Plaintiffs VanHook and Tischer.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (the first requirement for associational standing is that the association's members must otherwise have the right to sue as individuals).

### D.   Eleventh Amendment Immunity Bars Plaintiffs' Constitutional Claims Against Some of the State Defendants

Plaintiffs next submit that Defendants Newsom, Aragón, and Madrigal-Weiss are not shielded by California's Eleventh Amendment immunity.  Dkt. 28 at 21-23. Though they acknowledge that the exception to immunity articulated in *Ex parte Young*, 209 U.S. 123, 155-56 (1908) requires that public officials sued have enforcement power over the challenged state law, they argue that the Complaint alleges a sufficient connection between these officials and their purported injuries. Dkt. 28 at 21-22.[4]

---

[3] Plaintiffs also argue that *Lee* did not involve an entity with a direct injury claim based on frustration of mission.  Dkt. 28 at 21.  This improperly conflates the distinct inquiries for direct-injury and associational standing.

[4] For purposes of the present Motion, the State Defendants have not addressed the potential Eleventh Amendment immunity of each public official named in the constitutional claims.  This omission, from the current Motion, should not be read as an admission that Eleventh Amendment immunity does not apply to

As to Governor Newsom, Plaintiffs point to the Governor's appointment powers and rely on *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992), where the Ninth Circuit held that Governor Wilson's power to appoint judges warranted an exception to immunity.  Dkt. 28 at 22.  *Eu* is plainly distinguishable.  The law challenged in that case concerned the number of superior court judges that could be appointed in Los Angeles County.  *Eu*, 979 F.2d at 699. The Ninth Circuit held that the Governor's power to appoint judges thus plausibly connected him to enforcement of the dispute at the heart of the lawsuit.  *Eu*, 979 F.2d at 704.  By contrast, no such appointment-related connection exists here. Though Governor Newsom appoints leaders and members of many of the state-agency Defendants, those agencies do not enforce the EOLOA and, even if they did, mere appointment of such officials would not suffice to connect the Governor to the law.  *See Eu*, 979 F.2d at 704 ("general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.").

Plaintiffs contend that Defendants Aragón and Madrigal-Weiss, as leaders of the California Department of Public Health and Mental Health Services Oversight and Accountability Commission, respectively, have a more direct connection to the State's "suicide prevention program and EOLOA."  Dkt. 28 at 22.  By "complying with and enforcing EOLOA," Plaintiffs argue, these Defendants deny "people with terminal disabilities the equal benefit of suicide prevention programs and services." *Id.*  But Defendants Aragón and Madrigal-Weiss's conduct related to the EOLOA (to the extent there is any) has no substantive connection to or effect on the provision of AID medication in California, the core issue in this lawsuit.  That their agencies' administer suicide prevention programs, which Plaintiffs contend (erroneously) are limited as a downstream effect of the EOLOA, cannot constitute the remaining state-official Defendants or as a waiver of Eleventh Amendment immunity arguments that may be asserted if these proceedings continue.

the type of direct connection that warrants an exception to Eleventh Amendment immunity.[5]

## II.   PLAINTIFFS FAIL TO STATE VIABLE CLAIMS FOR RELIEF

### A.   Plaintiffs' Facial Challenges Require Them to Show that the EOLOA is Unlawful in All Applications

Plaintiffs, citing a concurring opinion from *Glucksberg*, dispute the applicability of the facial-challenge standard articulated in *United States v. Salerno*, 481 U.S. 739, 745 (1987), which requires that a plaintiff prove that no set of circumstances exist where a challenged state law is consistent with the Constitution and federal law.  Dkt. 28 at 23-24 (citing *Glucksberg*, 521 U.S. at 740 (Stevens, J., concurring in judgments)).  Notwithstanding that concurrence, however, the Supreme Court and the Ninth Circuit have continued to apply *Salerno*'s "no set of circumstances" standard.  *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015); *Morrison v. Peterson*, 809 F.3d 1059, 1064, 1068 (9th Cir. 2015).  This is especially so where, as pertinent to Plaintiffs' ADA and Section 504 claims, the facial challenge turns on alleged preemption by federal law.  *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc).

