JOHN KAPPOS (Cal. S.B. #171977)
jkappos@omm.com
O'MELVENY & MYERS LLP
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 360-1900
Facsimile:   (972) 360-1901

KEVIN DÍAZ (*pro hac vice*)
kdiaz@compassionandchoices.org
JESSICA PEZLEY (*pro hac vice*)
jpezley@compassionandchoices.org
COMPASSION & CHOICES
101 SW Madison Street, #8009
Portland, Oregon  97207
Telephone:  (503) 943-6532

*Attorneys for Intervenors*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED SPINAL ASSOCIATION, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-03107-FLA (GJSx)<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Date: October 20, 2023<br>Time: 1:30 p.m.<br>Courtroom: 6B, 6th Floor |

# NOTICE OF MOTION AND MOTION TO INTERVENE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2023 at 1:30 p.m., or at such other time as the Court shall order, in Courtroom 6B of the above-entitled Court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, the Honorable Fernando L. Aenlle-Rocha, United States District Judge, presiding, Intervenors Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN) will and hereby do move under Federal Rule of Civil Procedure Rule 24 for leave to intervene as defendants, by right, or, in the alternative, by permissive intervention in the above-captioned proceeding. This motion is made following conferences of counsel pursuant to L.R. 7-3, which took place on August 31 and September 1, 2023. Counsel for Plaintiffs indicated they will oppose the motion. Counsel for Defendants stated that they take no position on the motion until after they review this filing.

Dated: September 21, 2023

JOHN KAPPOS
O'MELVENY & MYERS LLP

By: /s/ *John Kappos*
        John Kappos

*Attorney for Intervenors*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 6

II. PATIENT INTERVENORS ........................................................................... 7

III. LEGAL STANDARD ................................................................................... 10

IV. ARGUMENT ................................................................................................ 11

    A. Intervenors Should Be Allowed to Intervene As a Matter of Right Under Federal Rule of Civil Procedure 24(a) ............................ 11

        1. Intervenors' Motion for Intervention Is Timely. ....................... 11

        2. Intervenors Have a Significant, Protectable Interest in the Litigation. .................................................................................. 11

        3. Intervenors' Interests Will Be Impaired If Intervention Is Denied. ...................................................................................... 14

        4. Defendants May Not Adequately Represent Intervenors' Interests. ................................................................................... 14

    B. In the Alternative, the Court Should Permit Intervention Pursuant to Federal Rule of Civil Procedure 24(b) ............................ 17

V. CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

Page

**CASES**

*Apr. in Paris v. Becerra*,
  2020 WL 2404620 (E.D. Cal. May 12, 2020) ................................................. 13

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ....................................................................... 14

*Barke v. Banks*,
  2020 WL 2315857 (C.D. Cal. May 7, 2020) ................................................. 15

*Brandt v. Rutledge*,
  551 F. Supp. 3d 882 (E.D. Ark. 2021) .......................................................... 13

*Cal. ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ......................................................................... 14

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
  152 F.3d 1184 (9th Cir. 1998) ................................................................. 10, 14

*Chandler v. Cal. Dep't of Corr. & Rehab.*,
  2023 WL 5353212 (E.D. Cal. Aug. 21, 2023) .............................................. 12

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2003) ................................................................... 11, 14

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ......................................................................... 17

*Greene v. United States*,
  996 F.2d 973 (9th Cir.1993) .......................................................................... 12

*Home Care Ass'n of Am. v. Newsom*,
  2019 WL 5960141 (E.D. Cal. Nov. 13, 2019) .............................................. 15

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ......................................................................... 13

*Kalbers v. U.S. Dep't of Just.*,
  22 F.4th 816 (9th Cir. 2021) .................................................................... 12, 14

*Missouri v. Harris*,
  2014 WL 2506606 (E.D. Cal. June 3, 2014) ................................................ 13

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir.), *as amended on denial of reh'g* (May 30, 1996) ............................................................................................... 11, 12, 17

