MICHAEL W. BIEN – 096891
  mbien@rbgg.com
VAN SWEARINGEN – 259809
  vswearingen@rbgg.com
KARA J. JANSSEN – 274762
  kjanssen@rbgg.com
MICHAEL S. NUNEZ – 280535
  mnunez@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104

HABEN GIRMA – 293667
  contact@habengirma.com
405 El Camino Real #209
Menlo Park, California  94025-5240
Telephone:  (510) 210 3714

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED SPINAL ASSOCIATION et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 2:23-cv-03107 FLA(GJSx)<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**<br><br>Date:       December 1, 2023<br>Time:       1:30 p.m.<br>Crtrm.:  First Street Courthouse<br>           Courtroom 6B, 6th Floor<br>           350 W. 1st Street<br>           Los Angeles, California 90012<br><br>Judge:  Hon. Fernando L. Aenlle-Rocha<br>Magistrate:  Hon. Gail J. Standish<br><br>Trial Date:         None Set |

[4354230.19]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 2

I.     PROPOSED INTERVENORS CANNOT INTERVENE AS OF
       RIGHT ..................................................................................... 2

       A.     Proposed Intervenors' Motion Is Untimely ............................ 2

       B.     State Defendants Adequately Represent Proposed Intervenors'
              Asserted Interests ................................................................. 4

              1.     There Is a Presumption of Adequate Representation in
                     This Case Because the State Defendants and the Proposed
                     Intervenors Have the Same Ultimate Objective of
                     Defending EOLOA ....................................................... 5

              2.     The State Defendants Already Made the Proposed
                     Intervenors' Legal Arguments ...................................... 5

       C.     Proposed Intervenor Doctors Lack Interests Necessary for
              Mandatory Intervention .................................................... 14

II.    THE COURT SHOULD DECLINE PROPOSED INTERVENORS'
       REQUEST FOR PERMISSIVE INTERVENTION ....................... 15

CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arakaki v. Cayetano,*
        324 F.3d 1078(9th Cir.2003) ................................................................. passim

*Barke v. Banks,*
        No. 820CV00358, 2020 WL 2315857 (C.D. Cal. May 7, 2020) ................... 14

*Bates v. Jones,*
        904 F. Supp. 1080 (N.D. Cal. 1995) ............................................................. 16

*Blake v. Pallan,*
        554 F.2d 947 (9th Cir. 1977) ....................................................................... 15

*Brandt v. Rutledge,*
        551 F. Supp. 3d 882 (E.D. Ark. 2021), *aff'd sub nom. Brandt
        by & through Brandt v. Rutledge,* 47 F.4th 661 (8th Cir. 2022) .................... 17

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,*
        309 F.3d 1113 (9th Cir. 2002) ....................................................................... 3

*Cal. v. Tahoe Reg'l Plan. Agency,*
        792 F.2d 775 (9th Cir. 1986) ......................................................................... 18

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca,*
        152 F.3d 1184 (9th Cir. 1998) ....................................................................... 13

*Chamness v. Bowen,*
        722 F.3d 1110 (9th Cir. 2013) ..................................................................... 3, 4

*Christian Med. & Dental Ass'n v. Bonta,*
        5:22-cv-00335-FLA-GJS (May 18, 2022) ........................................................ 4

*Donnelly v. Glickman,*
        159 F.3d 405 (9th Cir.1998) .................................................................... 15, 17

*Freedom from Religion Found., Inc. v. Geithner,*
        644 F.3d 836(9th Cir. 2011) ......................................................................... 19

*Home Care Ass'n of Am. V. Newsom,*
        No. 1:19-CV-0929, 2019 WL 5960141 (E.D. Cal. Nov. 13, 2019) .............. 14

*League of United Latin Am. Citizens v. Wilson,*
        131 F.3d 1297 (9th Cir. 1997) ....................................................................... 11

*Nw. Forest Res. Council v. Glickman,*
        82 F.3d 825 (9th Cir. 1996) ....................................................................... 5, 15

*Perry v. Proposition 8 Off. Proponents,*
        587 F.3d 947 (9th Cir. 2009) ................................................................. passim

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) ......................................................................... 13

*S. Cal. Edison Co. v. Lynch,*
    307 F.3d 794 (9th Cir. 2002), *modified*, 307 F.3d 943 (9th Cir. 2002) ......... 16

*S. Cal. Edison Co. v. Peevey,*
    31 Cal. 4th 781 (2003) .................................................................................... 16

*Sagebrush Rebellion Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) ......................................................................... 14

