# UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** | Central District of California

### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court  (AMENDED)

U.S. District Court case number: | 2:23-cv-03107-FLA (GJSx)

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: | 04/25/2023

Date of judgment or order you are appealing: | 03/27/2024; 05/06/2024

Docket entry number of judgment or order you are appealing: | 73 and 81 (Copies attached)

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes   ○ No   ○ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN)

Is this a cross-appeal?   ○ Yes   ⦿ No

If yes, what is the first appeal case number? | 

Was there a previous appeal in this case?   ⦿ Yes   ○ No

If yes, what is the prior appeal case number? | 24-2751, companion appeal with 24-2755

Your mailing address (if pro se):

|  |
|  |

City: | | State: | | Zip Code: |

Prisoner Inmate or A Number (if applicable): |

**Signature** | /s/ John Kappos   **Date** | May 13, 2024

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 1**                                                                 *Rev. 06/09/2022*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, MD, MPH, HMDC, FAAHPM, Catherine Sonquist Forest, MD, MPH, FAAFP, and Compassion & Choices Action Network (CCAN)

Name(s) of counsel (if any):

John Kappos, Jeffrey L. Fisher, Kevin Díaz, Jessica Pezley

Address: 2801 N. Harwood St., Ste. 1600, Dallas, TX 75201

Telephone number(s): (972) 360-1900

Email(s): jkappos@omm.com, jlfisher@omm.com, kdiaz@compassionandchoices.org jpezley@compassionandchoices.org

Is counsel registered for Electronic Filing in the 9th Circuit?  ⦿ Yes  ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

United Spinal Association; Not Dead Yet; Institute for Patients' Rights; Communities Actively Living Independent and Free; Lonnie Vanhook; Ingrid Tischer

Name(s) of counsel (if any):

Michael W. Bien, Van Swearingen, Kara J. Janssen, and Michael S. Nunez of Rosen Bien Galvan & Grunfeld LLP

Address: 101 Mission Street, Sixth Floor, San Francisco, CA 94105

Telephone number(s): 415-433-6830

Email(s): mbien@rbgg.com, vswearingen@rbgg.com, kjanssen@rbgg.com, mnunez@rbgg.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Dkt. 73**

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED SPINAL ASSOCIATION, et al., | Case No. 2:23-cv-03107-FLA (GJSx) |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING MOTION TO INTERVENE [DKTS. 20, 24, 45, 71]** |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

# RULING

Before the court are two motions: 1) Defendants the State of California, Gavin Newsom, Robert Bonta, California Department of Public Health, Tomas Aragon, California Department of Health Care Services, Michelle Baas, Mental Health Services Oversight and Accountability Commission, Mara Madrigal-Weiss, Medical Board of California, and Kristina Lawson's ("State Defendants") Motion to Dismiss; and 2) Defendants the County of Los Angeles and George Gascon's ("County Defendants") Motion to Dismiss.[1]  Dkts. 20-1 ("State Mot."), 24 ("County Mot."). Plaintiffs United Spinal Association, Not Dead Yet, Institute for Patients' Rights, Communities Actively Living Independent and Free ("Organizational Plaintiffs"), Lonnie VanHook and Ingrid Tischer ("Individual Plaintiffs") (collectively, "Plaintiffs") oppose the Motions.  Dkts. 27 ("Opp'n to County Mot."), 28 ("Opp'n to State Mot.").  On September 20, 2023, the court found the matters appropriate for resolution without oral argument and vacated the hearing set for September 22, 2023. Dkt. 44; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons set forth below, the court GRANTS the Motions and DISMISSES Plaintiff's claims.  The court also DENIES as moot the Proposed Intervenors' Motion to Intervene (Dkt. 45) and Request for Decision (Dkt. 71).

# BACKGROUND

## A. End of Life Option Act

California's End of Life Option Act ("EOLOA") allows qualifying, terminally ill patients to receive prescriptions for medication that assist in facilitating death ("aid-in-dying medication").  Cal. Health and Safety Code § 443, *et seq.*  The EOLOA regulates the prescription and administration of aid-in-dying medication, and imposes various protocols before a patient may receive such medication.  To be eligible for an

---

[1] The court refers to the State Defendants and County Defendants, collectively, as "Defendants," and both Motions to Dismiss, collectively, as the "Motions."

aid-in-dying medication prescription, a patient must have an "incurable and irreversible" disease that will "result in death within six months" and the capacity to make medical decisions. *Id.* §§ 443.1(r), 443.2(a).