Plaintiffs ask the Court to disregard this binding precedent and instead simply measure the EOLOA for legitimacy and consistency with federal disability law and the Constitution.  Dkt. 28 at 24, 25.  But such an approach cannot be squared with the basis for *Salerno*'s standard or the way in which Plaintiffs have pled their claims.  "A facial challenge to a legislative Act is, of course, the most difficult

---

[5] Binding Ninth Circuit precedent holds that Title II of the Americans with Disabilities Act (ADA) is a valid abrogation of state sovereign immunity.  *See Hason v. Med. Bd. of California*, 279 F.3d 1167, 1170-71 (9th Cir. 2002); *see also Lovell v. Chandler*, 303 F.3d 1039, 1051 n.5 (9th Cir. 2002) (same applies to Section 504 of Rehabilitation Act).  After the State Defendants filed their Motion, the Ninth Circuit granted en banc rehearing in a case that could overturn that precedent and result in a contrary rule of law.  *See Kohn v. State Bar of California*, 75 F.4th 985 (9th Cir. 2023).  The grant of en banc rehearing does not affect the binding nature of *Hason* and *Lovell*.  However, if the en banc decision in *Kohn* overrules or limits those cases, then the State Defendants would also be entitled to dismissal of the ADA and Section 504 claims against all state entities and against state officials sued in their official capacity.

challenge to mount successfully" because the challenger seeks to "render [the statute] wholly invalid." *Salerno*, 481 U.S. at 745. That is exactly what Plaintiffs seek here. The Complaint alleges that the EOLOA must be invalidated wholesale because it purportedly violates the statutory and constitutional rights of all individuals who are eligible for AID medication. Dkt. 1, ¶¶ 174, 185, 191, 197-98. Yet even assuming this were true in some hypothetical instances (it is not), Plaintiffs cannot demonstrate that the Act is unlawful in all cases. Indeed, the fact that Plaintiffs have brought this lawsuit in a facial posture, seeking to deny all Californians this meaningful and critical end-of-life care option, is effectively fatal to their case.[6]

## B. Plaintiffs Fail to State Viable Claims Under the ADA and Section 504 of Rehabilitation Act

Plaintiffs reiterate their allegations that the State operates a system of programs and services, as well as civil and criminal laws, designed to prevent suicide, and that State Defendants' compliance with the EOLOA acts to unlawfully exclude terminally ill disabled patients from these services and protections based on their disability. Dkt. 28 at 26-27. These allegations fail to state a cognizable claim for relief under federal disability law.

Contrary to Plaintiffs' conclusory legal allegations, nothing in the EOLOA excludes any person from any of the State's programs aimed at preventing suicide. A person who is eligible for AID medication, even one who requests it, is not legally barred (by the EOLOA or any other law) nor otherwise precluded from participating in any of the suicide-prevention services or programs identified by Plaintiffs. The disconnect that appears to drive Plaintiffs' ADA and Section 504

---

[6] Still, even under Plaintiffs' alternative formulation of the test for facial challenges, their claims must fail. As they acknowledge, Dkt. 28 at 24, "a facial challenge must fail where the statute has a 'plainly legitimate sweep,'" *Wash. State Grange v. Wash. State Rep. Party*, 552 U.S. 442, 449 (2008). The EOLOA undoubtedly satisfies this test. In fact, the law is the very by-product of the "earnest and profound debate about the morality, legality, and practicality of physician-assisted suicide" explicitly left by the Supreme Court to the "democratic societ[ies]" of individual states. *Glucksberg*, 521 U.S. at 735.

10

claims is the fact that, suicidal ideation expressed through an eligible person's request for AID medication, typically does not activate the State's various anti-suicide interventions and programs as it might if expressed in a different way. But this is a matter of the terminal patient's exercise of personal autonomy in making his or her own decision regarding which medical treatment and interventions they will or will not receive, not evidence of disability discrimination.