# TABLE OF AUTHORITIES
## (continued)

Page

*Pac. Gas & Elec. Co. v. Lynch*,
  216 F. Supp. 2d 1016 (N.D. Cal. 2002).............................................................. 13

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983).......................................................................passim

*Shavelson v. Bonta*,
  608 F. Supp. 3d 919 (N.D. Cal. 2022)................................................................ 18

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ........................................................................................... 13

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ........................................................................................... 14

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002)........................................................................ 17, 18

*United States v. State of Oregon*,
  913 F.2d 576 (9th Cir. 1990)............................................................................. 11

*Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*,
  684 F.2d 627 (9th Cir. 1982)............................................................................. 10

*WomanCare of Southfield, P.C. v. Granholm*,
  143 F. Supp. 2d 827 (E.D. Mich. 2000) ............................................................ 13

**STATUTES**

42 U.S.C.A. § 12102 ................................................................................................. 7

**RULES**

Fed. R. Civ. P. 24 ................................................................................................ 6, 10

Fed. R. Civ. P. 24(a) .................................................................................... 7, 10, 19

Fed. R. Civ. P. 24(b) .................................................................................... 7, 17, 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Terminally ill patients should have as much control as possible over their medical decisions. The California End of Life Option Act (EOLOA) gives them that right, in the form of authority to obtain aid-in-dying medication. Plaintiffs seek to take this option away from patients like Burt Bassler, Peter Sussman, and Judith Coburn—the proposed patient intervenors in this action.

Plaintiffs aim to have the EOLOA declared unconstitutional and thus barred from operation. *See* Dkt. 1, ¶ 91. Accordingly, under Rule 24 of the Federal Rules of Civil Procedure, Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN) ("Intervenors") seek leave to intervene as defendants, by right, in the above-captioned proceeding.

Burt Bassler is an 87-year-old California resident with amyloidosis, a progressive disease that is likely to become terminal. Ex. A (Decl. of Burt Bassler) ¶¶ 2, 3. Judith Coburn is a 79-year-old California resident and cancer patient with progressive arthritis, a condition likely to become terminal if her cancer returns. Ex. B (Decl. of Judith Coburn) ¶¶ 2-5, 8, 16. Peter Sussman is an 82-year-old California resident and spinal malformation patient with arachnoiditis and severe neuropathy; he would likely face immense pain if he were to be diagnosed with a terminal disease. Ex. C (Decl. of Peter Sussman) ¶¶ 2, 40.

Dr. Chandana Banerjee treats terminally ill patients and serves as an associate clinical professor of supportive care medicine—a role through which she developed and leads fellowship in hospice and palliative medicine. Ex. D (Decl. of Chandana Banerjee, MD, MPH, HMDC, FAAHPM) ¶ 3. Dr. Catherine Sonquist Forest treats terminally ill patients and serves as a clinical associate professor of family medicine. Ex. E (Decl. of Catherine S. Forest, MD, MPH, FAAFP) ¶¶ 3-4. Dr. Forest also has personal experience with medical aid in dying because her

husband, Will, exercised his right under the EOLOA to obtain aid-in-dying medication when his rapidly progressing, unclassified motor neuron disease became unbearable. *Id.* ¶¶ 30-34.

Compassion & Choices Action Network (CCAN) advocates and lobbies for laws that protect and expand end-of-life options. CCAN is entitled to intervene in this action as a matter of right because it, along with its affiliate Compassion & Choices California, sponsored the EOLOA, the statute being challenged in this litigation. *See* Kappos Decl. Exs. 1-4.

Intervenors are directly affected by Plaintiffs' case, which seeks to enjoin the EOLOA. Because Defendants might not adequately represent Intervenors' narrower and more personal interests, the Court should grant Intervenors' timely motion to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. Alternatively, the Court should exercise its discretion to grant Intervenors permission to intervene under Rule 24(b).