*Saleh v. Nike, Inc.,*
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................................... 12

*Sang-Hoon Ahn v. Hestrin,*
    No. E073530, 2020 WL 7064802 (Cal. Ct. App. Dec. 3, 2020), as
    modified on denial of reh'g (Dec. 22, 2020) ..................................................... 7

*Shavelson v. Bonta,*
    608 F. Supp. 3d 919 (N.D. Cal. 2022) ........................................................... 19

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ....................................................................................... 16

*Spangler v. Pasadena City Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) ....................................................................... 17

*Stuart v. Huff,*
    706 F.3d 345 (4th Cir. 2013) .................................................................... 13, 15

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) ....................................................................................... 14

*U.S. ex rel. Richards v. De Leon Guerrero,*
    4 F.3d 749 (9th Cir. 1993) ............................................................................. 18

*United States v. City of Los Angeles, Cal.,*
    288 F.3d 391 (9th Cir. 2002) ......................................................................... 19

*United States v. State of Or.,*
    913 F.2d 576 (9th Cir. 1990) ....................................................................... 2, 4

*United States v. State of Or.,* 745 F.2d 550 (9th Cir. 1984) ...................................... 3

*WomanCare of Southfield, P.C. v. Granholm,*
    143 F. Supp. 2d 827 (E.D. Mich. 2000) ........................................................ 16

**<u>STATUTES</u>**

Cal. Health and Safety Code § 443.2(a) ................................................................. 14

## **RULES**

Fed. R. Civ. P 24...................................................................................................15

# INTRODUCTION

All Proposed Intervenors fail to meet the requirements for mandatory intervention because State Defendants adequately represent their interests and their motion is untimely.  Proposed Intervenors and State Defendants have the same goal in this litigation—upholding California's End of Life Options Act ("EOLOA"). State Defendants are already making the same arguments that Proposed Intervenors seek to make.  Proposed Intervenors have not identified a single argument that they would make that State Defendants would not, nor have they provided any reason to believe that State Defendants will not vigorously defend EOLOA.

Proposed Intervenors argue that State Defendants are inadequate to represent their interests because State Defendants will not include perspectives of individuals and physicians who support EOLOA.  However, the inclusion or omission of such perspectives is only a litigation strategy decision and is insufficient to overcome the presumption of adequate representation.  Proposed Intervenors' motion offers no support for their assertion that State Defendants will omit the perspectives that Proposed Intervenors assert only they would contribute.  Nothing prevents State Defendants from offering evidence or testimony from any of the Proposed Intervenors (or any other physicians or individual supporters of EOLOA) in their defense of the statute.  Thus, Proposed Intervenors have failed to make the "very compelling showing" necessary to overcome the presumption that State Defendants adequately represent their interests in this action.

Regarding timing, Proposed Intervenors sat on their hands for months after learning of this case and after State Defendants filed their motion to dismiss.  As a result, granting intervention would prejudice Plaintiffs by forcing them to endure duplicative litigation and unnecessary delay, including by responding to Proposed Intervenors' duplicative motion to dismiss.  Furthermore, the individual physicians seeking intervention fail to identify any interest adequate for mandatory intervention.

The Court should deny Proposed Intervenors' request for permissive intervention for the same reasons:  Proposed Intervenors' interests are adequately represented by State Defendants, their motion is untimely, and permitting them to intervene would result in inefficiency and unnecessary delay.

## ARGUMENT

## I.    PROPOSED INTERVENORS CANNOT INTERVENE AS OF RIGHT

An applicant for intervention as of right must satisfy the following four elements:  "(1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir.2003)).  "Failure to satisfy any one of the requirements is fatal to the application[.]"  *Perry*, F.3d at 950.  As discussed below, all Proposed Intervenors fail to satisfy at least two of these requirements.

### A.    Proposed Intervenors' Motion Is Untimely

When assessing timeliness, court's assess three factors:  "the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990).  Prejudice to the existing parties is "the most important consideration in deciding whether a motion for intervention is untimely."  *United States v. State of Or.*, 745 F.2d 550,552 (9th Cir. 1984).  "In analyzing timeliness, we focus on the date the person attempting to intervene should have been aware his interest[s] would no longer be protected adequately by the parties[.]"  *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013).  If the Court finds "that the motion to intervene was not timely, [the Court] need not address any of the remaining elements."  *Cal. Dep't of Toxic Substances*

*Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).