To receive aid-in-dying medication, a patient must "submit two oral requests, a minimum of 48 hours apart," along with a written request on a legislatively specified form. *Id.* § 443.3(a). The written request must be executed in the presence of two witnesses, each of whom must attest that the patient "voluntarily" signed the request and was "of sound mind and not under duress, fraud, or undue influence." *Id.* § 443.3(b)(2), (3). Before prescribing the medication, the patient's attending physician must confirm the patient's terminal diagnosis and other qualifications necessary to seek aid-in-dying medication under the EOLOA, including that the patient "voluntarily express[ed] the wish to receive a prescription," and possessed "the physical and mental ability to self-administer the aid-in-dying drug." *Id.* § 443.2(a). The attending physician is also required to determine that the patient has the capacity to make medical decisions, refer the patient to a separate, consulting physician for additional confirmation of diagnosis and capacity, discuss the risks and results associated with consumption of the medication, confirm the patient's request did not arise from undue influence, and advise the patient of feasible alternative treatment options (including hospice, palliative care, and the option to receive but not take the aid-in-dying medication). *Id.* § 443.5; *see also id.* § 443.6 (requiring the consulting physician additionally to confirm the patient's diagnosis, capacity to make medical decisions, and voluntariness of decision).

**B. Nature of the Action**

Plaintiffs—two individuals with disabilities and four disability rights advocacy groups—brought this action challenging the validity and constitutionality of the EOLOA. *See generally* Dkt. 1 ("Compl."). Plaintiffs claim the EOLOA "discriminates against people with terminal disabilities by depriving them of protections afforded other persons under California law in violation of the" Americans

1   with Disabilities Act (42 U.S.C. § 12132, *et seq.*, "ADA") and Section 504 of the

2   Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*, "Section 504"). *Id.* ¶ 9. Because

3   California's suicide prevention programs "are designed to ensure that a person's

4   expression of suicidal ideation is sufficient in itself to trigger mental health care,"

5   Plaintiffs argue the EOLOA deprives certain disabled individuals "access to these life-

6   preserving interventions because of their disabilities." *Id.* ¶¶ 9-10.

7        Plaintiffs also allege the EOLOA violates the Equal Protection and Due Process

8   clauses of the Fourteenth Amendment by "by treating differently people with terminal

9   disabilities as compared to everyone else who expresses a wish to die to their medical

10  doctor," and "failing to include sufficient safeguards to ensure that a judgment-

11  impaired, or unduly influenced person does not receive and/or ingest lethal physician-

12  assisted suicide drugs without adequate due process in waiving their fundamental right

13  to live." *Id.* ¶¶ 10-11; *see* U.S. Const. amend. XIV. According to Plaintiffs, the

14  EOLOA's "failure to require … less restrictive alternatives to assisted suicide …

15  violates the Due Process Clause of the Fourteenth Amendment." *Id.* ¶ 11.

16       Accordingly, Plaintiffs request the court declare the EOLOA unlawful and

17  enjoin Defendants from enforcing it. *Id.* ¶ 13.

## DISCUSSION

### I.   Legal Standard

20       Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a party may file a motion to

21  dismiss a complaint for "failure to state a claim upon which relief can be granted."

22  The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency

23  of the claims asserted in the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*,

24  829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under

25  Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable

26  legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159

27  (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient

28  factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level…." *Id.* (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The court, however, need not accept as true allegations that contradict matters properly subject to judicial notice or by facts established by documents attached as exhibits to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* Legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II.    Analysis

The State Defendants seek dismissal of all causes of action on grounds that both the Individual and Organizational Plaintiffs lack standing to challenge the statute; Plaintiffs' constitutional claims against State Defendants Gavin Newsom, Tomas Aragon, and Mara Madrigal-Weiss are barred by Eleventh Amendment immunity; and Plaintiffs fail to state a claim for relief under the ADA, Section 504, the Equal

Protection Clause, and the Due Process Clause.  Dkt. 20 at 2-3.[2]  The County

Defendants move to dismiss on similar grounds, and additionally argue Plaintiffs'

claims against the County Defendants are barred by prosecutorial immunity.  County

Mot. at 3.  The court addresses each in turn.