Plaintiffs' claims are thus fundamentally flawed in two respects. First, Plaintiffs necessarily cannot show the causation necessary for claims under the ADA and Section 504 because the EOLOA requires, in all applications, a thorough assessment of the patient's consent at each stage of the procedure. *Shavelson*, 608 F. Supp. 3d at 928. Such consent breaks the chain of causation, establishing that the allegedly discriminatory treatment posited by Plaintiffs is not based on a patient's disability, but rather, on the patient's independent and voluntary choice. *See Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 632, 635 (1986) (no Section 504 liability where parents' failure to give consent, not a child's disability, was the cause of hospital's failure to provide treatment to child); *see also Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1338 (N.D. Cal. 1994) (recognizing *Bowen* causation principle).

Second, even if, as Plaintiffs allege, the provision of AID medication pursuant to the EOLOA results in a de facto exclusion of patients from State's anti-suicide programs—i.e., the choice of one treatment means that other options will not be pursued or are not available—such medical treatment decisions concerning a patient's disabling condition are not cognizable under the ADA and Section 504. This limitation on federal disability law is well-established. *See United States v. University Hosp., State Univ. of New York at Stoney Brook*, 729 F.2d 144, 156-57 (2d Cir. 1984) ("Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'"); *accord Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1494

11

(10th Cir. 1992); *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Ruffin v. Rockford Mem. Hosp.*, 181 F'Appx 582, 585 (7th Cir. 2006); *O'Guinn v. Nevada Dep't of Corr.*, 468 F'Appx 651, 653 (9th Cir. 2012); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231-34 (2d Cir. 2014).

The fallacy in Plaintiffs' arguments is the failure to recognize the differentiation that federal disability law makes between positive/benign and pejorative discrimination.  As the Second Circuit has explained:

> A doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate) is practicing the benign form of discrimination. . . .  On the other hand, a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge—is practicing the pejorative form of discrimination.  It is clear that the intention of the Rehabilitation Act in prohibiting discrimination is to prohibit the pejorative, and not the benign, form.

*McGugan*, 752 F.3d at 231.  In other words, the provision of medical treatment related to a patient's disability (like the provision of AID medication to a patient on the basis of their terminal illness) is not covered by the ADA and Section 504, even if that decision results in different treatment, services, and protections under law.

Plaintiffs dispute the relevance of this authority, arguing that they "are not challenging any particular individual's course of medical treatment."  Dkt. 28 at 29.  But treatment decisions are at the foundation of their claims.  That Plaintiffs assert facial challenges encompassing all applications of the EOLOA does not alter the fact that every such application of the law necessarily involves a medical treatment decision (a choice of one treatment to the exclusion of others) that directly relates to the patient's terminal disability.  Indeed, Plaintiffs' allegations, at their core, assert that the ADA and Section 504 override a patient's right to personal autonomy and mandate the imposition of a different course of medical treatment for terminally ill patients focused on preventing suicide, *see* Dkt. 1, ¶¶ 99-103, and that doctors who

provide AID treatment must be subjected to professional, civil, and criminal liability, *see id.*, ¶¶ 106-08, 113-17, 120-21.  Such claims fall well outside of the long-recognized bounds of ADA and Section 504 liability.

### C.    Plaintiffs Fail to State a Viable Equal Protection Claim

As to equal protection, Plaintiffs first maintain that their Complaint sufficiently alleges similarly situated classifications subject to different treatment under the Act.  Dkt. 28 at 30-31.  They specifically dispute the highlighted difference between EOLOA-eligible patients and others suffering from disabling medical conditions, arguing that this Court may not recognize this distinction at this stage in the proceedings.  *Id.* at 31.  But no factual development or litigation is necessary for this Court to decipher how a patient who, within reasonable medical judgment, will die within six months, is not similarly situated with Plaintiffs' alternative proposed classification.  The fact that Plaintiffs' suggested classification is not imminently likely to die, on its face, demonstrates a dispositive difference that renders this group fundamentally dissimilar to patients eligible for AID medication.