## II.  PATIENT INTERVENORS

Lambert Bassler ("Burt," as his friends and family have referred to him since his 20s) is an 87-year-old emeritus member on the board of the Hospice of the East Bay who was diagnosed with amyloidosis, a rare progressive disease with symptoms that mimic congestive heart failure. Ex. A ¶¶ 2, 14. Since Burt's diagnosis in 2019, his heart has become increasingly stiff, weak, and inefficient. *Id.* ¶ 5. This has caused him to experience significant weight loss as well as overall weakness and shortness of breath during daily activities, such as getting dressed in the morning. *Id.* ¶¶ 5-8. Burt is disabled as that term is defined in the ADA[1] because his weakness and shortness of breath are physical impairments that

---

[1] An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment. 42 U.S.C.A. § 12102. The ADA does not specifically name all of the impairments that are covered. *See id.*

substantially limit his major life activities.

Burt sees several doctors to manage his condition, including a cardiologist, an amyloidosis specialist, and a primary care doctor. *Id.* ¶ 10. Although Burt takes a drug that may slow the advance of his disease, his condition is progressive and will likely result in a terminal diagnosis. *Id.* ¶¶ 3, 9, 19.

Judith Coburn is a 79-year-old California resident who enjoys gardening, spending time with her friends, and volunteering with Ashby Village, an organization in Berkeley, California that helps elderly individuals stay in their homes by providing them with companionship and day-to-day assistance. Ex. B ¶¶ 2, 23. In 2019, Judith was diagnosed with ovarian clear cell carcinoma—a rare and aggressive form of ovarian cancer. *Id.* ¶ 3. Judith had surgery to remove the tumor the day after it was identified and, for the next three months, underwent chemotherapy to treat the cancer. *Id.* As a result, she developed chemotherapy-induced peripheral neuropathy in her hands and feet, which causes numbness and intense, electric-shock-like sensations. *Id.* ¶ 7. Due to the neuropathy, Judith cannot complete simple tasks such as buttoning her shirt and writing, and she frequently drops objects. *Id.* Judith also suffers from arthritis, a progressive condition that requires her to use a walker or cane in order to walk. *Id.* ¶ 8. In September 2020, Judith underwent a total hip replacement surgery because of the arthritis. *Id.* ¶ 9. Due to complications from the surgery, which included a broken femur, Judith lives every day with around-the-clock pain. *Id.* ¶¶ 9-10. Judith is disabled as that term is defined in the ADA because Judith's neuropathy and arthritis are physical impairments that substantially limit her major life activities.

If Judith's cancer returns, she would face a grim prognosis. *Id.* ¶ 4. Judith does not want to live the final months of her life in misery, battling the disease to the very last minute in unbearable pain due to her pre-existing conditions. *Id.* ¶ 16. Judith knows that if her cancer returns, it will almost certainly kill her. *Id.* She does not want to die, but without the option of medical aid in dying, she will be

forced to endure not only intense physical pain, but also the anxiety inherent in being forced to endure that pain until cancer takes her life. *Id.* ¶¶ 16-19.

Peter Sussman is an 82-year-old retired, award-winning journalist and author with a long history of advocacy and expertise on journalism ethics, diversity, and freedom of information. Ex. C ¶ 3. He spent 29 years as an editor at the San Francisco Chronicle before leaving to pursue an independent career in writing and editing. *Id.* Peter has lived with spinal problems all his life, and has lived with his current condition for over 22 years. *Id.* ¶ 4. In 2001, Peter was informed by several spinal doctors and a neurologist that he faced potential paralysis and had no choice but to undergo immediate, major reconstructive surgery. *Id.* ¶ 6. That surgery—a three-level lumbar sacral laminectomy infusion—was the first of a series of seven surgeries to address his spinal malformation. *Id.* ¶¶ 6-19. During the course of the procedures, Peter developed arachnoiditis—a rare pain disorder caused by inflammation of membranes in the spinal cord—and severe neuropathy. *Id.* ¶¶ 20-22. Peter is disabled as that term is defined in the ADA because his spinal conditions cause physical impairment that substantially limits his major life activities.