Proposed Intervenors' motion is untimely.  This case was filed on April 25, 2023 and was broadly publicized in the national press.  Complaint ("Compl."), ECF No. 1; *see also, e.g.,* Declaration of Van Swearingen In Support of Plaintiffs' Opposition to Motion to Intervene ("Swearingen Decl.") ¶¶ 2-3, Exs. A & B (Apr. 27, 2023 NPR news article and April 30, 2023 op-ed about this case).  At minimum, Proposed Intervenor Compassion and Choices Action Network ("CCAN") must have been aware of this case right away.  CCAN sent fundraising emails to their supporters about this case on June 22, 2023.  Swearingen Decl. ¶ 4, Ex. C. Defendants filed their motions to dismiss in this action on July 20, 2023.  At the latest, Proposed Intervenors were able to assess whether Defendants would adequately protect their interest by this date.

Proposed Intervenor CCAN could have quickly moved to intervene by adapting and expanding upon a similar motion to intervene that they filed in this Court in a case brought by the Christian Medical and Dental Association challenging certain provisions in EOLOA.  *See* Notice of Mot. & Mot. To Intervene, *Christian Med. & Dental Ass'n v. Bonta*, 5:22-cv-00335-FLA-GJS (May 18, 2022), ECF No. 64.  Nevertheless, Proposed Intervenors waited until September 21, 2023—the day before the date on which the Court was scheduled to hear oral argument on Defendants' motions to dismiss—to file their intervention motion. Proposed Intervenors offer no explanation for these delays.

Courts have rejected as untimely motions to intervene with similar or even shorter delays.  *Chamness*, 722 F.3d at 1121-22 (rejecting motion to intervene in action challenging election law as untimely where proposed intervenor filed motion less than three weeks after latest possible date on which he learned that parties would not adequately protect his interests and five months after case was filed).

Permitting this delayed intervention would result in prejudice to Plaintiffs. By the time Proposed Intervenors filed this motion, the Court had already taken

1  Defendants' motions to dismiss under submission.  *See* Order Taking Motions

2  Under Submission, ECF No. 44.  Plaintiffs are small non-profit organizations and

3  two individuals, all with limited resources.  *See* Compl., ECF No. 1 ¶¶ 19-38.

4  Plaintiffs have already expended considerable resources briefing Defendants'

5  motions to dismiss.  Permitting intervention would force Plaintiffs to expend their

6  limited resources on relitigating the same arguments already presented in the State

7  Defendants' motion to dismiss.  Furthermore, given that, as discussed below,

8  Defendants already adequately represent Proposed Intervenors' interests, permitting

9  intervention would prejudice Plaintiffs by needlessly slowing down the litigation,

10  delaying the start of discovery, and making the litigation more complex and costly.

11       The cases that Proposed Intervenors cite do not require a different result.  In

12  *United States v. State of Or.*, the Court denied intervention due to untimeliness.  913

13  F.2d 576, 589 (9th Cir. 1990).  *Nw. Forest Res. Council v. Glickman* does not help

14  Proposed Intervenors because, in *Glickman*, proposed intervenors who moved to

15  intervene *less than a week* after the lawsuit was filed failed to satisfy any of the

16  other three mandatory intervention factors and the court denied permissive

17  intervention.  82 F.3d 825, 830, 837-38 (9th Cir. 1996).

18  **B.   State Defendants Adequately Represent Proposed Intervenors'**
        **Asserted Interests**

19

20       "The 'most important factor' to determine whether a proposed intervenor is

21  adequately represented by a present party to the action is 'how the intervenor's

22  interest compares with the interests of existing parties.'"  *Perry*, 587 F.3d at 950-51.

23  "In determining whether an applicant's interest is adequately represented by the

24  parties," courts consider:  "(1) whether the interest of a present party is such that it

25  will undoubtedly make all the intervenor's arguments; (2) whether the present party

26  is capable and willing to make such arguments; and (3) whether the would-be

27  intervenor would offer any necessary elements to the proceedings that other parties

28  would neglect."  *Glickman*, 82 F.3d at 838 (finding party would adequately

1  represent proposed intervenor's interest where proposed intervenor and party had

2  same ultimate objective in litigation and had only "minor differences in opinion"

3  regarding strategy, even where proposed intervenor had litigated other, unrelated

4  cases against party). "The prospective intervenor bears the burden of demonstrating

5  that existing parties do not adequately represent its interests." *Id.*

6          **1.**    **There Is a Presumption of Adequate Representation in This Case Because the State Defendants and the Proposed**

7              **Intervenors Have the Same Ultimate Objective of Defending EOLOA**

8

9        "Where the party and the proposed intervenor share the same 'ultimate

10  objective,' a presumption of adequacy of representation applies, and the intervenor

11  can rebut that presumption only with a 'compelling showing' to the contrary."