### A. Standing

Defendants allege both the Organizational and Individual Plaintiffs lack

standing to challenge the EOLOA.  "[S]tanding requires that (1) the plaintiff suffered

an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual

or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the

challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable

decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en

banc) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### a. Organizational Plaintiffs

An organization has direct standing if it can show: (1) the defendant's actions

have frustrated its mission; and (2) that it has spent resources counteracting that

frustration.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see

also East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  "An

organization may sue only if it was forced to choose between suffering an injury and

diverting resources to counteract the injury."  *La Asociacion de Trabajadores de Lake

Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 n. 4 (9th Cir. 2010).  However, an

organization cannot manufacture an injury by "simply choosing to spend money

fixing a problem that otherwise would not affect the organization at all."  *East Bay

Sanctuary*, 993 F.3d at 663 (internal quotation marks and citations omitted).  Instead,

the organization must demonstrate that it would have suffered some other injury had it

not diverted resources to counteracting the problem.  *Id.*

---

[2] The court cites documents by the page numbers added by the court's CM/ECF
system, rather than any page numbers that appear within the documents natively.

The Organizational Plaintiffs are various disability rights organizations, which seek to combat disability-based discrimination, advocate for improved quality of life for those living with disabilities, and oppose legalization of physician-assisted suicide. Compl. ¶¶ 19-32. The Organizational Plaintiffs allege Defendants' actions in enforcing the EOLOA have resulted in injury, as the EOLOA frustrates their various missions of empowering those living with disabilities to obtain a better quality of life, advocating for equal protection of the law as to disabled people, and implementing safeguards to ensure equal access to healthcare, as well as undermines the effectiveness of services they provide to disabled people, such as counseling, housing advocacy, and independent living skills trainings. *Id.* ¶¶ 22, 25, 27, 31.

The Organizational Plaintiffs further claim they were forced to expend resources to oppose the passage of the EOLOA, investigate risks associated with physician-assisted suicide, fund campaigns and lobbying efforts to eliminate and raise awareness about such risks, issue press statements opposing physician-assisted suicide, obtain accreditation for legal and medical education courses specific to the EOLOA, and advocate for individuals placed at increased risk of harm by the EOLOA. *Id.* ¶¶ 22, 25-27, 32. The Organizational Plaintiffs state they are unable to devote these resources to other critical programs addressing the impact of discriminatory healthcare policies. *Id.*

These allegations are sufficient to confer standing, as the Organizational Plaintiffs have pleaded in adequate detail that enforcement of the EOLOA has frustrated their missions of advocating against physician-assisted suicide, and has required re-allocation of resources from their initiatives. *See East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 974-75 (9th Cir. 2020) (finding organizational plaintiffs had pleaded sufficiently standing where non-profit organization would have to "overhaul" its asylum application practice into a "removal defense program, diverting resources to develop new materials and train existing staff"); *Smith v. Pacific Properties & Development Corp.*, 358 F.3d 1097, 1105-06 (9th Cir. 2004)

7

(holding that non-profit organization working to eliminate housing discrimination against disabled individuals had standing where plaintiff alleged: 1) defendant designed inaccessible properties in violation of federal law; and 2) the organization diverted resources from its regular activities to promote compliance with accessibility laws and to "benefit the disabled community in other ways").[3]

### b. Individual Plaintiffs

Defendants also argue the Individual Plaintiffs cannot establish a cognizable injury-in-fact. State Mot. at 16-17; County Mot. at 11. Specifically, Defendants contend the Individual Patients have been living with their disabilities for years and have avoided death through treatment, and thus, do not qualify as terminally ill, as required for aid-in-dying medication. *Id.*; *see* Compl. ¶¶ 33-34 (alleging Individual Plaintiff Lonnie VanHook would "rapidly die without medical treatments"); 37-38 (alleging Individual Plaintiff Ingrid Tischer believes she would die within six months "without medical supports").

The Individual Plaintiffs claim they are eligible under the EOLOA because the statute's definition of "terminal disease" "has no requirement that the attending or consulting physician consider the effects of treatments, counseling, or other supports on survival rates," and, therefore, can show a cognizable injury based on their disabilities. Compl. ¶ 91; Opp'n to State Mot. at 11-12.