Plaintiffs next reassert their erroneous claim that heightened scrutiny applies to the EOLOA's classifications because completion of the process results in death, thus implicating the fundamental right to life.  Dkt. 28 at 32.  Plaintiffs again rely on a misreading of the plain language of the EOLOA.  The fundamental right to life is only violated if a patient's death proves to be involuntary.  Under the plain language of EOLOA, however, a patient's decision to request and obtain AID medication must be voluntary, and the patient must self-administer the AID medication.  In order to assure that a terminally ill patient's participation in the Act is voluntary, EOLOA sets forth numerous safeguards, such that the risk of *involuntary* death under the Act is so remote and speculative that the individual patient Plaintiffs in this action cannot even establish standing to sue in federal

1  court.  *See Lee*, 107 F.3d at 1388-90.  Plaintiffs have not and cannot allege that the
2  law directly and substantially interferes with the fundamental right to life.

3      Even under rational basis scrutiny, Plaintiffs submit, the EOLOA's scope is
4  both over and under-inclusive, rendering it arbitrarily unconstitutional.  Dkt. 28 at
5  33.  But a court may not invalidate a government classification in rational basis
6  review because it is over-inclusive or under-inclusive.  *Gallinger v. Becerra*, 898
7  F.3d 1012, 1018 (9th Cir. 2018).  In affording certain Californians the option for
8  AID medication, the EOLOA rationally serves the State's inherent and legitimate
9  interest in providing for the welfare of its people.

10     **D.   Plaintiffs Fail to State a Viable Due Process Claim**

11     Plaintiffs' Opposition does nothing to save its due process claim.  Even if
12  proved at trial, the allegations in the Complaint do not establish that the State
13  Defendants' official conduct with respect to the EOLOA constitutes "deliberate
14  indifference" to a foreseeable danger as required for a viable due process claim.
15  *See Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (state-created danger
16  claim requires a showing that official acted with deliberate indifference to known or
17  obvious danger).  Though Plaintiffs disagree that the EOLOA's many procedural
18  steps are sufficient to safeguard patients, those statutorily-required steps, on their
19  face, evidence the State's earnest intent to ensure that a patient's ultimate decision
20  to request, obtain, and self-administer AID medication is voluntary.  The plain text
21  of the law is incompatible with a finding of deliberate indifference.  *See Patel v.*
22  *Kent Sch. Dist.*, 648 F.3d 965, 974-76 (9th Cir. 2011) (the deliberate indifference
23  required under the state-created danger doctrine is more than mere negligence or
24  even gross negligence).

25                  **CONCLUSION**
26     For the foregoing reasons and because any attempt at amendment would be
27  futile, this Court should dismiss Plaintiffs' Complaint with prejudice and without
28  leave to amend.

1   Dated:  September 8, 2023                    Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                EDWARD KIM
                                                 DARRELL W. SPENCE
4                                                Supervising Deputy Attorneys General

5

6

7                                                KEVIN L. QUADE
                                                 CHRISTINE FRIAR WALTON
8                                                MARSHA E. BARR-FERNANDEZ
                                                 Deputy Attorneys General
9                                                *Attorneys for the State Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2

      The undersigned, counsel of record for the State Defendants, certifies that this

3

brief contains 4,787 words, which:

4

    __ complies with the word limit of L.R. 11-6.1.

5

    __ complies with the word limit set by court order.[7]

6

Dated:  September 8, 2023             Respectfully submitted,

7

                             ROB BONTA

8

                             Attorney General of California

9

10

                             KEVIN L. QUADE

11

                             Deputy Attorney General
                             *Attorneys for the State Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[7] At the time of filing, the Court is considering the State Defendants' unopposed *ex parte* application to extend the word limitation.

# CERTIFICATE OF SERVICE

Case Name:  **United Spinal Association, et al.**          No.    **2:23-cv-03107-FLA (GJSx)**
            **v State of California, et al.**

I hereby certify that on <u>September 8, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.**

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 8, 2023</u>, at Sacramento, California.

<table>
<tr><td>Kevin L. Quade</td><td><i>/s/ Kevin L. Quade</i></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>