Because of Peter's incurable spinal conditions, he would be faced with the prospect of dealing with a compounded level of pain at the end of his life if he were to develop a terminal disease. *Id.* ¶ 34. Peter has a palliative team that helps support and manage his constant pain and strain, enabling him to continue to live a happy and meaningful life—which he hopes to do for as long as possible. *Id.* ¶ 32. Having watched people he loves struggle through terminal diagnoses, it is vital for Peter to maintain a sense of agency in the circumstances of his own dying. *Id.* ¶¶ 35-36.

If and when Burt, Judith, and Peter receive a terminal diagnosis, they intend to obtain prescriptions for aid-in-dying medication. None of them fear being tricked, coerced, or compelled to take advantage of medical aid in dying, which

they view as an option for a peaceful end-of-life experience if their respective conditions ever become unbearable. Ex. A ¶¶ 15-17; Ex. B ¶¶ 17, 26; Ex. C ¶¶ 39, 43.

### III. LEGAL STANDARD

Intervenors are entitled to intervene in this proceeding as a matter of right under Fed. R. Civ. P. 24(a), which provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In applying Rule 24, the Ninth Circuit has held that the qualification for intervention as a matter of right depends on four factors: (1) whether the motion is timely; (2) whether the applicant has a significant, protectable interest relating to the subject of the litigation; (3) whether that interest will be practically impaired if intervention is not granted; and (4) whether the applicant's interest is adequately represented by the parties to the action. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527-28 (9th Cir. 1983) (holding an entity was entitled to intervene on behalf of defendants to protect its interest in the preservation of birds and their habitats); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (holding an entity could intervene where the Ninth Circuit's four-part test was satisfied). The Ninth Circuit construes this test broadly in favor of intervention. *See Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 629-30 (9th Cir. 1982) (holding that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported). Each of these four factors weighs in favor of Intervenors' request to intervene here.

## IV. ARGUMENT

### A. Intervenors Should Be Allowed to Intervene As a Matter of Right Under Federal Rule of Civil Procedure 24(a)

#### 1. Intervenors' Motion for Intervention Is Timely.

Intervenors file this motion at the earliest stage of litigation, so it is timely. To determine whether a motion to intervene is timely, Ninth Circuit precedent requires consideration of three factors: (1) the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay. *United States v. State of Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990). Intervenors filed this motion before any defendant has answered the complaint, before the Court has set a scheduling order for trial, before discovery has opened, and before the Court has ruled on Defendants' motions to dismiss. Thus, there is no delay or prejudice caused by the timing of Intervenors' motion. *See, e.g.*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir.), *as amended on denial of reh'g* (May 30, 1996) (motion to intervene deemed timely and "does not appear to have prejudiced either party in the lawsuit, since the motion was filed before the district court had made any substantive rulings").

#### 2. Intervenors Have a Significant, Protectable Interest in the Litigation.

Intervenors have obvious, significant, and protectable interests here, as this litigation affects their personal end-of-life decisions, their medical practices, and legislation they sponsored. A proposed intervenor "must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Nw. Forest Res. Council*, 82 F.3d at 837). "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and 'no specific legal or equitable interest need be established.'" *Nw. Forest Res.*

*Council*, 82 F.3d at 837 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993)).

For Burt, Judith, and Peter, there is a "direct, antagonistic relationship" between their interest in obtaining medical aid in dying and Plaintiffs' attempt to deny them the ability to obtain those medications. Courts routinely find that intervention is proper where such a relationship exists between a party's requested relief and a potential intervenor's interest. *E.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (permitting intervention where Volkswagen AG sought to keep confidential the documents that were the subject of plaintiff's FOIA request); *see also Sagebrush Rebellion*, 713 F.2d at 527-28 (permitting intervention where an adverse decision in the suit would impair a society's interest in the preservation of birds and their habitats); *Chandler v. Cal. Dep't of Corr. & Rehab.*, 2023 WL 5353212, at *1, 3-4, 8 (E.D. Cal. Aug. 21, 2023) (holding four incarcerated transgender women and the Transgender Gender-Variant & Intersex Justice Project had protectible interests in defending the Transgender Respect, Agency, and Dignity Act (S.B. 132) from a constitutional challenge). Burt, Judith, and Peter are disabled Californians, as that term is defined in the ADA, who want to have the option of availing themselves of the EOLOA if needed, and therefore have at least as much, if not more, of a protectable interest as the disabled plaintiffs who filed this action and who, by their own admission, have no interest in obtaining a prescription under the Act.