12  *Perry*, 587 F.3d at 951. "There is also an assumption of adequacy when the

13  government is acting on behalf of a constituency that it represents" that a proposed

14  intervenor can rebut only with a "very compelling showing to the contrary."

15  *Arakaki*, 324 F.3d at 1086 (finding state government defendants adequately

16  represented interests of proposed intervenors, native Hawaiians, in action

17  challenging provision of benefits to native Hawaiians where there were no apparent

18  conflicts that would prevent state defendants from making proposed intervenors'

19  arguments).

20        There is a presumption of adequate representation here because Proposed

21  Intervenors and State Defendants share the same ultimate objective—to uphold

22  EOLOA. *Compare* Motion to Intervene, ECF No. 45, at 6-7, *with* State Defs.'

23  Mem. Of Points and Authorities in Supp. of Mot. to Dismiss ("State Defs. MTD,"

24  ECF No. 20-1 at 10-12.

25          **2.**    **The State Defendants Already Made the Proposed Intervenors' Legal Arguments**

26

27        To rebut the presumption that the State Defendants adequately represent their

28  interests, Proposed Intervenors must make a very compelling showing to overcome

the presumption based on the three factors:  "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086.  Here, Proposed Intervenors fail to make a compelling showing on any of these factors.  In fact, another court has already found that the California Attorney General adequately represented one of the Proposed Intervenors' interests—those of Dr. Forrest—in another case challenging the constitutionality of EOLOA.  *Sang-Hoon Ahn v. Hestrin*, No. E073530, 2020 WL 7064802, at *1, 3 (Cal. Ct. App. Dec. 3, 2020), as modified on denial of reh'g (Dec. 22, 2020).

The State Defendants' motion to dismiss shows that they are making, and are capable of making, all of the legal arguments in Proposed Intervenors' motion to dismiss.  As the table below shows, the motions are virtually identical.

| Intervenors' Proposed MTD Argument | Corresponding State Defendants' MTD Argument |
|---|---|
| **A. Plaintiffs fail to state a violation of the ADA.**<br><br>Intervenors' Proposed Motion to Dismiss, (Prop. Intvs.' MTD) ECF 45-13 at 9. | **A. Plaintiffs Fail to State Viable Claims Under the ADA and Section 504 of the Rehabilitation Act.**<br><br>State Defs.' MTD at 26. |
| **A.1. The EOLOA unequivocally benefits terminally ill patients.**<br><br>"because on its face the EOLOA unequivocally *benefits* terminally ill patients by granting them an additional end-of-life option, Plaintiffs do not and cannot allege a viable claim for disability discrimination under the | "the Act and its process unequivocally confers on terminally-ill disabled persons *more rights and services*—an additional voluntary option for end-of-life care—than non-terminally ill and non-disabled Californians.  The EOLOA, on its face and in its operation, thus cannot be credibly alleged to disadvantage a class of |

| Intervenors' Proposed MTD Argument | Corresponding State Defendants' MTD Argument |
|---|---|
| ADA." <br><br> Prop. Intvs.' MTD at 10-11. | disabled individuals, which is the fundamental gravamen of any viable ADA or Section 504 claim." <br><br> State Defs.' MTD at 27-28. |
| **A.2. The EOLOA contains numerous safeguards that prevent discrimination.** <br><br> "The EOLOA is also structurally incapable of discriminating against a class of disabled individuals because it was carefully constructed to provide people with the *option* of a peaceful death while protecting against abuse or coercion." <br><br> Prop. Intvs.' MTD at 11. | "The Act was explicitly designed with 'numerous safeguards . . . to ensure that, at every stage of the process, a person demonstrates their voluntary consent.'" <br><br> State Defs.' MTD at 28. |
| **B. Plaintiffs fail to state a violation of the Rehabilitation Act.** <br><br> "Because Plaintiffs fail to state a claim under the ADA, they also fail to state a claim under the Rehabilitation Act for the same reasons." <br><br> Prop. Intvs.' MTD at 12. | **A. Plaintiffs Fail to State Viable Claims Under the ADA and Section 504 of the Rehabilitation Act.** <br> **1. ADA and Section 504 background** <br><br> "Title II of the ADA, which prohibits disability discrimination by public entities or in public programs, was expressly modeled on Section 504 of the Rehabilitation Act." <br><br> State Defs.' MTD at 26. |