The Individual Plaintiffs' interpretation of the statute is inconsistent with the plain text of the EOLOA, which defines "terminal disease" for purposes of eligibility as "an incurable and irreversible disease that has been medically confirmed and *will*,

---

[3] Organizations may assert direct standing (on their own behalf) or associational standing (on behalf of their members). *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021). Organizational Plaintiff United Spinal Association is the only Organizational Plaintiff that purports to assert both direct and associational standing. Compl. ¶ 21. Because the Organizational Plaintiffs have pleaded sufficiently direct standing, the court does not address whether United Spinal Association possesses associational standing on behalf of its members.

within reasonable medical judgment, *result in death* within six months." Cal. Health & Safety Code § 443.1(r) (emphasis added). The Individual Plaintiffs' summary assertion that the relevant inquiry is whether, absent further treatment, a person is likely to die within six months (Compl. ¶ 91), ignores the reality that "a reasonable medical judgment" of death within six months must necessarily take into consideration the possible avoidance of death with treatment or other disease management tools. The Individual Plaintiffs' alleged eligibility for aid-in-dying medication based on death without, or as a result of a decision to refuse, treatment and subsequent fear of being steered towards involuntary death by medical professionals, presents an attenuated and hypothetical harm that is insufficient to confer standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("In cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage.") (internal citations omitted); *see also Lee v. State of Or.*, 107 F.3d 1382, 1389-90 (9th Cir. 1997).

Accordingly, the Individual Plaintiffs lack standing to assert claims in this action.[4]

### B. Failure to State a Claim for Relief

The court next considers whether Plaintiffs plead sufficiently claims for violations of the ADA, Section 504 of the Rehabilitation Act, and the Equal Protection and Due Process clauses of the Fourteenth Amendment. *See* State Mot. at 17-34; County Mot. at 13.

---

[4] Even if the Individual Plaintiffs possessed standing, *see, e.g., Lee*, 107 F.3d at 1388, 1390 n. 2 (noting patient may not have had standing to challenge similar statute, but assuming so "because of the possibility that the named doctors and residential care facilities could assert the interests of their terminally-ill patients"), their claims also fail for the reasons detailed below.

9

### a. ADA and Rehabilitation Act[5]

Title II of the ADA provides that, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a violation of either statute, a plaintiff must show: (1) he or she was disabled within the meanings of the statutes; (2) he or she was otherwise qualified to participate in or receive the benefit of the government services, programs, or activities at issue; (3) he or she was excluded from participation in or denied the benefit of the services, programs, or activities, or otherwise discriminated against, because of his disability; and (4) the entity denying services or discriminating received federal financial assistance (for the Section 504 claim) or was a public entity (for the ADA claim).  *Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1047 (9th Cir. 2009); *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999).

Plaintiffs advance several arguments in support of their ADA and 504 claims, claiming primarily that Defendants denied terminally ill patients the opportunity to participate in or benefit from public and behavioral health services; provided

---

[5] Because there is no significant difference in the analysis of rights and obligations created by the ADA and Section 504 of the Rehabilitation Act, courts routinely address claims under both statutes together. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013); *Martin v. Cal. Dep't. of Veterans Affairs*, 560 F.3d 1042, 1047 n. 7 (9th Cir. 2009).

ineffective health services to terminally ill patients; and unnecessarily offered different or separate health services to individuals with terminal disabilities.  Compl. ¶¶ 170-72; 182-84.  Plaintiffs also claim the EOLOA discriminates against individuals with terminal disabilities, as California's "suicide prevention programs are designed to ensure that a person's expression of suicidal ideation is sufficient in itself to trigger mental health care," but the EOLOA deprives terminally ill patients "access to these life-preserving interventions because of their disabilities," and shields "physician-assisted suicide deaths from law enforcement investigation and prosecution, solely because the person who died by suicide had a terminal disability."  *Id.* ¶ 9; *see also id.* ¶¶ 113, 171, 183.