Similarly, Drs. Banerjee and Forest's interests in offering the option of aid in dying as part of their medical practices are threatened by Plaintiffs' requested relief. Both doctors counsel aging and disabled patients about end-of-life options. Here, they represent not only their own interests but those of their patients who are too weak and near death to join this litigation. Patients who are diagnosed with a terminal disease and have less than a six-month prognosis will likely die before the Court can resolve this dispute, but they nevertheless have a strong interest in

maintaining the availability of all options for end-of-life care. *See WomanCare of Southfield, P.C. v. Granholm*, 143 F. Supp. 2d 827, 839 (E.D. Mich. 2000) (holding physician plaintiffs had *jus tertii* standing to challenge the constitutionality of the Michigan Infant Protection Act on behalf of their pregnant patients); *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 888 (E.D. Ark. 2021) (holding physicians had third-party standing to challenge Act 626 on behalf of their patients because they alleged a close relationship with their patients and a hindrance to their patients' ability to protect their interests because of the risk of discrimination and their patients' desire to protect their privacy); *cf. Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011) (assuming "for many reasons" that physicians maintain certain interests regarding their patients' rights).

As for CCAN, it has the right to intervene here because it sponsored the law that Plaintiffs challenge. A "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (citing *Sagebrush Rebellion*, 713 F.2d at 527) (permitting intervention in a case challenging the listing of the Springs Snail as an endangered species where the intervening entity was active in the process of listing the snail); *Apr. in Paris v. Becerra*, 2020 WL 2404620, at *3 (E.D. Cal. May 12, 2020) (applicants had a significantly protectable interest where they "fought for the bill that ultimately passed"); *Pac. Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1025 (N.D. Cal. 2002) (applicant had an interest where it "was the acknowledged author and leading proponent" of one of the central actions challenged by plaintiffs). Here, CCAN not only supported but *sponsored* SB 380 and lobbied in support of EOLOA. *See* Kappos Decl. Exs. 1-4 (documenting CCAN's support of the EOLOA via lobbying funds); *Missouri v. Harris*, 2014 WL 2506606, at *5 (E.D. Cal. June 3, 2014) (holding that party could intervene as of right where it lobbied legislators to pass the challenged statute).

### 3. Intervenors' Interests Will Be Impaired If Intervention Is Denied.

Once a court has found that a prospective intervenor has a significant protectable interest, it should have "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). Here, Intervenors' interests would obviously be impaired by a judgment declaring the EOLOA unconstitutional. *Kalbers*, 22 F.4th at 828 (finding that intervenor's interest in keeping documents confidential "would obviously be impaired by an order to disclose").

### 4. Defendants May Not Adequately Represent Intervenors' Interests.

Intervenors have deeply personal interests in continued access to medical aid in dying—interests Defendants here lack and may not adequately represent. The burden of demonstrating inadequate representation is minimal. Intervenors need only show that their interests are sufficiently different from the existing parties such that their representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Sagebrush Rebellion*, 713 F.2d at 528. The Ninth Circuit weighs three factors here: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

Where an applicant demonstrates that its interests are "more narrow and parochial than the interests of the public at large," representation is properly found to be inadequate. *Mendonca*, 152 F.3d at 1190 (union could intervene by right in action alleging federal preemption of California's Prevailing Wage Law because its

members had a substantial interest in receiving the prevailing wage and the government-defendants' representation "may have been inadequate"). In *Home Care Ass'n of Am. v. Newsom*, for example, the court held that when a state "is trying to defend the enforceability of its law" while a potential intervenor "is trying to obtain the benefits of the law for itself or its members," the intervenor's interest is "narrower than the former in a way that meets the fourth prong of the Rule 24(a)(2) intervention test." 2019 WL 5960141, at *3 (E.D. Cal. Nov. 13, 2019).