| Intervenors' Proposed MTD Argument | Corresponding State Defendants' MTD Argument |
|---|---|
| **C. Plaintiffs' equal protection claim fails**<br><br>Plaintiffs' claim fails on these grounds because (1) their proposed classes are not similarly situated, (2) the EOLOA affords *additional* end-of-life options to people with terminal diseases without withholding other protections, and (3) the EOLOA satisfies any level of means-ends scrutiny.<br><br>Prop. Intvs.' MTD at 12–18. | **B. Plaintiffs Fail to State a Viable Equal Protection Claim.**<br><br>Similar discussion as Proposed Intervenors, without delineated subheadings<br><br>State Defs.' MTD at 30-33. |
| **C. 1. The proposed classes are not similarly situated**<br><br>"Plaintiffs' two proposed groups undermine their equal protection claim at the threshold because the second group is, by its own terms, '*not eligible* to participate in EOLOA.'"<br><br>Prop. Intvs.' MTD at 13-14. | Same Section B as above.<br><br>"claim fails at the threshold because the EOLOA does not create similarly situated classes for equal protection purposes. . . . Plaintiffs' proposed classes appear to be, on the one hand, terminally-ill patients eligible for the EOLOA, and, on the other hand, "other groups of people ineligible to participate in EOLOA"<br><br>State Defs.' MTD at 31. |
| **C. 2. The EOLOA affords additional end-of-life options to people with terminal diseases, but does not withhold protections.**<br><br>"No reading of the EOLOA supports Plaintiffs' assertion that it deprives individuals with terminal diseases from "protection and public services" that are available to people who do not have terminal diagnoses. . . . the statute | Same Section B as above.<br><br>"That the EOLOA affords these uniquely situated patients [individuals with a "terminal disease"] the additional right to obtain AID medication does not violate equal protection."<br><br>State Defs.' MTD at 31.<br><br>[State Defendants do not repeat in this |

PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

[4354230.19]

| Intervenors' Proposed MTD Argument | Corresponding State Defendants' MTD Argument |
|---|---|
| facially protects terminally ill patients through multiple procedural mechanisms. . . ."<br><br>Prop. Intvs.' MTD at 15. | section the alleged procedural protections already cited in their argument under heading A.] |
| **C. 3. The EOLOA satisfies any level of means-ends scrutiny.**<br>**a. The Court should apply rational basis review.**<br>"Under rational basis scrutiny, the EOLOA's carefully regulated differential treatment of terminally ill patients serves California's legitimate interest in providing for the general welfare of its citizens. . . . The EOLOA grants qualifying patients the peace of mind that comes with knowing they will have the choice to forgo an otherwise painful death—it does not strip those patients of rights that would otherwise apply to them.<br><br>Prop. Intvs.' MTD at 17.<br><br>**b. The EOLOA satisfies strict scrutiny in any event.**<br><br>"Even if the EOLOA were subject to strict scrutiny, the EOLOA satisfies that test because it is narrowly tailored to serve a compelling state interest."<br><br>Prop. Intv.s' MTD at 17. | Same Section B above.<br><br>"Under rational basis scrutiny, the EOLOA's differential treatment serves California's undoubtedly legitimate interest in providing for the general welfare of its citizens, which rationally includes ensuring that certain terminally ill patients at the end of their disease progression have an option to avoid suffering a prolonged and painful dying process if they so choose.  Indeed, rather than discriminate, the Act affords this group the "extra" option of AID medication not afforded to others in the population."<br><br>State Defs.' MTD at 32.<br><br>". . .even under strict scrutiny, all of these State interests are compelling and achieved through EOLOA's creation of a narrowly tailored classification of terminally ill patients . . ."<br><br>State Defs.' MTD at 32. |
| **D. Plaintiffs' due process claim fails.**<br><br>"Plaintiffs' due process claim fails because they cannot demonstrate an | **C. Plaintiffs Fail to State a Viable Due Process Claim.**<br><br>"Even if Plaintiffs could establish that |

| Intervenors' Proposed MTD Argument | Corresponding State Defendants' MTD Argument |
|---|---|
| inevitable danger or even identify a single involuntary death under the EOLOA."<br><br>"Plaintiffs' claim fails under the *Salerno* doctrine."<br><br>Prop. Intvs.' MTD at 18. | the EOLOA was capable of resulting in some involuntary deaths (they cannot), they have not alleged and cannot demonstrate that in *all* applications of the EOLOA the terminally ill  patient's decision to end their life would be involuntary.  And that forecloses their facial challenge.  *Salerno*, 481 U.S. at 745."<br><br>State Defs.' MTD at 33. |

As shown above, State Defendants' interests align completely with those of the Proposed Intervenors, and State Defendants are already making the same legal arguments Proposed Intervenors seek to make.  In fact, Defendant Attorney General Bonta was a principal co-author of EOLOA in 2015 and co-authored the bill that subsequently expanded EOLOA.  Swearingen Decl. ¶¶ 5-6, Exs. D-E (showing co-author status for AB 15 and SB 380).