Fatal to Plaintiffs' claims, however, is that a terminally ill patient's decision to request aid-in-dying medication—and accordingly, to not participate in or seek the benefits of other public health services—is voluntary.  In other words, Plaintiffs cannot establish they were excluded from participation in or denied the benefit of any services.  *See Martin*, 560 F.3d at 1047.  The EOLOA does not preclude, prohibit, or otherwise bar disabled individuals from availing themselves of the benefits of any behavioral health services and suicide prevention programs, nor does it contain any provisions encouraging or steering patients toward physician-assisted suicide.  The statute provides an entirely optional alternative for terminally ill patients when deciding how to manage their diagnoses, and contains a number of safeguards designed to ensure that a requesting patient's decision is voluntary and intentional. *See* Cal. Health and Safety Code §§ 443.1(e); 443.3(a), (b)(2), (b)(3); 443.5; 443.6 (requiring patient to submit three requests, signed and dated by two witnesses attesting to the patient's mental capacity, and for two physicians to determine the voluntariness of the patient's decision based on ability to make and understand consequences of medical decisions).  Any disparity in or denial of treatment, therefore, is not attributable to a patient's disability, but instead to his or her independent choice, and cannot be said to run afoul of the ADA or Section 504.  *See Bowen v. American Hosp.*

*Ass'n*, 476 U.S. 610, 632, 635 (1986) (no Section 504 liability where parents' failure to give consent, not a child's disability, was the cause of hospital's failure to provide treatment to child).  In other words, discrimination occurs when an individual is excluded from participation in or denied the benefits of a service (*see Martin*, 560 F.3d at 1047)—not when he or she chooses not to participate in or receive the benefits of the service.

The absence of statutory provisions requiring patients to consider, exhaust, or reject alternatives to assisted suicide is insufficient to deem the decision involuntary or the statute discriminatory.  *See* Compl. ¶ 156.  The EOLOA explicitly requires attending physicians to discuss with patients the "feasible alternatives or additional treatment options, including … comfort care, hospice care, palliative care, and pain control," and to "[i]nform the individual that they may withdraw or rescind the request for an aid-in-dying drug at any time and in any manner."  Cal. Health and Safety Code § 443.5(a)(2)(E), (a)(6); *see also id.* § 443.1(j)(5) (defining "informed decision" in relevant part as a decision made after being notified of feasible alternatives).  These procedural safeguards are sufficient to ensure a requesting patient is not "relegate[d]" or "force[d]" to forego "alternatives to assisted suicide" for aid-in-dying medication, as Plaintiffs argue.  *See* Compl. ¶ 103.

For the same reasons, Plaintiffs' claims that the EOLOA improperly denies terminally ill patients the protection of criminal laws and enforcement (Compl. ¶¶ 9, 113, 171, 183) fail because differing treatment decisions based on the degree of one's disability—especially where such treatment is the result of a patient's own choice—cannot support an ADA or Section 504 claim.  *See O'Guinn v. Nevada Dep't of Corr.*, 468 F. App'x 651, 653 (9th Cir. 2012) (holding "district court correctly concluded that key elements of an ADA or [Section 504] claim cannot be reconciled with medical treatment decisions for the underlying disability"); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014) (ADA and Section 504 prohibit discrimination against a disabled person only where the disability is unrelated to, and thus improper to

12

consideration of, the treatment decisions in question). Under Plaintiffs' theory, any law protecting surgeons from battery or other related criminal charges would give rise to an ADA or Section 504 claim, where a doctor is protected from prosecution based on performance of surgery on a disabled patient—based on the nature of his condition—and not another—whose condition did not require such surgery.

Because Plaintiffs do not (and cannot) plead that terminally ill patients are affirmatively denied the option to avail themselves of behavioral health services and the protection of criminal law enforcement, their claims for relief under the ADA and Section 504 fail as a matter of law.

### b. Due Process Clause

Plaintiffs' Due Process claim asserts that the EOLOA provides inadequate safeguards to ensure that a requesting patient's decision is voluntary, resulting in an infringement of an individual's fundamental right to life without adequate process. Compl. ¶¶ 197-98; Opp'n to State Mot. at 25-26; *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997) (noting the state has an "unqualified interest in the preservation of life"). Plaintiffs additionally rely on a state-created danger theory of liability, under which a "state may be constitutionally required to protect a plaintiff that it affirmatively places in danger by acting with deliberate indifference to a known or obvious danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (internal quotations omitted); *see* Compl. ¶ 197; Opp'n to State Mot. at 34. To succeed on a state-created danger claim, a plaintiff must establish: (1) that state officials' affirmative actions created or exposed the plaintiff to actual, particularized danger that the plaintiff would not have otherwise faced; (2) that the injury suffered by the plaintiff was foreseeable; and (3) that the state officials were deliberately indifferent to the known danger. *Martinez*, 943 F.3d at 1271.