That is the case here—each intervenor's interest in medical aid in dying is narrower than Defendants' interest in defending the enforceability of the EOLOA. *Id*. "[I]t is no novel legal conclusion to determine that a neutral governmental body's interests sufficiently diverge from those of an organization representing a specific sub-set of the public to satisfy the inadequate representation prong." *Barke v. Banks*, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (finding various teachers' unions had a right to intervene in action challenging the constitutionality of law that prohibits the state from discouraging union membership). Defendants' motion to dismiss briefing shows that their interests are much more expansive than an individual patient's interest in obtaining medical aid in dying or an individual physician's interest in offering that aid. For instance, while Defendants' briefing acknowledges that the EOLOA gives certain terminally ill patients the right to obtain aid-in-dying medication, it offers no patient declarations in support of this important option. Dkt. 20-1 at 1; *see also* Dkt. 24. The proposed patient intervenors—Burt, Judith, and Peter—will offer the perspective of what aid-in-dying medication means to individuals with disabilities who want to avail themselves of this option to avoid unbearable suffering at their end of life. These intervenors will explain how the availability of aid in dying can alleviate anxiety and give peace of mind that will allow them to live their lives to the fullest in their remaining days. Similarly, the proposed physician intervenors will offer the perspective of physicians who treat terminally ill patients and who consider medical

aid in dying integral to how they practice medicine and provide end-of-life care—another perspective absent from Defendants' briefing. *Id.*

Just as Defendants do not present these perspectives, they fail to articulate what Plaintiffs' requested relief would mean for terminally ill patients, their families, and their care providers. Defendants cannot offer the perspective of Dr. Catherine S. Forest and her late husband, Will. When a rapidly progressing unclassified motor neuron disease threatened to leave him paralyzed and wasting away while fully mentally aware, Will exercised his right under the EOLOA to obtain aid-in-dying medication. Ex. E ¶¶ 30-34. Defendants cannot tell the Court that the alternative for Will was not just death but a terrifying death where he would have choked on his own saliva and spent his final moments suffocating and unable to enjoy time with his family, who would have endured their own agony watching him suffer. *Id.* ¶¶ 30-31. Defendants cannot tell the Court that Will almost ran out of time to utilize the EOLOA because his non-participating primary care provider did not document his first medical aid-in-dying request. *Id.* ¶ 32. And Defendants cannot tell the Court about the anxiety that Will endured as he fought against the unnecessary delays caused by his non-participating provider and medical group—anxiety that ate into the precious little time he had remaining with his family. *Id.* These are interests that the Court should consider and viewpoints that only Intervenors can provide.

Defendants also fail to articulate that the alternative to medical aid in dying is more than just a painful and terrifying death. The alternative for many patients is to spend what little time they have left agonizing about what awaits them instead of focusing on enjoying the people and things they love. *See* Ex. A ¶¶ 17-18; Ex. B ¶¶ 19, 23-24; Ex. C ¶¶ 35, 38; Ex. E ¶ 33. And the alternative for physicians who treat terminally ill patients—physicians like Drs. Banerjee and Forest—is to be deprived of one of the most important tools in their practice of medicine: the ability to offer options. Physicians like Drs. Banerjee and Forest consider medical aid in

dying an important part of end-of-life care even for patients who never consider the option for themselves. Ex. D ¶¶ 5-6; Ex. E ¶¶ 5-6. Simply talking about the option often helps patients to regain a lost sense of autonomy and better participate in determining what their end-of-life care plan should be, regardless of whether that plan includes medical aid in dying. Ex. D ¶ 6; Ex. E ¶ 5.