Proposed Intervenors have not identified any reason to believe the State Defendants will not continue to vigorously and competently defend EOLOA.  *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305-06 (9th Cir. 1997) ("LULAC") (finding no reason to believe the government would fail to argue vigorously in favor of challenged law's constitutionality where it had demonstrated "persistent" and "proactive support" for challenged legislation and had opposed a motion for preliminary injunction and moved to dismiss plaintiffs' claims).  Proposed Intervenors' legal strategy is effectively identical to that of the State Defendants, and even if it weren't, that would not be enough to show inadequate representation.  *Perry*, 587 F.3d at 954 (finding that party adequately represented proposed intervenor's interests in action challenging state constitutional amendment banning same-sex marriage given that "mere differences in litigation strategy are not

enough to justify intervention as a matter of right").

The *only* interest asserted by Proposed Intervenors as narrower than that of Defendants is that Defendants lack the perspectives of individuals with disabilities, physicians, and others who support physician assisted suicide.  Motion to Intervene at 15-17.  Proposed Intervenors make three arguments in support of the claim that their perspectives are not represented by Defendants.  <u>First</u>, Proposed Intervenors point to the fact that Defendants did not file patient declarations with their motion to dismiss.  *Id.* at 15.  However, choosing not to file patient declarations with a motion to dismiss is a routine and reasonable strategy decision given that a motion to dismiss tests only the sufficiency of the complaint and that, in making that determination, courts ordinarily may not consider evidence outside of the complaint. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 516 (C.D. Cal. 2021) (Aenlle-Rocha, J.). This reasonable strategy choice does not in any way demonstrate that State Defendants are unwilling to vigorously defend EOLOA.  <u>Second</u>, Proposed Intervenors contend that Defendants fail to articulate that "[t]he alternative for many patients is to spend what little time they have left agonizing about what awaits them instead of focusing on enjoying the people and things they love."  Motion to Intervene at 16.  But nothing prevents State Defendants from presenting such evidence at the appropriate time and State Defendants' motion to dismiss previews this line of argument by asserting that EOLOA ensures "that certain terminally ill patients at the end of their disease progression have an option to avoid suffering a prolonged and painful dying process."  State Defs.' MTD at 32.  <u>Third</u>, Proposed Intervenors claim that Defendants fail to articulate that striking down EOLOA would deprive doctors of their ability to "offer options."  Motion to Intervene at 16. But again, State Defendants' motion to dismiss shows that they intend to develop this theme:  "the Act affords this group the 'extra' option of AID medication not afforded to others," and "serves California's interests in providing terminally ill patients with the personal autonomy to dictate the terms of their own lives and the

peace of mind of knowing they will have an option to forego an otherwise painful death." State Defs.' MTD at 32.

Nothing prevents Defendants from offering evidence from Proposed Intervenors or other individuals or organizations that support EOLOA in defense of the statute as the litigation proceeds. Proposed Intervenors offer no evidence supporting their assertion that Defendants will omit these perspectives as the litigation unfolds.

Furthermore, an entity's knowledge of and policy preferences about matters related to challenged legislation are insufficient to make the very compelling showing necessary to overcome the presumption of adequate representation. *Prete v. Bradbury*, 438 F.3d 949, 958 (9th Cir. 2006) (where proposed intervenor and government party had same objective to uphold the challenged law, the proposed intervenors' allegedly greater knowledge about the impact of the challenged law was insufficient to establish the very compelling showing necessary to rebut the presumption that the government adequately represented their interests in litigation); *Stuart v. Huff*, 706 F.3d 345, 351-55 (4th Cir. 2013) (rejecting proposed intervenors' argument that as the "class of beneficiaries protected by the Act," their interests in defending the Act are "stronger" and more "specific" than the state's general interest because "stronger, more specific interests [. . . ] surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's" and citing with approval *Arakaki v. Cayetano* for its adoption of the heightened showing needed to overcome the presumption of adequate representation by government party).