Plaintiffs have not established why the EOLOA's safeguards, detailed above, do not constitute sufficient "process," nor have Plaintiffs alleged sufficiently any of the three elements required for a viable state-created danger claim. The stringent

13

hurdles a requesting patient must overcome before receiving aid-in-dying medication is incompatible with a finding that a patient was exposed to a particularized danger, as the hurdles were presumably included to avoid the otherwise foreseeable danger of involuntary death.  Indeed, for a patient to relinquish involuntarily his or her right to life, in violation of the Due Process Clause, the following would have to occur: (1) a terminally ill patient, mistakenly or under coercion, makes two oral requests and a written request on a specific legislative form for aid-in-dying medication; (2) two witnesses to the patient's signing of the written form fail to recognize that the patient is incapable of making a voluntary and informed decision; (3) the patient's attending and consulting physicians both misdiagnose him or her as being capable of making an informed decision; and (4) after receiving the life-ending medication, the patient self-administers it against his or her own free will.

This speculative chain of contingencies is far too implausible and unforeseeable to amount to a deprivation of process or deliberate indifference to a foreseeable injury. Plaintiffs' mere disagreement with the efficacy of the EOLOA's safeguards, without more, is insufficient where the plain text of the statute evidences an intent to afford patients ample process to avoid the danger of involuntary death.

Accordingly, Plaintiffs fail to establish a claim for relief under the Due Process clause or state-created danger theory.

### c.  Equal Protection Clause

To prevail on an equal protection claim, Plaintiffs must show that similarly situated classes have been treated disparately.  *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (internal quotation marks omitted).  In analyzing Plaintiffs' claim, the court must first "identify the [government's] classification of groups" in the statute (*id.*) and then search for a comparative group "composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the [government's] challenged policy."  *Gallinger v. Becerra*, 898 F.3d

1012, 1016 (9th Cir. 2018).  "*If* the two groups are similarly situated, [the court must] determine the appropriate level of scrutiny and then apply it."  *Id.* (emphasis added).

The parties do not dispute that the two groups at issue are terminally ill patients eligible for relief under the EOLOA, and other individuals "ineligible to participate in EOLOA who nevertheless share similar concerns about losing autonomy, the loss of dignity, losing control of bodily functions, becoming a burden on caregivers, pain, and/or financial costs associated with continued living."  Compl. ¶ 191; State Mot. at 31; Opp'n to State Mot. at 30.  The Complaint alleges that the EOLOA "treats differently people with terminal disabilities as compared with everyone else that expresses a wish to die to their medical doctor (including people with psychiatric and other disabilities as well as people without disabilities)."  Compl. ¶ 89; *see also id.* ¶¶ 87-88, 90-95.

Defendants argue that terminally ill patients are "fundamentally different, for purposes of the law, than all other individuals in Plaintiffs' alternative classification," because terminally ill patients face a "distinctive prospect of pain and suffering associated with the dying process, along with heightened emotional anxiety related to that process."  State Mot. at 31.  The court agrees.

Plaintiffs do not meaningfully challenge the State Defendant's assertion that the two groups are not similarly situated, and argue only that, at this stage of the pleadings, "it is sufficient that Plaintiffs allege facts plausibly identifying similarly situated classes."  Opp'n to State Mot. at 31.  That the latter group does not face the imminent possibility of death, however, is sufficiently dispositive to render the two groups fundamentally dissimilar.  Accordingly, Plaintiffs fail to state a claim for relief under the Equal Protection clause.[6]

---

[6] Because Plaintiffs have not stated any claims upon which relief may be granted, the court does not address the State and County Defendants' arguments as to the Eleventh Amendment and prosecutorial immunity.  *See* State Mot. at 24-26; County Mot. at 11-12.

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motions and DISMISSES Plaintiffs' claims with prejudice.  Proposed Intervenors Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, Catherine Sonquist Forest, and Compassion & Choices Action Network's Motion to Intervene (Dkt. 45) and Request for Decision (Dkt. 71) are DENIED as moot.


IT IS SO ORDERED.