Defendants are not at fault for not presenting these interests to the Court—they are simply not Defendants' concern. But they are important interests that should be represented in this litigation, particularly because they offer "a perspective which differs materially from that of the present parties." *Sagebrush Rebellion*, 713 F.2d at 528. Thus, Intervenors meet the "minimal" burden of showing that their interests may not be adequately represented by Defendants.

### B. In the Alternative, the Court Should Permit Intervention Pursuant to Federal Rule of Civil Procedure 24(b)

If the court were to find that Intervenors are not entitled to intervene as a matter of right, it should still allow Intervenors to intervene under Fed. R. Civ. P. 24(b). This rule provides, in pertinent part, that courts "may permit anyone to intervene who … (1)(B) has a claim or defense that shares with the main action a common question of law or fact." Courts can grant this permissive intervention "'where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (quoting *Nw. Forest Res. Council*, 82 F.3d at 839).

*First*, the Ninth Circuit has clarified that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). This is a federal-question case because each of Plaintiffs' claims arises under the U.S.

1  Constitution. Dkt. 1. Intervenors are not raising any new claims. Thus, the first
2  factor of independent jurisdictional grounds does not apply.
3     *Second*, Intervenors' motion is timely. Again, Intervenors filed their motion
4  before any defendant has answered the complaint, before the Court has set a
5  scheduling order, before discovery has opened, and before the Court has ruled on
6  Defendants' motions to dismiss. Given the early stage of this litigation,
7  intervention will not unduly delay or prejudice the adjudication of the rights of the
8  original parties. And given Intervenors' interests in the outcome of the dispute,
9  their alternative motion for permissive intervention at this early stage in the case is
10 particularly justified. *See*, *e.g.*, *City of Los Angeles*, 288 F.3d at 403–04 ("In
11 exercising its discretion the court shall consider whether the intervention will
12 unduly delay or prejudice the adjudication of the rights of the original parties.")
13 (remanding to district court to reconsider request for permissive intervention by
14 police league and community intervenors who "have some of the strongest interests
15 in the outcome").
16    *Third*, common questions of law and fact exist because the rights of the
17 parties all arise from the question of whether the EOLOA is constitutional or
18 violative of federal statutes. So Intervenors' defenses turn on the same legal and
19 factual issues raised by Plaintiffs' claims, including whether, despite the "numerous
20 safeguards in the [EOLOA] statute to ensure that, at every stage of the process, a
21 person demonstrates their voluntary consent," *Shavelson v. Bonta*, 608 F. Supp. 3d
22 919, 928 (N.D. Cal. 2022), the EOLOA disadvantages a class of disabled
23 individuals.
24    Accordingly, even if the Court denies intervention by matter of right, it
25 would still be appropriate to grant Intervenors' request for permissive intervention.
26 **V.   CONCLUSION**
27    For the foregoing reasons, the Court should grant Intervenors' motion to
28 intervene as of right under Rule 24(a). In the alternative, the Court should allow

them permissive intervention under Rule 24(b).

Dated: September 21, 2023

/s/ John Kappos
O'MELVENY & MYERS LLP
John Kappos (SBN 171977)
jkappos@omm.com
2501 North Harwood Street, 17th Floor
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

COMPASSION & CHOICES
Kevin Díaz (*pro hac vice*)
kdiaz@compassionandchoices.org
Jessica Pezley (*pro hac vice*)
jpezley@compassionandchoices.org
101 SW Madison Street, #8009
Portland, OR 97207
Telephone: (503) 943-6532

*Attorneys for Intervenors*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenors Lambert ("Burt") Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN), certifies that this brief contains 4,412 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 21, 2023

/s/ John Kappos
O'MELVENY & MYERS LLP
John Kappos (SBN 171977)
jkappos@omm.com
2501 North Harwood Street, 17th Floor
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

COMPASSION & CHOICES
Kevin Díaz (*pro hac vice*)
kdiaz@compassionandchoices.org
Jessica Pezley (*pro hac vice*)
jpezley@compassionandchoices.org
101 SW Madison Street, #8009
Portland, OR 97207
Telephone: (503) 943-6532

*Attorneys for Intervenors Lambert "Burt" Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN)*