The cases cited by Proposed Intervenors do not demonstrate that representation is inadequate here. In *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, with one sentence of analysis, the Ninth Circuit found that the government defendants may not have adequately represented the interests of proposed intervenors, a union whose members' wages would have been impaired if

the plaintiff prevailed.  152 F.3d 1184, 1190 (9th Cir. 1998).  Regarding the adequacy of representation prong of the mandatory intervention analysis, *Mendonca* and the other cases Proposed Intervenors cite demonstrate only that courts have found unions with members whose employment interests could be directly impacted by the case can satisfy this factor.  *See Barke v. Banks*, No. 820CV00358, 2020 WL 2315857 (C.D. Cal. May 7, 2020) (describing *Mendonca* and progeny as cases involving intervening unions and granting unions mandatory intervention); *Home Care Ass'n of Am. V. Newsom*, No. 1:19-CV-0929, 2019 WL 5960141, at *2-3 (E.D. Cal. Nov. 13, 2019) (same).

None of the factors are present here that led the courts to find inadequate representation in the other cases that Proposed Intervenors cite.  *See Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538-39 (1972) (government had set of clear, statutorily-mandated interests that were not fully aligned with those of proposed intervenors); *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (head of government party previously worked for the plaintiff in the case and was at odds with proposed intervenors' interests).  *Arakaki* does not help Proposed Intervenors because, in that case, the court found that the government adequately represented the proposed intervenor's interests and denied mandatory intervention. 324 F.3d at 1087-88.

Intervention here is unnecessary because Proposed Intervenors can appropriately present their own views and experiences to the Court through an amicus brief.  *See Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977) (finding proposed intervenor's different "purpose in pursuing the litigation" was insufficient to demonstrate inadequate representation and explaining that proposed intervenor could provide "his knowledge" in an amicus brief "rather than bought with the price of intervention."); *Stuart*, 706 F.3d at 355 ("While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation.  The availability of such alternative avenues of expression

1   reinforces our disinclination to drive district courts into multi-cornered lawsuits by

2   indiscriminately granting would-be intervenors party status and all the privileges

3   pertaining thereto.").

4        **C.    Proposed Intervenor Doctors Lack Interests Necessary for
             Mandatory Intervention**

5

6        To demonstrate the requisite legally protectable interest, "a prospective

7   intervenor must establish that (1) the interest asserted is protectable under some law,

8   and (2) there is a relationship between the legally protected interest and the claims at

9   issue." *Glickman*, 82 F.3d at 837.  "An applicant generally satisfies the

10  'relationship' requirement only if the resolution of the plaintiff's claims actually will

11  affect the applicant."  *Arakaki*, 324 F.3d at 1084, (quoting *Donnelly v. Glickman*,

12  159 F.3d 405, 409, 410 (9th Cir.1998)).

13       Doctors Banerjee and Forest lack the requisite legal protectable interests.

14  Neither Dr. Banerjee nor Dr. Forest are eligible to use EOLOA's procedures.

15  *Compare* Motion to Intervene at 6-7, *with* Cal. Health and Safety Code § 443.2(a).

16  They are physicians who treat terminally ill patients and who support the availability

17  of physician assisted suicide.  *Id.*at 6-7; Ex. D ("Banerjee Decl.") ECF No. 45-4,

18  ¶¶ 7, 32; Ex. E ("Forest Decl.") ECF No. 45-5, ¶¶ 5-6.  Doctors Banerjee and

19  Forest's generalized policy preferences are insufficient interests for mandatory

20  intervention.  *Bates v. Jones*, 904 F. Supp. 1080, 1087 (N.D. Cal. 1995) (supporters

21  of legislative term limits lacked interest for mandatory intervention in action

22  challenging ballot initiative that imposed legislative term limits); *cf. S. Cal. Edison*

23  *Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002), *modified*, 307 F.3d 943 (9th Cir.

24  2002), *certified question answered sub nom*. *S. Cal. Edison Co. v. Peevey*, 31 Cal.

25  4th 781 (2003) (association of businesses that purchased electricity from plaintiff

26  electricity provider had generalized policy interest insufficient for mandatory

27  intervention in action where plaintiff sought right to raise prices).

28       The cases that Proposed Intervenors cite are inapposite because they do not

[4354230.19]

14

address standards for intervention, much less the legally protectable interest analysis.  The text Proposed Intervenors cite from *Sorrell v. IMS Health Inc.* involves a First Amendment analysis. 564 U.S. 552, 572 (2011).  The language that Proposed Intervenors point to in *WomanCare of Southfield, P.C. v. Granholm*, 143 F. Supp. 2d 827, 839 (E.D. Mich. 2000) and *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 888 (E.D. Ark. 2021), *aff'd sub nom. Brandt by & through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) addresses only article III standing.  Proposed Intervenors fail to provide any authority demonstrating that any of the interests discussed in these cases are adequate for mandatory intervention.

## II.   THE COURT SHOULD DECLINE PROPOSED INTERVENORS' REQUEST FOR PERMISSIVE INTERVENTION

"On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P 24(b)(1)(B).  "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412.  Courts must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Where a putative intervenor has met the threshold requirements, the court may "consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'"  *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Courts may also consider "the efficiency of the litigation process."  *Donnelly*, 159 F.3d at 412.

This Court should deny Proposed Intervenors' motion because their interests and the State Defendants' interests "are indistinguishable," the State Defendants "represent those interests adequately," and allowing intervention "would unduly delay proceedings." *Perry*, 587 F.3d at 955.  As explained above, Proposed

Intervenors and State Defendants have the same interests, and Proposed Intervenors have identified no legal arguments that the State is unwilling or unable to advance. Courts have denied permissive intervention under similar circumstances. *See U.S. ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention because interest asserted by applicant was adequately represented by government party and applicant's legal argument was "essentially the same" as government party's argument); *Cal. v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 779 (9th Cir. 1986) (affirming denial of permissive intervention because intervenors' interests were adequately represented and "intervention would be redundant and would impair the efficiency of the litigation").

Permitting six intervenors into a case that already has thirteen named Defendants and two separate teams of defense counsel would unnecessarily complicate and delay the proceedings. Permitting intervention would mean that a larger number of parties would conduct discovery on the same or nearly identical issues, which would increase the volume of discovery and likely increase the number of discovery disputes. Routine meet and confers would become logistically more complicated and briefing/hearing dates would inevitably be pushed out to accommodate all counsel's scheduling needs. *See, e.g.*, Joint Stipulation to Continue Hearing on Motion to Intervene, ECF No. 51 ("counsel for Intervenors require additional time in order to sufficiently confer with the six independent potential intervening clients that they represent, many of whom have serious medical conditions that require ongoing treatment and limit their availability to confer with counsel regarding the Motion on short notice"); Stipulation for Continuance of Hearing on Motion to Intervene, ECF No. 54 ("counsel for Intervenors have a conflict on November 17, 2023 and thus are not able to attend the hearing"). Permitting intervention would also force the Court to contend with duplicative motions and briefing like Proposed Intervenors' motion to dismiss, substantially burdening party and Court resources.

1     Permissive intervention was not granted in any of the cases that Proposed

2  Interveners cite in support of permissive intervention.  Plaintiffs in *Shavelson v.*

3  *Bonta*, 608 F. Supp. 3d 919 (N.D. Cal. 2022) sought to expand access to EOLOA,

4  not enjoin it, and the court in *Shavelson* did not even address intervention, either

5  permissive or mandatory.  In *United States v. City of Los Angeles, Cal.*, the court did

6  not grant permissive intervention—the court did not address permissive intervention

7  for one of the proposed interveners and, in determining that the district court made a

8  legal error by concluding that intervention for enforcement of a proposed consent

9  decree is never permissible, the court remanded the case to the district court to

10 consider whether to grant permissive intervention to the other proposed intervener.

11 288 F.3d 391, 402-03 (9th Cir. 2002).  In *Freedom from Religion Found., Inc. v.*

12 *Geithner*, the Ninth Circuit did not rule on permissive intervention but instead

13 reversed the district court's denial of permissive intervention and remanded for full

14 consideration of the matter because the district court incorrectly required the

15 proposed intervenor to show that there were independent jurisdictional grounds for

16 intervention—an issue not in dispute here.  644 F.3d 836, 844 (9th Cir. 2011).

17     The Court should deny Proposed Intervenors' request for permissive

18 intervention because permitting it would bring inefficiency and delay to this

19 litigation.  Intervention would not aid the Court or meaningfully contribute to

20 Defendants' vigorous defense of EOLOA.

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny the Motion to Intervene.

DATED:  October 13, 2023                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By: */s/ Van Swearingen*

Van Swearingen

Attorneys for Plaintiffs

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,104 words, which complies with the word limit of L.R. 11-6.1.

DATED:  October 13, 2023          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
Van Swearingen

Attorneys for Plaintiffs