Dated: March 27, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge

# Dkt. 81

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED SPINAL ASSOCIATION, et al., | Case No. 2:23-cv-03107-FLA (GJSx) |
| Plaintiffs, | **ORDER DENYING PROPOSED INTERVENORS' MOTION FOR RECONSIDERATION [DKT. 74]** |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

## **ORDER**

On March 27, 2024, the court granted Defendants the State of California, Gavin Newsom, Robert Bonta, California Department of Public Health, Tomas Aragon, California Department of Health Care Services, Michelle Baas, Mental Health Services Oversight and Accountability Commission, Mara Madrigal-Weiss, Medical Board of California, Kristina Lawson, the County of Los Angeles, and George Gascon's Motions to Dismiss (Dkts. 20-1, 24), and denied Proposed Intervenors Burt Bassler, Judith Coburn, Peter Sussman, Chandana Banerjee, Catherine Sonquist Forest, and Compassion & Choices Action Network's ("Proposed Intervenors") Motion to Intervene (Dkt. 45) as moot. Dkt. 73. On April 9, 2024, the Proposed Intervenors filed a Motion for Reconsideration ("Motion") of the March 27 order denying the Motion to Intervene as moot. Dkt. 74 ("Mot."). Plaintiffs United Spinal Association, Not Dead Yet, Institute for Patients' Rights, Communities Actively Living Independent and Free, Lonnie VanHook, and Ingrid Tischer oppose the Motion. Dkt. 75. For the following reasons, the court DENIES the Motion.

In this district, motions for reconsideration are also governed by Local Rule 7-18, which provides:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

The Proposed Intervenors seek reconsideration on the third ground, arguing the court "failed to consider [the Proposed Intervenors'] continuing interest to participate in this litigation in the event that [the court's dismissal order] is appealed[.]" Mot. at 5.

As an initial matter, the Proposed Intervenors fail to establish or allege any facts demonstrating the court's failure to consider facts presented to it before the order was

2

entered.  The Proposed Intervenors now argue, relying on *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1066 (9th Cir. 2018) and *Canatella v. California*, 404 F.3d 1106, 1109 n. 1 (9th Cir. 2005), a Motion to Intervene is not moot where litigation in the district court has concluded, but a party has appealed some aspect of the case.  Mot. at 6.  Though this argument could have been presented to the court in the Motion to Intervene, it was not.  *See* Dkt. 45.

Regardless, the Proposed Intervenors' reliance on *Allied Concrete* and *Canatella* to seek reconsideration is misplaced.  Based on these cases, and because Plaintiffs filed a notice of appeal on April 24, 2024 (Dkt. 76), the Proposed Intervenors maintain "the intervention controversy" remains a "live controversy under Ninth Circuit law" because "if it were concluded on appeal that the district judge had erred in denying the intervention motion, and that the applicant was indeed entitled to intervene in the litigation, then the applicant would have standing to appeal the district court's judgment."  Mot. at 6 (citing *Canatella*, 404 F.3d at 1109 n. 1.).

The procedural posture of this case, however, is distinguishable from that of *Allied Concrete* and *Canatella*.  In those cases, the court denied the motions to intervene on non-mootness grounds, and the proposed intervenors appealed those decisions.  *Allied Concrete*, 904 F.3d at 1059; *Canatella*, 404 F.3d at 1109.  The underlying actions were then subsequently dismissed.  *Allied Concrete*, 904 F.3d at 1060; *Canatella*, 404 F.3d at 1109, n. 1.

In *Canatella*, the Ninth Circuit found the proposed intervenors' *appeal* remained a live controversy despite the district court's dismissal of the underlying action because a party to the underlying action appealed the lower court's dismissal of the action.  404 F.3d at 1109, n. 1.  *Allied Concrete* expanded upon *Canatella*, holding "a potential petition for rehearing or certiorari keeps a case alive *for the purpose of appealing* a motion to intervene."  *Allied Concrete*, 904 F.3d at 1066 (emphasis added).  Neither case, however, addressed whether a district court, having dismissed a case in its entirety, should adjudicate a motion to intervene, previously denied as

3

moot, simply because one of the parties appealed that dismissal.  Nor have the Proposed Intervenors offered any case law supporting such a proposition. Accordingly, the Motion is DENIED.

IT IS SO ORDERED.

Dated: May 6, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge